IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| PATRICIA BORDENET, individually and on behalf of all others similarly situated, | ) ) ) ) | |
| Plaintiff, | ) ) ) | **CLASS ACTION** |
| v. | ) ) | **JURY TRIAL DEMANDED** |
| CVS HEALTH CORPORATION, | ) ) | |
| Defendant. | ) ) | |

## CLASS ACTION COMPLAINT

Plaintiff Patricia Bordenet ("Plaintiff"), individually and on behalf of all others similarly situated, through the undersigned attorneys, upon personal knowledge as to her own acts and status, and upon information and belief based upon the investigation of counsel as to the remaining allegations, alleges as follows:

## I.     INTRODUCTION

1.     This is a nationwide consumer class action brought by Plaintiff on behalf of all individuals ("Class Members") who purchased the product CVS Aftersun Aloe Vera Moisturizing Gel, previously called CVS 100% Pure Aloe Vera Gel (collectively, the "Product"), for personal use and not for resale. *See* Product photos *infra*.

2.     CVS Health Corporation ("Defendant") advertises, markets, sells, and

1

distributes the Product in 6 oz. tubes and 3 oz. and 20 oz. bottles. According to Defendant's website, the Product contains "a blend of Aloe Vera Gel"[1] and, until recently, the Product label stated that the Product contained "100% pure aloe vera gel."

3.      In reality, according to independent lab tests, ***Defendant's Product contains no actual aloe at all***.  The Product also contains propylene glycol, a non-toxic form of antifreeze, which is not listed on the label or in  the list of ingredients.

4.      The Product label and Defendant's Product advertisements, including the representations made on Defendant's website, are false, deceptive and misleading, in violation of the Federal Food Drug & Cosmetics Act and its parallel state statutes, and almost every state warranty, consumer protection, and product labeling law in the United States.

## II.      PARTIES

5.      During the relevant period, Class Members in Illinois and throughout the United States purchased the Product through numerous brick-and-mortar CVS retail locations and online through www.CVS.com.  Plaintiff and Class Members suffered an injury in fact caused by the false,  fraudulent, unfair, deceptive, and

---

[1]      http://www.cvs.com/shop/beauty/skin-care/sun-tanning/cvs-aftersun-aloe-vera-moisturizing-gel-6-oz-prodid-1016968?skuId=309890 (last accessed May 16, 2016).

misleading practices set forth in this Complaint.

6.      Plaintiff Patricia Bordenet is a resident of Hoffman Estates, Illinois. She purchased the Product in Illinois for her own use during the four years preceding the filing of this Complaint, most recently at a CVS in Illinois.

7.      Defendant CVS Health Corporation is a Delaware corporation, with a principal place of business at One CVS Drive, Woonsocket, Rhode Island 02895. As of March 31, 2016, Defendant operated 9,674 retail locations in 49 states and the District of Columbia, including in-store Target pharmacies which Defendant acquired in December 2015.

### III.    JURISDICTION AND VENUE

8.      The Court has subject matter jurisdiction over Plaintiff's class claims pursuant to 28 U.S.C. § 1332(d) because the combined claims of the proposed Class Members exceed $5,000,000 and because Defendant is a citizen of a different state than Plaintiff and most Class Members.

9.      This Court has personal jurisdiction over Defendant because it regularly conducts business in this District.

10.     Venue is proper in this District pursuant to: (1) 28 U.S.C. § 1391(b)(2) in that a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District; and (2) 28 U.S.C. § 1391(b)(3) in that Defendant is subject to personal jurisdiction in this District.

## IV.   FACTUAL ALLEGATIONS

11.    Aloe Vera gel is made from an extract of the Aloe Vera plant leaf.  Aloe Vera is also known as Burn Plant, Elephant's Gall, Ghee-Kunwar, Hsiang-Dan, Kanya, Kumari, Lily of the Desert, Miracle Plant, and other names.

12.    Aloe Vera is typically used to moisturize dry and irritated skin. However, consuming Aloe Vera is also a popular folk remedy, believed to treat everything from hypertension to the common cold.

13.    A 1999 study in the British Journal of General Practice found that consuming Aloe Vera may help lower cholesterol and reduce glucose levels.[2] Naturally, these findings sparked renewed interest in products containing "100%" "PURE" aloe.

14.    "The global market for aloe vera products is estimated to have reached $13 billion, according to information presented at a recent workshop held by the International Aloe Science Council."[3]

15.    The front label of the Product clearly states that the product contains "Aloe Vera":

---

[2]    http://www.aloevera-info.org/downloads/Study_AV_Clinical%20efficacy.pdf, *last accessed* June 9, 2016.

[3]    http://www.nutraingredients-usa.com/Markets/Global-aloe-market-estimated-at-13-billion, *last accessed* June 9, 2016.



16.    Defendant's previous Product label was even more misleading, stating that the Product contained "100% pure aloe vera" comparable to "Fruit of the Earth® Aloe Vera Gel":



17. Incorporating the representations made on Defendant's website is appropriate because the website's address is printed on the back of Defendant's Product label.

18. Defendant is fully aware that its Product does not contain aloe and that its Product label is misleading.

19. Plaintiff's counsel had the Product tested which showed no acemannan

6

(a key aloe component), plus the inclusion of propylene glycol that is not listed on the label or the list of ingredients. Propylene glycol is a less-toxic / non-toxic form of antifreeze.

20. Based on these test results, Defendant's claim that its Product contains "aloe vera" is false, let alone that it contains "100% "PURE" aloe vera.

21. According to the International Aloe Science Council ("IASC"), **"[p]roducts that do not contain Acemannan are not considered to be true aloe vera.**"[4]

22. Other authoritative sources also consider Acemannan to be the main active ingredient in properly processed Aloe Vera inner leaf gel.[5] Improper manufacturing processes used by many aloe product manufacturers can produce aloe products with little or no Acemannan. Currently, most manufacturers do not assay for Acemannan content in their final products.

23. The difference between the Product promised and the Product sold is significant. The lack of Aloe Vera and Acemannan in the Product fully diminishes the value of the Product.

---

[4]     http://www.iasc.org/Consumers/AloeVeraFAQ.aspx, *last accessed* June 9, 2016 (emphasis in original).

[5]     *See* Johnson AR, White AC, McAnalley BH. Comparison of common topical agents for wound treatment: Cytotoxicity for human fibroblast in culture. *Wounds: a compendium of clinical research and practice*. 1989; (3): 186-192.

7

24. Defendant's Product also contains a "CVS Quality Money Back Guarantee" which is printed in bold on the back of the Product label.

25. At all relevant times, Defendant directed the above-referenced statements and claims, including its "100%" "PURE" aloe content claims, to consumers in general and Class Members in particular, as evidenced by their eventual purchases of the Product.

26. "Aloe Vera Gel" is the first item listed on Defendant's Product label under "active ingredients." This is doubly improper and misleading, in that (a) Aloe Vera Gel does not qualify as an active ingredient since the active component of Aloe Vera is Acemannan, and (b) the Product *contains no aloe or Acemannan*.

27. "Aloe Vera Gel" is not recognized as valid cosmetic ingredient. The list of approved ingredients is published by the Cosmetic, Toiletry and Fragrance Association, Inc. in the Cosmetic Ingredient Dictionary ("CID"). 21 C.F.R. § 701.3(c). The CID lists "Aloe Leaf Powder" and "Aloe Vera Juice" as recognized ingredients, but "Aloe Vera Gel" has never been listed in the CID.

28. Defendant lists "Aloe Vera Gel" as the predominant ingredient in its Product to mislead consumers into believing the product is "100%" "PURE" Aloe Vera. Not surprisingly, Defendant's Product is one of the few products of its kind on store shelves, making Defendant's Product very popular.

29. The above facts all add up to a single conclusion: Defendant developed

and knowingly employs a marketing strategy designed to deceive consumers. The only conceivable purpose of this scheme is to stimulate sales and enhance Defendant's profits.

30.     Plaintiff and Class Members were in fact misled by Defendant's representations and marketing of its Product. The absence of aloe leaves no reason to purchase the Product at all, since countless other proven and less-expensive moisturizers exist.

31.     The Product is a defined as a "cosmetic" under 21 U.S.C.S. § 321(i) and as a "drug" under § 321(g)(i) and 21 C.F.R .§ 700.35.

32.     The FDA promulgated regulations for compliance with the Food Drug & Cosmetics Act ("FDCA") at 21 C.F.R. § 201 *et seq*. (for drugs), and § 701 *et seq*. (for cosmetics). The Product is misbranded under 21 C.F.R. § 701.1.

33.     Defendant's deceptive statements violate 21 U.S.C.S. § 362(a), which also deem a cosmetic product misbranded when the label contains a statement that is "false or misleading in any particular."

34.     Further, Defendant's Product is misbranded under 21 C.F.R. § 701.1(b) which deems cosmetics misbranded when "[t]he labeling of a cosmetic which contains two or more ingredients [is designated] in such labeling by a name which includes or suggests the name of one or more but not all such ingredients." This is deemed misbranding, "even though the names of all such ingredients are stated

9

elsewhere in the labeling."

35.     The first ingredient listed on the back label of the Product is "Aloe Vera Gel," not Aloe Vera.  21 C.F.R. § 701.3(a) requires "[t]he label on each package of a cosmetic [to] bear the name of each ingredient in descending order of predominance …"  "Aloe Vera Gel" is an illusory term made up by Defendant and the use of that term in the list of ingredients is misleading and a violation of § 701.3(a).

36.     21 C.F.R. § 701.3(c)(2)(i)(b) also requires all Carbomer compounds in cosmetics to be identified by their specific type, *e.g.*, Carbomer 934, 934P, 940, 941, 960, or 961.  Defendant's Product label violates this standard and merely lists the ingredient "Carbomer."

37.     "Where a cosmetic product is also an over-the-counter drug product, the [label] shall declare the active drug ingredients as set forth in § 201.66(c)(2) and (d) of this chapter, and the [label] shall declare the cosmetic ingredients as set forth in § 201.66(c)(8) and (d) of this chapter."  Defendant's Product label lists no "active ingredient" in violation of 21 C.F.R. §701.3(d) and 21 C.F.R. § 201.66(b)(2), and the purported portion of the primary ingredient to the other ingredients in the Product – i.e., "100%" – is false and fails to comply with 21 C.F.R. §201.66(c)(2).

38.     All drugs and some cosmetics, including Defendant's Product, are required to be sold in tamper-resistant packaging.  21 C.F.R. § 700.25.  No such

packaging accompanies Defendant's Product.

39.     Defendant's label declarations, including especially its warnings that the Product should be kept out of reach of children, is for external use only, and should not be used in contact with a person's eyes, all lack the prominence and conspicuousness required by § 602(c) of the FDCA.  Defendant's disclaimer and warning are printed in tiny, barely readable text on a clear background.  As such, the declaration and disclosure violate 21 C.F.R. §701.2(a)(6).

40.     Defendant's Product label also fails to include the required "Inactive Ingredient" disclosure required by 21 C.F.R. § 201.66(c)(8) or the "Questions" or "Questions or comments?" disclosure and phone number required by 21 C.F.R. §201.66(c)(9).

41.     Illinois has also expressly adopted the federal food labeling requirements as its own: "[a] federal regulation automatically adopted pursuant to this Act takes effect in this State on the date it becomes effective as a Federal regulation." 410 ILCS 620/21. Thus, a violation of federal food, drug and cosmetic labeling laws is an independent violation of Illinois law and actionable as such.

42.     Pursuant to 410 ILCS 620/19, which mirrors 21 U.S.C. § 362(a), "[a] cosmetic is misbranded – (a) If its labeling is false or misleading in any particular."

43.     The introduction of misbranded cosmetics into interstate commerce is prohibited under the FDCA and all state parallel statutes cited in this Complaint.

44.     In addition, the Illinois Consumer Fraud and Deceptive Business Practices Act also protects Defendant's consumers, and provides:

> § 2. Unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact, or the use or employment of any practice described in Section 2 of the "Uniform Deceptive Trade Practices Act", approved August 5, 1965, in the conduct of any trade or commerce are hereby declared unlawful whether any person has in fact been misled, deceived or damaged thereby.

815 ILCS 505/2.

45.     Plaintiff and Class Members would not have purchased the Product had they known the truth about the Product or Defendant's scheme to sell the Product as a misbranded cosmetic and drug.

## V.     CLASS ACTION ALLEGATIONS

46.     Plaintiff bring this action individually and as representatives of all those similarly situated, pursuant to Federal Rule of Civil Procedure 23, on behalf of the below-defined Classes:

> **National Class:** All persons in the United States who purchased the Product.
>
> **Consumer Fraud Multi-State Class:** All persons in the States of California, Florida, Illinois, Massachusetts, Michigan,

Minnesota, Missouri, New Jersey, New York, and Washington who purchased the Product.[6]

**Illinois Subclass:** All persons in the State of Illinois who purchased the Product.

Excluded from the Classes are Defendant and its affiliates, parents, subsidiaries, employees, officers, agents, and directors. Also excluded are any judicial officers presiding over this matter and the members of their immediate families and judicial staff.

47. Certification of Plaintiff's claims for class-wide treatment is appropriate because Plaintiff can prove the elements of their claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

48. **Numerosity – Federal Rule of Civil Procedure 23(a)(1).** The members of the Classes are so numerous that their individual joinder herein is impracticable. On information and belief, Class members number in the thousands to millions. The precise number of Class members and their addresses are presently

---

[6]     The States in the Consumer Fraud Multi-State Class are limited to those States with similar consumer fraud laws under the facts of this case: California (Cal. Bus. & Prof. Code §17200, *et seq.*); Florida (Fla. Stat. §501.201, *et seq.*); Illinois (815 Ill. Comp. Stat. 505/1, *et seq.*); Massachusetts (Mass. Gen. Laws Ch. 93A, *et seq.*); Michigan (Mich. Comp. Laws §445.901, *et seq.*); Minnesota (Minn. Stat. §325F.67, *et seq.*); Missouri (Mo. Rev. Stat. 010, *et seq.*); New Jersey (N.J. Stat. §56:8-1, *et seq.*); New York (N.Y. Gen. Bus. Law §349, *et seq.*); and Washington (Wash. Rev. Code §19.86.010, *et seq.*).

unknown to Plaintiff, but may be ascertained from Defendant's books and records. Class members may be notified of the pendency of this action by mail, email, Internet postings, and/or publication.

49. **Commonality and Predominance – Federal Rule of Civil Procedure 23(a)(2) and 23(b)(3).** Common questions of law and fact exist as to all Class members and predominate over questions affecting only individual Class members. Such common questions of law or fact include:

  a. Whether the marketing, advertising, packaging, labeling, and other promotional materials for the Product are deceptive;

  b. Whether Defendant's actions violated the State consumer fraud statute invoked below;

  c. Whether Defendant breached an express warranty to Plaintiff and Class members; and

  d. Whether Defendant was unjustly enriched at the expense of the Plaintiff and Class Members.

50. Defendant engaged in a common course of conduct giving rise to the legal rights sought to be enforced by Plaintiff, on behalf of herself and the other Class members. Similar or identical statutory and common law violations, business practices, and injuries are involved. Individual questions, if any, pale by comparison,

in both quality and quantity, to the numerous common questions that dominate this action.

51. **Typicality – Federal Rule of Civil Procedure 23(a)(3).** Plaintiff's claims are typical of the claims of the other members of the Classes because, among other things, all Class members were comparably injured through Defendant's uniform misconduct described above. Further, there are no defenses available to Defendant that are unique to Plaintiff.

52. **Adequacy of Representation – Federal Rule of Civil Procedure 23(a)(4).** Plaintiff is an adequate Class representative because her interests do not conflict with the interests of the other Class members she seeks to represent, she has retained counsel competent and experienced in complex class action litigation, and she will prosecute this action vigorously. The Classes' interests will be fairly and adequately protected by Plaintiff and her counsel.

53. **Insufficiency of Separate Actions – Federal Rule of Civil Procedure 23(b)(1).** Absent a representative class action, members of the Classes would continue to suffer the harm described herein, for which they would have no remedy. Even if separate actions could be brought by individual consumers, the resulting multiplicity of lawsuits would cause undue burden and expense for both the Court and the litigants, as well as create a risk of inconsistent rulings and adjudications that might be dispositive of the interests of similarly situated purchasers, substantially

impeding their ability to protect their interests, while establishing incompatible standards of conduct for Defendant. The proposed Classes thus satisfy the requirements of Fed. R. Civ. P. 23(b)(1).

54.     **Declaratory and Injunctive Relief – Federal Rule of Civil Procedure 23(b)(2).** Defendant has acted or refused to act on grounds generally applicable to Plaintiff and the other members of the Classes, thereby making appropriate final injunctive relief and declaratory relief, as described below, with respect to the members of the Classes as a whole.

55.     **Superiority – Federal Rule of Civil Procedure 23(b)(3).** A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The damages or other financial detriment suffered by Plaintiff and the other members of the Classes are relatively small compared to the burden and expense that would be required to individually litigate their claims against Defendant, so it would be impracticable for Class members to individually seek redress for Defendant's wrongful conduct. Even if Class members could afford individual litigation, the court system could not. Individualized litigation would create a potential for inconsistent or contradictory judgments, and increases the delay and expense to all parties and the court system. By contrast, the class action device

presents far fewer management difficulties, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

## CLAIMS ALLEGED

### COUNT I

**Violation Of State Consumer Fraud Acts**
**(On Behalf Of The Multi-State Class)**

56.     Plaintiff incorporates paragraphs 1 through 55 as if fully set forth herein.

57.     The Consumer Fraud Acts of the States in the Consumer Fraud Multi-State Class[7] prohibit the use of unfair or deceptive business practices in the conduct of trade or commerce.

58.     Defendant intended that Plaintiff and each of the other members of the Consumer Fraud Multi-State Class would rely upon its deceptive conduct, and a reasonable person would in fact be misled by this deceptive conduct.

59.     As a result of the Defendant's use or employment of unfair or deceptive acts or business practices, Plaintiff and each of the other members of the Consumer Fraud Multi-State Class have sustained damages in an amount to be proven at trial.

---

[7]     California (Cal. Bus. & Prof. Code §17200, *et seq.*); Florida (Fla. Stat. §501.201, *et seq.*); Illinois (815 Ill. Comp. Stat. 505/1, *et seq.*); Massachusetts (Mass. Gen. Laws Ch. 93A, *et seq.*); Michigan (Mich. Comp. Laws §445.901, *et seq.*); Minnesota (Minn. Stat. §325F.67, *et seq.*); Missouri (Mo. Rev. Stat. 010, *et seq.*); New Jersey (N.J. Stat. §56:8-1, *et seq.*); New York (N.Y. Gen. Bus. Law §349, *et seq.*); and Washington (Wash. Rev. Code §19.86.010, *et seq.*).

60.     In addition, Defendant's conduct showed malice, motive, and the reckless disregard of the truth such that an award of punitive damages is appropriate.

## COUNT II

**Violation Of The Illinois Consumer
Fraud And Deceptive Business Practices Act
(In The Alternative To Count I And On Behalf Of The Illinois Subclass)**

61.     Plaintiff incorporates paragraphs 1 through 55 as if fully set forth herein.

62.     The Illinois Consumer Fraud and Deceptive Business Practices Act (the "ICFA"), 815 ILCS 505/1, *et seq.*, prohibits the use of unfair or deceptive business practices in the conduct of trade or commerce. The ICFA is to be liberally construed to effectuate its purpose.

63.     Defendant intended that Plaintiff and each of the other members of the Illinois Subclass would rely upon its deceptive conduct, and a reasonable person would in fact be misled by this deceptive conduct.

64.     As a result of the Defendant's use or employment of unfair or deceptive acts or business practices, Plaintiff and each of the other members of the Illinois Subclass have sustained damages in an amount to be proven at trial.

65.     In addition, Defendant's conduct showed malice, motive, and the reckless disregard of the truth such that an award of punitive damages is appropriate.

18

## COUNT III

### Breach Of Express Warranty
### (On Behalf Of The National Class)

66.     Plaintiff incorporates paragraphs 1 through 55 as if fully set forth herein.

67.     Plaintiff, and each member of the National Class, formed a contract with Defendant when Plaintiff and the other members of the National Class purchased the Product. The terms of the contract included the promises and affirmations of fact made by Defendant on the Product's packaging and through marketing and advertising, as described above. This labeling, marketing and advertising constitute express warranties and became part of the basis of the bargain, and are part of the standardized contract between Plaintiff and the members of the National Class and Defendant.

68.     Plaintiff and the members of the National Class performed all conditions precedent to Defendant's liability under this contract when they purchased the Product.

69.     Defendant breached express warranties about the Product and its qualities because Defendant's statements about the Product were false and the Product does not conform to Defendant's affirmations and promises described above.

70.     Plaintiff and the members of the National Class would not have purchased the Product had they known the true nature of the Product.

71.     As a result of Defendant's breach of warranty, Plaintiff and each member of the National Class has been damaged in the amount of the purchase price of the Product and any consequential damages resulting from their purchases.

## COUNT IV
### Breach Of Implied Warranty
### (On Behalf Of The National Class)

85.     Plaintiff incorporates paragraphs 1 through 55 as if fully set forth herein.

86.     Defendant knew and intended that the members of the National Class would be the ultimate consumers of the Product.

87.     Defendant sold the Product into the stream of commerce, and the Defendant is a merchant with respect to goods such as the Product at issue.

88.     The Product was not merchantable at the time of sale, because it did not—nor could not—have any impact related to the representations as alleged herein.

89.     Plaintiff and the other members of the National Class did not receive the benefit of their bargain in purchasing the Product.

90.     Because of Defendants' breach of the implied warranty, the Plaintiff and the other members of the National Class were injured.

91.     As a result of Defendant's breach, Plaintiff and the other members of the National Class have sustained damages.

## COUNT V

**Unjust Enrichment**
**(In The Alternative To Counts III and IV, On Behalf Of The National Class)**

92.     Plaintiff incorporates paragraphs 1 through 55 as if fully set forth herein.

93.     Plaintiff and the other members of the National Class conferred benefits on Defendant by purchasing the Product.

94.     Defendant has been unjustly enriched in retaining the revenues derived from the purchases by Plaintiff and the other members of the National Class of the Product. Retention of those monies under these circumstances is unjust and inequitable because Defendant's labeling of the Product was misleading to consumers, which caused injuries to Plaintiff and the other members of the National Class because they would have not purchased the Product if the true facts would have been known.

95.     Because Defendant's retention of the non-gratuitous benefits conferred on them by Plaintiff and the other members of the National Class is unjust and inequitable, Defendant must pay restitution to Plaintiff and the other members of the National Class for their unjust enrichment, as ordered by the Court.

## VI.   DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury of all claims in this Complaint so triable. Plaintiff also respectfully requests leave to amend this Complaint to conform to the evidence, if such amendment is needed for trial.

## VII.   REQUEST FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of the Classes proposed in this Complaint, respectfully request that the Court enter judgment as follows:

A.   Declaring that this action is a proper class action, certifying the Class and Subclass requested herein, designating Plaintiff as Class Representative and appointing the undersigned counsel as Class Counsel;

B.   Ordering Defendant to pay actual damages to Plaintiff and the other members of the Class;

C.   Ordering Defendant to pay statutory damages, as provided by the applicable state consumer protection statutes, invoked above, to Plaintiff and the other members of the Class;

D.   Ordering Defendant to pay attorneys' fees and litigation costs;

E.   Ordering Defendant to pay both pre- and post-judgment interest on any amounts awarded; and

F.   Ordering such other and further relief as may be just and proper.

Dated: June 10, 2016

PATRICIA BORDENET, individually and on behalf of all others similarly situated,

By: /s/ Brian J. Wanca
      One of the Attorneys for Plaintiff and the putative class

      Brian J. Wanca
      Jeffrey A. Berman
      ANDERSON + WANCA
      3701 Algonquin Road, Suite 500
      Rolling Meadows, IL  60008
      (847) 368-1500
      bwanca@andersonwanca.com
      jberman@andersonwanca.com

      Jason Thompson (*Pro Hac Vice* Application Forthcoming)
      Lance Young (*Pro Hac Vice* Application Forthcoming)
      SOMMERS SCHWARTZ, P.C.
      One Towne Square, 17th Floor
      Southfield, Michigan 48076
      (248) 355-0300
      jthompson@sommerspc.com
      lyoung@sommerspc.com

      Nick Suciu III
      BARBAT, MANSOUR & SUCIU PLLC
      1644 Bracken Rd.
      Bloomfield Hills, Michigan 48302
      (313) 303-3472
      nicksuciu@bmslawyers.com

Jonathan N. Shub
KOHN, SWIFT & GRAF, P.C.
One South Broad Street
Suite 2100
Philadelphia, PA 19107
(215) 238-1700
jshub@kohnswift.com

Donald J. Enright
Lori G. Feldman
LEVI & KORSINSKY LLP
1101 30th Street, N.W.
Suite 115
Washington, DC 20007
(202) 524-4290
denright@zlk.com
lfeldman@zlk.com

Jason T. Brown
Patrick S. Almonrode (*Pro Hac Vice*
Application Forthcoming)
JTB Law Group
155 2nd Street, Suite 4
Jersey City, NJ 07302
(877) 561-0000
jtb@jtblawgroup.com
patalmonrode@jtblawgroup.com