# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS

|  |  |  |
|---|---|---|
| PATRICIA BORDENET, KELLY BIDDLE, JOSEPH BRANCIFORTE, DANIEL BROWN, JENNIFER CARLSSON, AMY CONNOR, TARYN CORNELIUS, PHYLLIS CZAPSKI, RAELEE DALLAQUE, SHIRLEY DARDEN, ALEXANDRA GROFFSKY, EMMA GROFFSKY, JACK HOLZMAN, LA TANYA JAMES, MICHELLE JESSOP, ANDEE KOCHAVI, SKYE KREJCKANT, TAMMY KUMMERS, DANIEL LADD, KEITH LUTZ, KATHY MELLODY, SUSAN NAZARI, TINA NICOLOSI, JONATHAN PERLIN, DANA PHILLIPS, NANCY REEVES, SHELLEY WAITZMAN, AMBER WIMBERLY and DONNA WHITE, individually and on behalf of all others similarly situated, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | **FIRST AMENDED CLASS ACTION COMPLAINT**<br><br>Case No. 1:16-cv-06103<br><br>**JURY TRIAL DEMANDED** |
| Plaintiffs, | ) ) |  |
| v. | ) ) |  |
| CVS PHARMACY, INC., TARGET CORPORATION d/b/a TARGET, WALGREENS BOOTS ALLIANCE, INC., d/b/a WALGREEN CO., WAL-MART STORES, INC., and FRUIT OF THE EARTH, INC., | ) ) ) ) ) ) ) |  |
| Defendants. | ) |  |

## FIRST AMENDED CLASS ACTION COMPLAINT

Plaintiffs Patricia Bordenet, Kelly Biddle, Joseph Branciforte, Daniel Brown, Jennifer Carlsson, Amy Connor, Taryn Cornelius, Phyllis Czapski, Raelee Dallaque, Shirley Darden, Alexandra Groffsky, Emma Groffsky, Jack Holzman, La Tanya James, Michelle Jessop, Andee Kochavi, Skye Krejckant, Tammy Kummers, Daniel Ladd, Keith Lutz, Kathy Mellody, Susan Nazari, Tina Nicolosi, Jonathan Perlin, Dana Phillips, Nancy Reeves, Shelley Waitzman, Amber Wimberly and Donna White ("Plaintiffs"), individually and on behalf of all others similarly situated, through the undersigned attorneys, upon personal knowledge as to their own acts and status, and upon information and belief based upon the investigation of counsel as to the remaining allegations, allege as follows:

## I.    INTRODUCTION

1.     This is a nationwide consumer class action brought by Plaintiffs on behalf of all individuals (the "Class") who purchased one or more of the following products for personal use and not for resale: CVS Aftersun Aloe Vera Moisturizing Gel, previously called CVS 100% Pure Aloe Vera Gel ("the CVS Product"); Up & Up Aloe Vera Gel (the "Target Product"); Equate Aloe After Sun Gel and Equate Aloe Sunburn Relief Gel (the "Wal-Mart Products"); Well at Walgreens – Alcohol Free Aloe Vera Body Gel (the "Walgreens Product"); and Fruit of the Earth Aloe 100% Gel (the "FOTE Product") (collectively, the "Products").

2

2.      CVS Pharmacy, Inc. ("CVS") advertises, markets, sells, and distributes the CVS Product in 6 oz. tubes and 3 oz. and 20 oz. bottles. According to CVS's website, the CVS Product contains "a blend of Aloe Vera Gel"[1] and, until recently, the CVS Product label stated it contained "100% pure aloe vera gel." In reality, according to independent lab tests, ***the CVS Product contains no actual Aloe Vera at all***. The CVS Product also contains propylene glycol, a non-toxic form of antifreeze, which is not listed on the label or in the list of ingredients.

3.      Walgreens Boots Alliance, Inc., d/b/a Walgreen Co. ("Walgreens") advertises, markets, sells, and distributes the Walgreens Product in 16 oz. bottles. According to the Walgreens Product's back label and Walgreen Co.'s website, the Walgreens Product contains "Aloe Barbadensis Leaf Juice" and "Carbomer," along with other ingredients.[2] In reality, according to independent lab tests, ***the Walgreens Product contains no actual Aloe Vera at all***.

4.      Wal-Mart Stores, Inc. ("Wal-Mart") advertises, markets, sells, and distributes the Wal-Mart Products in 20 oz. bottles. According to the Wal-Mart Products' back labels and Wal-Mart's website, the Wal-Mart Products contain "Aloe

---

[1] http://www.cvs.com/shop/beauty/skin-care/sun-tanning/cvs-aftersun-aloe-vera-moisturizing-gel-6-oz-prodid-1016968?skuId=309890, *last accessed* Aug. 4, 2016.

[2] http://www.walgreens.com/store/c/walgreens-aloe-vera-gel/ID=prod6268970-product, *last accessed* July 30, 2016.

3

Barbadensis (Aloe Vera) Leaf Juice" and "Carbomer," along with other ingredients.[3] In reality, according to independent laboratory tests, **the Wal-Mart Products contain no actual Aloe Vera at all**.

5.     Target Corporation ("Target") advertises, markets, sells, and distributes the Target Product. According to the Product label, it contains "pure aloe vera." Target repeats this representation on its website.[4] In reality, according to independent lab tests, **the Target Product contains no actual Aloe Vera at all**.

6.     Fruit of the Earth, Inc. ("FOTE") manufactures, advertises, markets, sells, and distributes the FOTE Product. According to FOTE's website, Fruit of the Earth is the "world leader in the production of aloe vera-based and nature-inspired products," and committed to providing customers with the "finest, purest formulas on the market."[5] In reality, according to independent lab tests, **the FOTE Product contains no actual Aloe Vera at all**.

7.     Based upon Plaintiffs' pre-filing investigations and discussions with FOTE's legal counsel, Plaintiffs have learned that FOTE is, or likely was, the supplier of the Aloe Vera Products marketed and sold by each of the other retail

---

[3] http://www.walmart.com/ip/Equate-Aloe-Vera-Aftersun-Gel-20-oz/14122658#about, *last accessed* Aug. 22, 2016; *see also* http://www.walmart.com/ip/Equate-Aloe-Vera-Cooling-Gel-20-oz/14122657#about, *last accessed* Aug. 22, 2016.

[4] http://www.target.com/p/green-aloe-gel-16-oz-up-up/-/A-11982637, *last accessed* July 18, 2016.

[5] *See* http://www.FOTE.com, *last accessed* April 26, 2016.

Defendants in this case.

8.      When FOTE supplied Aloe Vera product to the other retail Defendants, it knew or should have known that those retailers did business in many states, and FOTE was therefore aware that its Aloe Vera product was being sold in Illinois, specifically the Northern District of Illinois.

9.      Plaintiffs' causes of action against FOTE as the supplier of the Aloe Vera Products at issue arise from the same transactions as their claims against the Retailers, *i.e.*, the Plaintiffs' purchases of the Products.

10.     Based on the above facts, FOTE utilized a stream of commerce – a flow of products from manufacture to distribution to retail sale – in such a way that it was aware that the final products were being marketed in Illinois, including the Northern District of Illinois, and thus the possibility of a lawsuit there cannot come as a surprise. *Richter v. Instar Enters. Int'l, Inc*., 594 F. Supp. 2d 1000, 1015 (N.D. Ill. 2009).

11.     CVS, Target, Walgreens, Wal-Mart and FOTE are referred to, collectively below, as "Defendants."

12.     The Products' labels and Defendants' advertisements for the Products, including the representations made on Defendants' websites, are false, deceptive and misleading, in violation of the Federal Food Drug & Cosmetics Act and its parallel state statutes, and almost every state warranty, consumer protection, and product

5

labeling law in the United States.

13.     Based on the above allegations, Defendants CVS, Walgreens, Target and Wal-Mart ("Retailers") and FOTE share a common nucleus of facts.  First, their after-sun aloe products all generally contain the same basic ingredients and materials.   Second, they all label their respective aloe after-sun products as containing aloe. Third, none of the Products in fact contain any aloe.  And lastly, all of the Products were supplied to the Retailers by FOTE.

## II.    <u>PARTIES</u>

*Plaintiffs*

14.     During the relevant period, members of the Class throughout the United States purchased the Products through numerous brick-and-mortar retail locations and online through Defendants' websites. Plaintiffs and members of the Class suffered an injury in fact caused by the false,  fraudulent, unfair, deceptive, and misleading practices set forth in this Complaint. Plaintiffs and members of the Class would not have purchased the Products had they known that they contain no Aloe Vera.

15.     Plaintiff Patricia Bordenet is a resident of Hoffman Estates, Illinois. She purchased the CVS Product for her own use during the four years preceding the filing of this Complaint, most recently at a CVS retail location in Illinois. Patricia Bordenet and members of the Class suffered an injury in fact caused by the false, fraudulent,

unfair, deceptive and misleading practices of CVS set forth in this Complaint. Plaintiff Patricia Bordenet and Class members would not have purchased the CVS Product had they known that it contains no Aloe Vera.

16.     Plaintiff Kelly Biddle is a resident and citizen of Lockhart, Alabama. She purchased the FOTE Product for her own use during the four years preceding the filing of this Complaint, most recently at a Wal-Mart retail location in Alabama. Kelly Biddle and members of the Class suffered an injury in fact caused by the false, fraudulent, unfair, deceptive and misleading practices of FOTE set forth in this Complaint. Plaintiff Kelly Biddle and Class members would not have purchased the FOTE Product had they known that it contains no Aloe Vera.

17.     Plaintiff Joseph Branciforte is a resident and citizen of Hackensack, New Jersey. He purchased the CVS Product for his own use during the four years preceding the filing of this Complaint, most recently at a CVS retail location in New Jersey. Joseph Branciforte and members of the Class suffered an injury in fact caused by the false, fraudulent, unfair, deceptive and misleading practices of CVS set forth in this Complaint. Plaintiff Joseph Branciforte and Class members would not have purchased the CVS Product had they known that it contains no Aloe Vera.

18.     Plaintiff Daniel Brown is a resident and citizen of Springfield, Missouri. He purchased the CVS Product for his own use during the four years preceding the filing of this Complaint, most recently at a CVS retail location in Missouri. Daniel

Brown and members of the Class suffered an injury in fact caused by the false, fraudulent, unfair, deceptive and misleading practices of CVS set forth in this Complaint. Plaintiff Daniel Brown and Class members would not have purchased the CVS Product had they known that it contains no Aloe Vera.

19. Plaintiff Jennifer Carlsson is a resident and citizen of Chicago, Illinois. She purchased the CVS Product for her own use during the four years preceding the filing of this Complaint, most recently in April, 2016 at a CVS retail location in Hollywood, Florida. Jennifer Carlsson and members of the Class suffered an injury in fact caused by the false, fraudulent, unfair, deceptive and misleading practices of CVS set forth in this Complaint. Plaintiff Jennifer Carlsson and Class members would not have purchased the CVS Product had they known that it contains no Aloe Vera.

20. Plaintiff Amy Connor is a resident and citizen of Havana, Illinois. She purchased a Wal-Mart Product for her own use during the four years preceding the filing of this Complaint, most recently in June, 2016 at a Wal-Mart retail location in Illinois. Amy Connor and members of the Class suffered an injury in fact caused by the false, fraudulent, unfair, deceptive and misleading practices of Wal-Mart set forth in this Complaint. Plaintiff Amy Connor and Class members would not have purchased the Wal-Mart Product had they known that it contains no Aloe Vera.

21. Plaintiff Taryn Cornelius is a resident and citizen of Suffern, New York.

She purchased the CVS Product for her own use during the four years preceding the filing of this Complaint, most recently in June, 2016 at a CVS retail location in Wyckoff, New Jersey. Taryn Cornelius and members of the Class suffered an injury in fact caused by the false, fraudulent, unfair, deceptive and misleading practices of CVS set forth in this Complaint. Plaintiff Taryn Cornelius and Class members would not have purchased the CVS Product had they known that it contains no Aloe Vera.

22.    Plaintiff Phyllis Czapski is a resident and citizen of Troy, Michigan. She purchased the CVS Product for her own use during the four years preceding the filing of this Complaint, most recently at a CVS retail location in Florida. Phyllis Czapski and members of the Class suffered an injury in fact caused by the false, fraudulent, unfair, deceptive and misleading practices of CVS set forth in this Complaint. Plaintiff Phyllis Czapski and Class members would not have purchased the CVS Product had they known that it contains no Aloe Vera.

23.    Plaintiff Raelee Dallaqua is a resident and citizen of Garden City, New York. She purchased the FOTE Product for her own use during the four years preceding the filing of this Complaint, most recently on Amazon.com. Raelee Dallaqua and members of the Class suffered an injury in fact caused by the false, fraudulent, unfair, deceptive and misleading practices of FOTE set forth in this Complaint. Plaintiff Raelee Dallaqua and Class members would not have purchased the FOTE Product had they known that it contains no Aloe Vera.

9

24.     Plaintiff Shirley Darden is a resident and citizen of Port Gibson, Missouri. She purchased the FOTE Product for her own use during the four years preceding the filing of this Complaint, most recently at a dollar store retail location in Missouri. Shirley Darden and members of the Class suffered an injury in fact caused by the false, fraudulent, unfair, deceptive and misleading practices of FOTE set forth in this Complaint. Plaintiff Shirley Darden and Class members would not have purchased the FOTE Product had they known that it contains no Aloe Vera.

25.     Plaintiff Alexandra Groffsky is a resident and citizen of Chicago, Illinois. She purchased the FOTE Product for her own use during the four years preceding the filing of this Complaint, most recently at a CVS retail location. Alexandra Groffsky and members of the Class suffered an injury in fact caused by the false, fraudulent, unfair, deceptive and misleading practices of FOTE set forth in this Complaint. Plaintiff Alexandra Groffsky and Class members would not have purchased the FOTE Product had they known that it contains no Aloe Vera.

26.     Plaintiff Emma Groffsky is a resident and citizen of Ann Arbor, Michigan. She purchased the FOTE Product for her own use during the four years preceding the filing of this Complaint, most recently at a CVS retail location. Emma Groffsky and members of the Class suffered an injury in fact caused by the false, fraudulent, unfair, deceptive and misleading practices of FOTE set forth in this Complaint. Plaintiff Emma Groffsky and Class members would not have purchased

10

the FOTE Product had they known that it contains no Aloe Vera.

27.     Plaintiff Jack Holzman is a resident and citizen of Oakland, California. He purchased the CVS Product for his own use during the four years preceding the filing of this Complaint, most recently in June, 2016 at a CVS retail location in Oakland, California. Jack Holzman and members of the Class suffered an injury in fact caused by the false, fraudulent, unfair, deceptive and misleading practices of CVS set forth in this Complaint. Plaintiff Jack Holzman and Class members would not have purchased the CVS Product had they known that it contains no Aloe Vera.

28.     Plaintiff La Tanya James is a resident and citizen of Long Beach, California. She purchased the FOTE Product for her own use during the four years preceding the filing of this Complaint, most recently at Target and Wal-Mart retail locations. La Tanya James and members of the Class suffered an injury in fact caused by the false, fraudulent, unfair, deceptive and misleading practices of FOTE set forth in this Complaint. Plaintiff La Tanya James and Class members would not have purchased the FOTE Product had they known that it contains no Aloe Vera.

29.     Plaintiff Michelle Jessop is a resident and citizen of Mason, Ohio. She purchased the FOTE Product for her own use during the four years preceding the filing of this Complaint, most recently at a Wal-Mart retail location in Ohio. Michelle Jessop and members of the Class suffered an injury in fact caused by the false, fraudulent, unfair, deceptive and misleading practices of FOTE set forth in this

11

Complaint. Plaintiff Michelle Jessop and Class members would not have purchased the FOTE Product had they known that it contains no Aloe Vera.

30.    Plaintiff Andee Kochavi is a resident and citizen of Miami, Florida. She purchased the CVS Product for her own use during the four years preceding the filing of this Complaint, most recently in June, 2016 at a CVS retail location in Miami, Florida. Andee Kochavi and members of the Class suffered an injury in fact caused by the false, fraudulent, unfair, deceptive and misleading practices of CVS set forth in this Complaint. Plaintiff Andee Kochavi and Class members would not have purchased the CVS Product had they known that it contains no Aloe Vera.

31.    Plaintiff Skye Krejckant is a resident and citizen of Gilford, New Hampshire. She purchased the CVS Product for her own use during the four years preceding the filing of this Complaint, specifically in June, 2016 at a CVS retail location in New Hampshire. Skye Krejckant and members of the Class suffered an injury in fact caused by the false, fraudulent, unfair, deceptive and misleading practices of CVS set forth in this Complaint. Plaintiff Skye Krejckant and Class members would not have purchased the CVS Product had they known that it contains no Aloe Vera.

32.    Plaintiff Tammy Kummers is a resident and citizen of Neenah, Wisconsin. She purchased the CVS Product for her own use during the four years preceding the filing of this Complaint, most recently at a CVS retail location in

Wisconsin. Tammy Kummers and members of the Class suffered an injury in fact caused by the false, fraudulent, unfair, deceptive and misleading practices of CVS set forth in this Complaint. Plaintiff Tammy Kummers and Class members would not have purchased the CVS Product had they known that it contains no Aloe Vera.

33.     Plaintiff Daniel Ladd is a resident and citizen of Needham, Massachusetts. He purchased the CVS Product for his own use during the four years preceding the filing of this Complaint, most recently in June, 2016 at a CVS retail location in Needham, Massachusetts. Daniel Ladd and members of the Class suffered an injury in fact caused by the false, fraudulent, unfair, deceptive and misleading practices of CVS set forth in this Complaint. Plaintiff Daniel Ladd and Class members would not have purchased the CVS Product had they known that it contains no Aloe Vera.

34.     Plaintiff Keith Lutz is a resident and citizen of Havertown, Pennsylvania. He purchased the CVS Product for his own use during the four years preceding the filing of this Complaint, most recently at a CVS retail location in Florida. Keith Lutz and members of the Class suffered an injury in fact caused by the false, fraudulent, unfair, deceptive and misleading practices of CVS set forth in this Complaint. Plaintiff Keith Lutz and Class members would not have purchased the CVS Product had they known that it contains no Aloe Vera.

35.     Plaintiff Kathy Mellody is a resident and citizen of Clifton, New Jersey.

She purchased the CVS Product for her own use during the four years preceding the filing of this Complaint, most recently in May, 2016 at a CVS retail location in New Jersey. Kathy Mellody and members of the Class suffered an injury in fact caused by the false, fraudulent, unfair, deceptive and misleading practices of CVS set forth in this Complaint. Plaintiff Kathy Mellody and Class members would not have purchased the CVS Product had they known that it contains no Aloe Vera.

36.     Plaintiff Susan Nazari is a resident and citizen of Sacramento, California. She purchased the Target Product for her own use during the four years preceding the filing of this Complaint, specifically in July, 2016 at a Target retail location in California. Susan Nazari and members of the Class suffered an injury in fact caused by the false, fraudulent, unfair, deceptive and misleading practices of Target set forth in this Complaint. Plaintiff Susan Nazari and Class members would not have purchased the Target Product had they known that it contains no Aloe Vera.

37.     Plaintiff Tina Nicolosi is a resident and citizen of Whitestone, New York. She purchased the CVS Product for her own use during the four years preceding the filing of this Complaint, most recently in 2015 at a CVS retail location in Whitestone, New York. Tina Nicolosi and members of the Class suffered an injury in fact caused by the false, fraudulent, unfair, deceptive and misleading practices of CVS set forth in this Complaint. Plaintiff Tina Nicolosi and Class members would not have purchased the CVS Product had they known that it contains no Aloe Vera.

14

38.     Plaintiff Jonathan Perlin is a resident and citizen of Madison, Wisconsin. He purchased the CVS Product for his own use during the four years preceding the filing of this Complaint, most recently in June, 2016 at a CVS retail location in Madison, Wisconsin. Jonathan Perlin and members of the Class suffered an injury in fact caused by the false, fraudulent, unfair, deceptive and misleading practices of CVS set forth in this Complaint. Plaintiff Jonathan Perlin and Class members would not have purchased the CVS Product had they known that it contains no Aloe Vera.

39.     Plaintiff Dana Phillips is a resident and citizen of Kernersville, North Carolina. She purchased the FOTE Product for her own use during the four years preceding the filing of this Complaint, most recently at Wal-Mart and Rite-Aid retail locations in North Carolina. Dana Phillips and members of the Class suffered an injury in fact caused by the false, fraudulent, unfair, deceptive and misleading practices of FOTE set forth in this Complaint. Plaintiff Dana Phillips and Class members would not have purchased the FOTE Product had they known that it contains no Aloe Vera.

40.     Plaintiff Nancy Reeves is a resident and citizen of Imperial, California. She purchased the FOTE Product for her own use during the four years preceding the filing of this Complaint, most recently at a CVS retail location in Yuma, Arizona, and at Wal-Mart and K-Mart retail locations in El Centro, California. Nancy Reeves and members of the Class suffered an injury in fact caused by the false, fraudulent,

15

unfair, deceptive and misleading practices of FOTE set forth in this Complaint. Plaintiff Nancy Reeves and Class members would not have purchased the FOTE Product had they known that it contains no Aloe Vera.

41.   Plaintiff Shelley Waitzman is a resident and citizen of Vernon Hills, Illinois. She purchased the Walgreens Product for her own use during the four years preceding the filing of this Complaint, most recently in May, 2016 at a Walgreens retail location in Illinois. Shelley Waitzman and members of the Class suffered an injury in fact caused by the false, fraudulent, unfair, deceptive and misleading practices of Walgreens set forth in this Complaint. Plaintiff Shelley Waitzman and Class members would not have purchased the Walgreens Product had they known that it contains no Aloe Vera.

42.   Plaintiff Amber Wimberly is a resident and citizen of Blue Springs, Missouri. She purchased the FOTE Product for her own use during the four years preceding the filing of this Complaint, most recently at a Hy-Vee grocery store in Missouri. Amber Wimberly and members of the Class suffered an injury in fact caused by the false, fraudulent, unfair, deceptive and misleading practices of FOTE set forth in this Complaint. Plaintiff Amber Wimberly and Class members would not have purchased the FOTE Product had they known that it contains no Aloe Vera.

43.   Plaintiff Donna White is a resident and citizen of East Greenwich, Rhode Island. She purchased the CVS Product for her own use during the four years

preceding the filing of this Complaint, most recently in May, 2016 at a CVS retail location in East Greenwich, Rhode Island. Donna White and members of the Class suffered an injury in fact caused by the false, fraudulent, unfair, deceptive and misleading practices of CVS set forth in this Complaint. Plaintiff Donna White and Class members would not have purchased the CVS Product had they known that it contains no Aloe Vera.

*Defendants*

44.    Defendant CVS Pharmacy, Inc. ("CVS") is a Delaware corporation with a principal place of business at One CVS Drive, Woonsocket, Rhode Island 02895. As of March 31, 2016, CVS operated 9,674 retail locations in 49 states and the District of Columbia, including in-store Target pharmacies which CVS acquired in December 2015. CVS markets, distributes and sells the CVS Product throughout the United States, including in Illinois.

45.    Defendant Target Corporation ("Target") is a Minnesota corporation with a principal place of business located in Minneapolis, Minnesota. Target markets, distributes and sells the Target Product throughout the United States, including in Illinois.

46.    Defendant Wal-Mart Stores, Inc. ("Wal-Mart") is a Delaware corporation with a principal place of business at 702 SW 8th Street, Bentonville, Arkansas 72716-8611. Wal-Mart markets, distributes and sells the Wal-Mart

17

Products throughout the United States, including in Illinois.

47.     Defendant Walgreens Boots Alliance, Inc. ("Walgreens"), is a Delaware corporation with a principal place of business at 108 Wilmot Road, Deerfield, Illinois. Walgreens holds itself out as "a global leader in pharmacy-led health and wellbeing retail, with more than 13,100 stores in 11 countries."[6] According to its SEC filings, Walgreens Boots Alliance "is the successor to Walgreen Co., an Illinois corporation, which was formed in 1909 as a successor to a business founded in 1901."[7] In the United States, Walgreens owns and operates both Walgreens and Duane Reade stores.[8] As of August 31, 2015, the company operated 8,173 stores in all fifty states, the District of Columbia, Puerto Rico and the U.S. Virgin Islands.[9] Walgreens markets, distributes and sells the Walgreens Product throughout the United States, including in Illinois.

48.     Defendant Fruit of the Earth, Inc. ("FOTE") is a privately-held corporation licensed in Texas, with a principal place of business at 3101 High River Road, Suite #175, Ft. Worth, Texas 76155. FOTE markets, distributes and sells the FOTE Product throughout the United States, including in Illinois. In addition, FOTE

---

[6] Prospectus, at 5. http://investor.walgreensbootsalliance.com/secfiling.cfm?filingID=1193125-16-662399&CIK=1618921#D195487D424B7_HTM_TOC195487_5, *last accessed* July 30, 2016.

[7] *Id.*

[8] *Id.*

[9] http://news.walgreens.com/fact-sheets/store-count-by-state.htm, *last accessed* July 30, 2016.

is, or likely was, the supplier of Aloe Vera product for some or all of the other retail Defendants in this case. FOTE utilized a stream of commerce in such a way that it was aware that final Products, made using the Aloe Vera product that it supplied, were being marketed in Illinois, including the Northern District of Illinois

### III.    JURISDICTION AND VENUE

49.    The Court has subject matter jurisdiction over Plaintiffs' class claims pursuant to 28 U.S.C. § 1332(d) because the combined claims of the proposed Class Members exceed $5,000,000 and because Defendants are citizens of different states than Plaintiffs and most Class Members.

50.    This Court has personal jurisdiction over each of the Defendants because each regularly conducts business in this District, and/or under the stream of commerce doctrine.

51.    Venue is proper in this District pursuant to: (1) 28 U.S.C. § 1391(b)(2) in that a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this District; and (2) 28 U.S.C. § 1391(b)(3) in that Defendants are subject to personal jurisdiction in this District.

### IV.    FACTUAL ALLEGATIONS

52.    Aloe Vera gel is made from an extract of the Aloe Vera plant leaf. Aloe Vera is also known as Burn Plant, Elephant's Gall, Ghee-Kunwar, Hsiang-Dan, Kanya, Kumari, Lily of the Desert, Miracle Plant, and other names.

53. Aloe Vera is used in many products marketed as moisturizers for dry and irritated skin. It is also a popular folk remedy, believed by some to treat everything from hypertension to the common cold when ingested.

54. A 1999 study in the British Journal of General Practice found that consuming Aloe Vera may help lower cholesterol and reduce glucose levels.[10] These findings sparked renewed interest in products containing Aloe Vera.

55. "The global market for aloe vera products is estimated to have reached $13 billion, according to information presented at a recent workshop held by the International Aloe Science Council."[11]

56. Global demand for Aloe Vera extracts is expected to reach 60,720.4 tons in 2016, and the global Aloe Vera extracts market is anticipated to continue to expand at a compound annual growth rate of 7.4% through 2026, according to a recent market forecast from Future Market Insights.[12]

57. The front label of the CVS Product clearly states the misleading claim that the CVS Product contains "Aloe Vera":

---

[10] http://www.aloevera-info.org/downloads/Study_AV_Clinical%20efficacy.pdf, *last accessed* June 9, 2016.

[11] http://www.nutraingredients-usa.com/Markets/Global-aloe-market-estimated-at-13-billion, *last accessed* Aug. 4, 2016.

[12] http://www.futuremarketinsights.com/press-release/aloe-vera-extracts-market, *last accessed* Aug. 4, 2016. Excerpts of the FMI study, "Aloe Vera Extracts Market: Global Industry Analysis and Opportunity Assessment, 2016 – 2026," are available at http://www.futuremarketinsights.com/reports/aloe-vera-extracts-market, *last accessed* Aug. 4, 2016.



58.    CVS's previous product label was even more misleading, stating that the CVS Product contained "100% pure aloe vera" comparable to "Fruit of the Earth® Aloe Vera Gel":



21

59.    The front label of the FOTE Product clearly states the misleading claims "Aloe Vera 100% Gel," and, "PURE":



60.    The back label of the FOTE Product specifies that "ADVANCED RESEARCH Proudly Presents 100% PURE ALOE VERA GEL". The back label also claims that the FOTE Product is made from "fresh Aloe Vera leaves."



61. In addition, FOTE's website touts that the FOTE Product contains "100% Aloe Vera Gel" and is "[m]ade with the most concentrated amount fresh Aloe Vera leaves on the market."[13]



62. The front label of the Target Product clearly states the misleading claims "Aloe Vera Gel," and "pure aloe vera":

 

---

[13] http://www.fote.com/prod_skin_gel.html, *last accessed* Apr. 26, 2016.

63.     The back label of the Target Product lists "Aloe Barbadensis Leaf Juice" as the Target Product's second ingredient:



64.     The front label of the Walgreens Product clearly refers to the Walgreens Product as "Alcohol Free Aloe Vera Body Gel":




65.     The front label of the Wal-Mart Equate Aloe After Sun Gel Product clearly refers to the Product as an "Aloe" product, containing "Pure Aloe Vera":



66.     Similarly, the front label of the Wal-Mart Equate Aloe Sunburn Relief Gel Product clearly refers to the Product as an "Aloe" product:



25

67.    Contrary to these representations, the Products contain **no actual** Aloe Vera.

68.    Defendants knew or should have known that their Products do not contain Aloe Vera and that the labels of their Products are misleading.

69.    After the consumer watchdog group ConsumerLab.com reported that several commercially available Aloe Vera products contain no Aloe Vera,[14] Plaintiffs' counsel had the Products tested and found they contained no Aloe Vera. If the Products contained Aloe Vera, this laboratory testing would have revealed the presence of Acemannan, the key compound in Aloe Vera. The laboratory testing confirmed the Products contain no Acemannan.

70.    Based on these test results, Defendants' claims that their Products contain "Aloe" or "Aloe Vera" are false, deceptive and misleading.

71.    According to the International Aloe Science Council ("IASC"), "**[p]roducts that do not contain Acemannan are not considered to be true aloe vera**."[15]

72.    The IASC is an international, non-profit Aloe Vera testing and certification organization that was formed in the 1980's to help protect consumers from products falsely labeled as Aloe Vera products.[16]

---

[14] http://www.consumerlab.com/reviews/aloe_supplements_gels_drinks/aloe (Feb. 15, 2015), *last accessed* Sept. 10, 2016.

[15] http://www.iasc.org/Consumers/AloeVeraFAQ.aspx, *last accessed* June 9, 2016 (emphasis in original).

[16] *See* http://www.iasc.org/Certification/ProgramDetails.aspx, *last accessed* Aug. 4, 2016.

26

73. Notably, before 2011, FOTE's Aloe Vera products were tested and certified by the IASC. Today, none of FOTE's products or manufacturing facilities is certified by the IASC. *See IASC, Inc. v. Fruit of the Earth, Inc.*, Case No. 11-cv-02255 (D. Md. 2011) (trademark infringement action for FOTE's unauthorized use of the IASC's Aloe Vera "certification seal" and trademarks).

74. Other authoritative sources also consider Acemannan to be the main active ingredient in properly processed Aloe Vera inner leaf gel.[17] Improper manufacturing processes used by many Aloe Vera product manufacturers can produce products with little or no Acemannan. Currently, most manufacturers do not assay for Acemannan content in their final products.

75. The difference between the Products promised and the Products sold is significant. The lack of Aloe Vera and Acemannan in the Products fully diminishes the value of the Products to nil. No consumer would have purchased any of the Products had they known they contained no Aloe Vera.

76. At all relevant times, Defendants directed the above-referenced misrepresentations to consumers in general and Class members in particular, as evidenced by their eventual purchases and/or use of the Products.

---

[17] *See* Johnson AR, White AC, McAnalley BH. <u>Comparison of common topical agents for wound treatment: Cytotoxicity for human fibroblast in culture</u>. *Wounds: a compendium of clinical research and practice*. 1989; (3): 186-192.

77.    "Aloe Vera Gel" is a predominant item listed on several of Defendants' Products labels under "active ingredients." This is doubly improper and misleading, in that (a) Aloe Vera Gel does not qualify as an active ingredient since the active component of Aloe Vera is Acemannan, and (b) the Products **contain no Aloe Vera or Acemannan**.

78.    Following the publication of ConsumerLab.com's test results, a spokesperson for FOTE attempted to distract the public from the lack of Acemannan in the FOTE Product, explaining:

> [O]ur 100% Aloe Vera Gel is from the Aloe Vera Plants. If you look at the label there is an asterisk (*) by the (L) in Gel. If you then turn the bottle over to the back, there is another asterisk under the barcode that says 'plus stabilizers and preservatives to insure potency and efficacy.' All the other incidental ingredients are added as preservatives and stabilizers and are in very minimal amounts. They are simply added to help the gel not spoil as quickly.[18]

79.    However, "ConsumerLabs.com's tests found that th[o]se 'incidental' ingredients are essentially the **only** ingredients in this product and include 'carbomer' a synthetic polymer which acts as a thickening agent. ConsumerLab.com was aware of these other ingredients, which are listed in the Ingredients page of [its] Review. In that list, copied from the product's label, aloe vera gel is listed *ahead* of the other ingredients, indicating that the product contains more of it than the other

---

[18] http://www.consumerlab.com/reviews/aloe_supplements_gels_drinks/aloe (Feb. 15, 2015), at Updates (Jan. 2, 2016), *last accessed* Sept. 10, 2016.

ingredients, but this did not appear to be correct."[19]

80.     Further, "Aloe Vera Gel" is not recognized as valid cosmetic ingredient. The list of approved ingredients is published by the Cosmetic, Toiletry and Fragrance Association, Inc. in the Cosmetic Ingredient Dictionary ("CID"). 21 C.F.R. § 701.3(c). The CID lists "Aloe Leaf Powder" and "Aloe Vera Juice" as recognized ingredients, but "Aloe Vera Gel" has never been listed in the CID.

81.     Defendants list "Aloe Vera Gel" and/or "Aloe Barbadensis (Aloe Vera) Leaf Juice" as the predominant ingredient in their Products to mislead consumers into believing the Products contain significant amounts of Aloe Vera, when in fact they contain none.

82.     Defendants' Product packaging also includes pictures or glyphs of the Aloe Vera leaf or plant which are similarly designed to mislead consumers.

83.     Defendants developed and knowingly employed marketing strategies designed to deceive consumers. The only conceivable purpose of their schemes was to stimulate sales and enhance Defendants' profits.

84.     Plaintiffs and Class members were in fact misled by Defendants' representations and marketing of their Products. The absence of Aloe Vera leaves no reason to purchase the Products at all, since countless other proven and less-

---

[19] *Id.*

expensive skin products exist. No reasonable person would have purchased or used the Products if they knew the Products did not contain any Aloe Vera.

85.     The Products are a defined as "cosmetics" under 21 U.S.C.S. § 321(i) and as "drugs" under § 321(g)(i) and 21 C.F.R. § 700.35.

86.     The federal Food and Drug Administration has promulgated regulations for compliance with the Food Drug & Cosmetics Act ("FDCA") at 21 C.F.R. §§ 201 *et seq.* (for drugs), and §§ 701 *et seq.* (for cosmetics).

87.     Defendants' Products are misbranded under 21 C.F.R. § 701.1(b), which deems cosmetics misbranded when "[t]he labeling of a cosmetic which contains two or more ingredients [is designated] in such labeling by a name which includes or suggests the name of one or more but not all such ingredients." This is deemed misbranding "even though the names of all such ingredients are stated elsewhere in the labeling."

88.     The first ingredient listed on the back label of the CVS Product and FOTE Product is "Aloe Vera Gel," not Aloe Vera. "Aloe Barbadensis Leaf Juice" is the first item listed on the Walgreens Product label under "Ingredients," and "Aloe Barbadensis (Aloe Vera) Leaf Juice" is the second item listed on Target and Wal-Mart labels. 21 C.F.R. § 701.3(a) requires "[t]he label on each package of a cosmetic [to] bear the name of each ingredient in descending order of predominance …" "Aloe Vera Gel" is a misleading and illusory term made up by Defendants and the use of

that term in the list of ingredients is misleading and a violation of § 701.3(a). In addition, it is impossible that "Aloe Barbadensis Leaf Juice" or "Aloe Barbadensis (Aloe Vera) Leaf Juice" could be the predominant ingredient in any of the Products, since the Products contain none of the chemical "markers" of Aloe Vera. The labeling is thus a violation of § 701.3(a).

89.    Further, 21 C.F.R. § 701.3(c)(2)(i)(b) requires that all Carbomer compounds in cosmetics be identified by their specific type, *e.g.*, Carbomer 934, 934P, 940, 941, 960, or 961. Defendants' labels violate this standard and merely lists the ingredient "Carbomer."

90.    "Where a cosmetic product is also an over-the-counter drug product, the [label] shall declare the active drug ingredients as set forth in § 201.66(c)(2) and (d) of this chapter, and the [label] shall declare the cosmetic ingredients as set forth in § 201.66(c)(8) and (d) of this chapter." Defendants' labels list no "active ingredient" in violation of 21 C.F.R. § 701.3(d) and 21 C.F.R. § 201.66(b)(2), and the purported proportion of the primary ingredient to the other ingredients in the Products – *i.e.*, "100%" – is false and fails to comply with 21 C.F.R. § 201.66(c)(2).

91.    Defendants' deceptive statements also violate 21 U.S.C.S. § 362(a), which deems a cosmetic product misbranded when the label contains a statement that is "false or misleading in any particular."

92.    The introduction of misbranded cosmetics into interstate commerce is

prohibited under the FDCA and all parallel state statutes cited in this Complaint.

93.    Plaintiffs and Class members would not have purchased or used the Products had they known the truth about the Products or Defendants' scheme to sell the Products as misbranded cosmetics and drugs.

94.    Defendants were required to comply with each and every law, regulation and obligation found applicable to the Products.  This includes Retailers, even if FOTE supplied them with the aloe product because their obligations were non-delegable.

95.    As supplier of aloe product to Retailers, FOTE may have had additional obligations in addition to those applicable to Retailers.

## V.    CLASS ACTION ALLEGATIONS

96.    Plaintiffs bring this action individually and as representatives of all those similarly situated, pursuant to Federal Rule of Civil Procedure 23, on behalf of the below-defined Classes:

> **Nationwide Class:** All persons in the United States who purchased any of the Products for personal use.
>
> **Consumer Fraud Multi-State Class:** All persons in the States of Alabama, California, Florida, Illinois, Massachusetts, Michigan, Missouri, New Hampshire, New Jersey, New York, North Carolina, Ohio, Rhode Island, and Wisconsin who purchased any of the Products for personal use.[20]

---

[20] The Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"), 815 ILCS 505/1, *et seq.*, prohibits both unfair and deceptive business acts and practices on the part of entities conducting business

**Alabama Subclass:** All persons in the State of Alabama who purchased any of the Products for personal use.

**California Subclass:** All persons in the State of California who purchased any of the Products for personal use.

**Florida Subclass:** All persons in the State of Florida who purchased any of the Products for personal use.

**Illinois Subclass:** All persons in the State of Illinois who purchased any of the Products for personal use.

**Massachusetts Subclass:** All persons in the Commonwealth of Massachusetts who purchased any of the Products for personal use.

**Michigan Subclass:** All persons in the State of Michigan who

---

with consumers within the State of Illinois. The remaining 49 states and the District of Columbia have similar statutes: Alabama (Ala. Code 1975, §§ 8-19-1, *et seq.*); Alaska (AS §§ 45.50.471, *et seq.*); Arizona (A.R.S §§ 44-1521, *et seq.*); Arkansas (Ark. Code §§ 4-88-101, *et seq.*); California (Bus. & Prof. Code §§ 17200 and 17500, *et seq.*); Colorado (C.R.S.A. §§ 6-1-101, *et seq.*); Connecticut C.G.S.A. §§ 42-110, *et seq.*); Delaware (6 Del. C. §§ 2513, *et seq.*); District of Columbia (DC Code §§ 28-3901, *et seq.*); Florida (FSA §§ 501.201, *et seq.*); Georgia (OCGA §§ 10-1-390, *et seq.*); Hawaii (H.R.S. §§ 480-1, *et seq.*); Idaho (I.C. §§ 48-601, *et seq.*); Indiana (IN ST §§ 24-5-0.S-2, *et seq.*); Iowa (Iowa Code Ann. §§ 714H.1, *et seq.*); Kansas (K.S.A. §§ 50-623, *et seq.*); Kentucky (KRS 367.110, *et seq.*); Louisiana (LSA-R.S. 51:1401, *et seq.*); Maine (5 M.R.S.A. §§ 205-A, *et seq.*); Maryland (MD Code, Commercial Law, §§ 13-301, *et seq.*); Massachusetts (M.O.L.A. 93A, *et seq.*); Michigan (M.C.L.A. 445.901, *et seq.*); Minnesota (Minn. Stat. §§ 325F.68, *et seq.*); Mississippi (Miss. Code Ann. §§ 75-24-1, *et seq.*); Missouri (V.A.M.S. §§ 407, *et seq.*); Montana (Mont. Code Ann. §§ 30-14-101, *et seq.*); Nebraska (Neb. Rev. St. §§ 59-1601, *et seq.*); Nevada (N.R.S. 41.600, *et seq.*); New Hampshire (N.H. Rev. Stat. §§ 358-A:1, *et seq.*); New Jersey (N.J.S.A. 56:8, *et seq.*); New Mexico (N.M.S.A. §§ 570012-1, *et seq.*); New York (N.Y. GBL (McKinney) §§ 349, *et seq.*); North Carolina (N.C. Gen Stat. §§ 75-1.l, *et seq.*); North Dakota (N.D. Cent. Code Chapter 51-15, *et seq.*); Ohio (R.C. 1345.01, *et seq.*); Oklahoma (15 O.S.2001, §§ 751, *et seq.*); Oregon (ORS 646.605, *et seq.*); Pennsylvania (73 P.S. §§ 201-1, *et seq.*); Rhode Island (R.I. Gen. L. Ch. 6-13.1 (2015)); South Carolina (SC Code 1976, §§ 39-5-10, *et seq.*); South Dakota (SDCL §§ 37-24-1, *et seq.*); Tennessee (T.C.A. §§ 47-18-101, *et seq.*); Texas (V.T.C.A., Bus. & C. §§ 17.41, *et seq.*); Utah (UT ST § 13-11-1, *et seq.*); Vermont (9 V.S.A. § 2451, *et seq.*); Virginia (VA ST § 59.1-196, *et seq.*); Washington (RCWA 19.86.010, *et seq.*); West Virginia (W. Va. Code §§ 46A-1-101, *et seq.*); Wisconsin (WIS. STAT. §§ 100.18, *et seq.*); and Wyoming (WY ST §§ 40·12-101, *et seq.*). These statutes uniformly prohibit deceptive, unlawful, unfair, or fraudulent business acts or practices including using deception, fraud, false pretenses, false promises, false advertising, misrepresentation, or the concealment, suppression, or omission of any material fact. The States in the Consumer Fraud Multi-State Class are limited to those states with similar consumer fraud laws under the facts of this case as alleged herein: Alabama, California; Florida; Illinois; Massachusetts; Michigan; Missouri; New Hampshire; New Jersey; New York; North Carolina, Ohio, Rhode Island; and Wisconsin.

purchased any of the Products for personal use.

**Missouri Subclass:** All persons in the State of Missouri who purchased any of the Products for personal use.

**New Hampshire Subclass:** All persons in the State of New Hampshire who purchased any of the Products for personal use.

**New Jersey Subclass:** All persons in the State of New Jersey who purchased any of the Products for personal use.

**New York Subclass:** All persons in the State of New York who purchased any of the Products for personal use.

**North Carolina Subclass:** All persons in the State of North Carolina who purchased any of the Products for personal use.

**Ohio Subclass:** All persons in the State of Ohio who purchased any of the Products for personal use.

**Pennsylvania Subclass:** All persons in the Commonwealth of Pennsylvania who purchased any of the Products for personal use.

**Rhode Island Subclass:** All persons in the State of Rhode Island who purchased any of the Products for personal use.

**Wisconsin Subclass:** All persons in the State of Wisconsin who purchased any of the Products for personal use.

Excluded from the Classes are Defendants and their affiliates, parents, subsidiaries, employees, officers, agents, and directors. Also excluded are any judicial officers presiding over this matter and the members of their immediate families and judicial staffs.

97. Certification of Plaintiffs' claims for class-wide treatment is appropriate because Plaintiffs can prove the elements of their claims on a class-wide

basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

98.     **Numerosity – Federal Rule of Civil Procedure 23(a)(1).** The members of the Classes are so numerous that their individual joinder herein is impracticable. On information and belief, Class members number in the tens of thousands to millions. The precise number of Class members and their addresses are presently unknown to Plaintiffs, but may be reasonably be ascertained, for example from Defendant's books and records, frequents purchaser or rewards numbers or other approved methods. Similarly, Class members may be notified of the pendency of this action by mail, email, Internet postings, and/or publication.

99.     **Commonality and Predominance – Federal Rule of Civil Procedure 23(a)(2) and 23(b)(3).** The common questions of law and fact existing as to all Class members predominate over questions affecting only individual Class members. Such common questions of law or fact include:

    a.     The true nature and extent of Aloe Vera and/or Acemannan in the Products, if any;

    b.     Defendants' knowledge of the contents of their Products;

    c.     The obligations Defendants' were required to fulfill relative to advertising, packaging, labeling, marketing, and selling their Products;

    d.     Whether the marketing, advertising, packaging, labeling, and other promotional materials for the Products are false, deceptive, or misleading;

e. Whether Defendants' actions, or inactions, violated the state consumer fraud statutes invoked below;

f. Whether Defendants breached express warranties to Plaintiffs and Class members;

g. Whether Defendants breached implied warranties to Plaintiffs and Class members;

h. Whether Defendants were unjustly enriched at the expense of Plaintiffs and Class members;

i. Whether Defendants are liable for damages, and the amounts of such damages;

j. Whether Defendants should be enjoined from engaging in such conduct in the future; and

k. Whether Plaintiffs and the Class members are entitled to any other remedy or relief.

100. Defendants engaged in a common course of conduct giving rise to the legal rights sought to be enforced by Plaintiffs, on behalf of themselves and the other Class members. Similar or identical statutory and common law violations, business practices, and injuries are involved. Individual questions, if any, as to those laws and violations of those laws, pale by comparison, in both quality and quantity, to the numerous common questions that dominate this action.

101. **Typicality – Federal Rule of Civil Procedure 23(a)(3).** Plaintiffs' claims are typical of the claims of the other members of the Class because, among other things, all Class members were comparably injured through Defendants' uniform misconduct described above. Further, there are no defenses available to

Defendants that are unique to Plaintiffs.

102. **Adequacy of Representation – Federal Rule of Civil Procedure 23(a)(4).** Plaintiffs are adequate Class representatives because their interests do not conflict with the interests of the other Class members they seek to represent, they have retained counsel competent and experienced in complex class action litigation, and they will prosecute this action vigorously. The Classes' interests will be fairly and adequately protected by Plaintiffs and their counsel, who are experienced class action lawyers.

103. **Insufficiency of Separate Actions – Federal Rule of Civil Procedure 23(b)(1).** Absent a representative class action, members of the Class would continue to suffer the harm described herein, for which they would have no remedy. Even if separate actions could be brought by individual consumers, the resulting multiplicity of lawsuits would cause undue burden and expense for both the Court and the litigants, as well as create a risk of inconsistent rulings and adjudications that might be dispositive of the interests of similarly situated purchasers, substantially impeding their ability to protect their interests, while establishing incompatible standards of conduct for Defendants. The proposed Classes thus satisfy the requirements of Fed. R. Civ. P. 23(b)(1).

104. **Declaratory and Injunctive Relief – Federal Rule of Civil Procedure 23(b)(2).** Defendants have acted or refused to act on grounds generally applicable to

Plaintiffs and the other members of the Classes, thereby making appropriate final injunctive relief and declaratory relief, as described below, with respect to the members of the Classes as a whole.

105. **Superiority – Federal Rule of Civil Procedure 23(b)(3).** A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The damages or other financial detriment suffered by each of the Plaintiffs and the other members of the Classes are relatively small compared to the burden and expense that would be required to individually litigate their claims against Defendants, so it would be impracticable for Class members to individually seek redress for Defendants' wrongful conduct. Even if Class members could afford individual litigation, the court system could not. Individualized litigation would create a potential for inconsistent or contradictory judgments, and increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

# VI.   CLAIMS ALLEGED

## COUNT I

**Violation Of State Consumer Fraud Acts
(On Behalf Of The Consumer Fraud Multi-State Class)**

106.   Plaintiffs incorporate the above paragraphs as if fully set forth herein.

107.   The Consumer Fraud Acts of the States in the Consumer Fraud Multi-State Class[21] (for purposes of this Count, the "Class") prohibit the use of unfair or deceptive business practices in the conduct of trade or commerce.

108.   Plaintiffs and members of the Class have standing to pursue a cause of action for violation of the Consumer Fraud Acts of the States in the Consumer Fraud Multi-State Class because Plaintiffs and members of the Class have suffered an injury-in-fact and lost money as a result of Defendants' actions, or inaction, as set forth herein.

109.    Defendants intended that Plaintiffs and each of the other members of the Consumer Fraud Multi-State Class would rely upon their deceptive conduct, and a reasonable person would in fact be misled by this deceptive conduct.

110.   As a result of the Defendants' use or employment of unfair or deceptive

---

[21] California (Cal. Bus. & Prof. Code §17200, *et seq.*); Florida (Fla. Stat. §501.201, *et seq.*); Illinois  (815 Ill. Comp. Stat. 505/1, *et seq.*); Massachusetts (Mass. Gen. Laws Ch. 93A, *et seq.*); Michigan (Mich.  Comp. Laws §445.901,  *et seq.*); Missouri (Mo. Rev. Stat.  010, *et seq.*); New Hampshire (N.H. Rev. Stat. § 358-A:1,  *et seq.*);  New Jersey (N.J. Stat. §56:8-1, *et seq.*);  New York (N.Y. Gen. Bus. Law §349, *et seq.*); Pennsylvania (73 P.S. § 201-1, et seq.); Rhode Island (G.L.1956 § 6-13.1-5.2(8), *et seq.*); and Wisconsin (WIS. STAT. § 100.18, *et seq.*).

acts or business practices, Plaintiffs and each of the other members of the Consumer Fraud Multi-State Class have sustained actual/ascertainable damages in an amount to be proven at trial.

111.  In addition, Defendants' conduct showed malice, motive, and the reckless disregard of the truth such that an award of punitive, treble and/or statutory damages is appropriate.

## COUNT II

**Breach Of Express Warranties**
**(On Behalf Of The Nationwide Class and All Subclasses)**

112.   Plaintiffs incorporate the above paragraphs as if fully set forth herein.

113.   Plaintiffs, and each member of the Nationwide Class, formed a contract with Defendants when Plaintiffs and the other members of the Nationwide Class purchased the Products. The terms of the contract included the promises and affirmations of fact made by Defendants on the Products' packaging and through marketing and advertising, as described above. This labeling, marketing and advertising constitute express warranties and became part of the basis of the bargain, and are part of the standardized contract between Plaintiffs and the members of the Nationwide Class and Defendants.

114.  Plaintiffs and the members of the Nationwide Class performed all conditions precedent to Defendants' liability under this contract when they

purchased the Products.

115.   Defendants breached express warranties about the Products and their qualities because Defendants' statements about the Products were false and the Products do not conform to Defendants' affirmations and promises described above.

116.   Plaintiffs and the members of the Nationwide Class would not have purchased or used the Products had they known the true nature of the Products.

117.   As a result of Defendants' breach of express warranties, Plaintiffs and each member of the Nationwide Class has been damaged in the amount of the purchase price of the Products and any consequential damages resulting from their purchases.

## COUNT III

**Breach Of Implied Warranties**
**(On Behalf Of The Nationwide Class and All Subclasses)**

118.   Plaintiffs incorporate the above paragraphs as if fully set forth herein.

119.   Defendants knew and intended that the members of the Nationwide Class would be the ultimate consumers of the Products.

120.   Defendants sold the Products into the stream of commerce, and Defendants are merchants with respect to goods such as the Products at issue.

121.   The Products were not merchantable at the time of sale, because they did not—nor could not—have any impact related to the representations as alleged

41

herein.

122.    Plaintiffs and the other members of the Nationwide Class did not receive the benefit of their bargain in purchasing the Products.

123.    Because of Defendants' breach of implied warranties, the Plaintiffs and each member of the Nationwide Class has been damaged in the amount of the purchase price of the Products and any consequential damages resulting from their purchases.

## COUNT IV

### Negligent Misrepresentation
### (On Behalf Of The Nationwide Class and All Subclasses)

124.    Plaintiffs incorporate the above paragraphs as if fully set forth herein.

125.    Defendants have made material misrepresentations of fact concerning the nature of, and ingredients in, the Products.

126.    Defendants have and had no reasonable basis for believing that their misrepresentations were true.

127.    Defendants knew, or should have known, that Plaintiffs and the members of the Nationwide Class would rely on the false representations about the nature of, and ingredients in, the Products.

128.    Defendants' false representations about the Aloe Vera content of the Products are objectively material to reasonable consumers, and therefore reliance

upon such representations may be presumed as a matter of law.

129.   Plaintiffs and members of the Nationwide Class reasonably relied to their detriment on Defendants' false representations, which caused them to purchase the Products.

130.   As a proximate result of Defendants' negligent misrepresentations, Plaintiffs and each member of the Nationwide Class has been damaged in the amount of the purchase price of the Products and any consequential damages resulting from their purchases.

## COUNT V

**Intentional Misrepresentation**
**(On Behalf Of The Nationwide Class and All Subclasses)**

131.   Plaintiffs incorporate the above paragraphs as if fully set forth herein.

132.   Defendants have intentionally made material misrepresentations of fact concerning the nature of, and ingredients in, the Products.

133.   Defendants knew that the intentional misrepresentations herein were false at the time they were made.

134.   Defendants intended that Plaintiffs and members of the Nationwide Class would rely on the false representations and purchase Defendants' Products.

135.   Defendants' false representations are objectively material to reasonable consumers and therefore reliance upon such representations may be presumed as a

43

matter of law.

136.  Plaintiffs and members of the Nationwide Class reasonably relied to their detriment on Defendants' intentional misrepresentations.

137.  Defendants' intentional misrepresentations were a substantial factor in causing Plaintiffs and members of the Nationwide Class to purchase the Products.

138.  Defendants have acted with malice by engaging in conduct that was and is intended to cause injury to Plaintiffs and the members of the Nationwide Class.

139.  Defendants have committed fraud through their intentional misrepresentations, deceit, and/or concealment of material facts known to Defendants with the intent to cause injury to the purchasers of the Products.

140.  As a proximate result of Defendants' intentional misrepresentations, Plaintiffs and the members of the Nationwide Class suffered an ascertainable loss and are entitled to relief and compensatory and punitive damages, in an amount to be determined at trial.

## COUNT VI

**Unjust Enrichment**
**(In The Alternative To Counts II and III,**
**On Behalf Of The Nationwide Class and All Subclasses)**

141.  Plaintiffs incorporate the above paragraphs as if fully set forth herein.

142.  Plaintiffs and the other members of the Nationwide Class conferred benefits on Defendants by purchasing the Products.

44

143.    Defendants have been unjustly enriched by their retention of the revenues derived from the purchases of the Products by Plaintiffs and the other members of the Nationwide Class. Retention of those monies under these circumstances is unjust and inequitable because Defendants' labeling of the Products was misleading to consumers, which caused injuries to Plaintiffs and the other members of the Nationwide Class because they would not have purchased the Products if the true facts would have been known.

144.    Because Defendants' retention of the non-gratuitous benefits conferred on them by Plaintiffs and the other members of the Nationwide Class is unjust and inequitable, Defendants must pay restitution to Plaintiffs and the members of the Nationwide Class for their unjust enrichment, as ordered by the Court.

## <u>COUNT VII</u>

**Violation Of The Alabama Deceptive Trade Practices Act**
**Ala. Code §§ 8-19-1, *et seq.***
**(In The Alternative To Count I, On Behalf Of The Alabama Subclass)**

145.    Plaintiffs incorporate the above paragraphs as if fully set forth herein.

146.    Plaintiff Kelly Biddle (for the purpose of this Count, "Plaintiff") brings this Count on behalf of herself and the Alabama Subclass against the Defendants.

147.    Plaintiff and the Alabama Subclass have standing to pursue a cause of action for violation of the Alabama Deceptive Trade Practices Act (the "ADTPA"), Ala. Code §§ 8-19-1, *et seq.*, because Plaintiff and members of the Alabama

Subclass have suffered an injury-in-fact and lost money as a result of Defendants' actions as set forth herein.

148.   This Count is brought on behalf of Plaintiff and the Alabama Subclass members to secure redress for the unlawful, deceptive and unfair trade practices perpetrated by Defendants.

149.   Plaintiff and the members of the Alabama Subclass are "consumers" within the meaning of the ADTPA, who purchased the Products for personal use within the applicable statute of limitations period.

150.   Plaintiff, the Alabama Subclass, and Defendants are "persons" within the meaning of the ADTPA.

151.   The Products are "goods" within the meaning of the ADTPA.

152.   Defendants were and are engaged in "trade or commerce" within the meaning of the ADTPA.

153.   The ADTPA declares several specific actions to be unlawful, including: "(5) Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or qualities that they do not have," "(7) Representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another," and "(27) Engaging in any other unconscionable, false, misleading, or deceptive act or practice in the conduct of trade or commerce." Ala. Code § 8-19-5.

46

154. Plaintiff and members of the Alabama Subclass purchased the Products in reliance on Defendants' labeling and other marketing claims

155. In the course of their business, Defendants concealed and suppressed material facts concerning the Products.

156. Defendants knew or should have known that their representations of fact concerning the Products were and are material and likely to mislead consumers.

157. Defendants intended that Plaintiff and each of the other members of the Alabama Subclass would rely upon their deceptive conduct, and a reasonable person would in fact be misled by this deceptive conduct.

158. Defendants' practices, acts, and course of conduct in marketing and selling the Products are likely to mislead a reasonable consumer acting reasonably under the circumstances to his or her detriment. Like Plaintiff, members of the Alabama Subclass would not have purchased the Products had they known the Products contained no actual Aloe Vera.

159. Defendants' actions, as alleged herein, constitute affirmative acts or representations including: unconscionable commercial practices; deception; fraud; false pretense; false promise; and/or misrepresentation, and therefore are unlawful under the ADTPA.

160. Defendants had an ongoing duty to all customers to refrain from unfair and deceptive practices under the ADTPA. Defendants' violations present a

continuing risk to Plaintiff and the Alabama Subclass, as well as to the general public. Defendants' unlawful acts and practices complained of herein affect the public interest.

161. By continuing to make false and unsubstantiated representations concerning the Products, Defendants are engaging in business practices that are misleading and/or likely to mislead consumers. Such business practices are unconscionable, unfair, and deceptive acts or practices in violation of the ADTPA.

162. As a direct and proximate result of Defendants' unlawful acts and omissions, Plaintiff and the Alabama Subclass have suffered an ascertainable loss of money or property, real or personal, in that they would not have purchased the Products but for Defendants' material omissions and affirmative acts or representations in connection with the marketing, advertising, and sale of the Products.

163. As a result of the Defendants' use or employment of unfair or deceptive acts or business practices, Plaintiff and each of the other members of the Alabama Subclass have sustained damages in an amount to be proven at trial.

164. Plaintiff and the members of the Alabama Subclass are entitled to compensatory damages, punitive damages, equitable and declaratory relief, injunctive relief enjoining Defendants' unfair and deceptive practices, costs, reasonable attorney's fees, and any other just and proper relief under the ADTPA.

48

165.   Pursuant to Ala. Code § 8-19-10, Plaintiff and the Alabama Subclass seek monetary relief against Defendants measured as the greater of (a) actual damages in an amount to be determined at trial and (b) statutory damages in the amount of $100 for Plaintiff Biddle and each Alabama Subclass member.

166.   Plaintiff and the Alabama Subclass also seek an order enjoining Defendants' unfair, unlawful, and/or deceptive practices, attorneys' fees, and any other just and proper relief available under the ADTPA.

167.   Prior to filing this Amended Complaint, counsel for Plaintiff Biddle provided written notice to Defendants compliant with the intent and purpose of Ala. Code § 8-19-10(e). Because Defendants failed to remedy their unlawful conduct within the requisite time period, Plaintiff and the Alabama Subclass seek all damages and relief to which they are entitled.

## COUNT VIII

**Violation Of The California Consumer Legal Remedies Act**
**Cal. Civ. Code §§ 1750, *et. seq.***
**(In The Alternative To Count I And On Behalf Of The California Subclass)**

168.    Plaintiffs incorporate the above paragraphs as if fully set forth herein.

169.   Plaintiffs Reeves, Holzman, Nazari and James (for the purpose of this Count, "Plaintiffs") bring this Count on behalf of themselves and the California Subclass against the Defendants.

170.   Plaintiffs and the members of the California Subclass have standing to

49

pursue a cause of action for violation of the Consumer Legal Remedies Act because Plaintiffs and members of the California Subclass have suffered an injury-in-fact and lost money as a result of Defendants' actions as set forth herein.

171.    Plaintiffs and the members of the California Subclass are each a "Consumer" as that term is defined by Cal. Civ. Code § 1761(d).

172.    The Products are a "Good" as that term is defined by Cal. Civ. Code § 1761(a).

173.    Defendants are each a "Person" as defined by Cal. Civ. Code § 1761(c).

174.    The transaction(s) involved here are "Transaction(s)" as defined by Cal. Civ. Code § 1761(e).

175.    Plaintiffs and members of the California Subclass are Consumers who purchased the Products for personal use within the applicable statute of limitations period.

176.    Plaintiffs and California Subclass members purchased the Products in reliance on Defendants' labeling and other marketing claims.

177.    Defendants have used deceptive representations with respect to the Products in violation of Cal. Civ. Code § 1770(a)(4).

178.    Defendants have misrepresented the characteristics and/or ingredients of the Products in violation of Cal. Civ. Code § 1770(a)(5).

179.    Defendants have misrepresented the standard, quality, or grade of the

Product in violation of Cal. Civ. Code § 1770(a)(7).

180. Defendants knew or should have known that their representations of fact concerning the Products were material and likely to mislead consumers.

181. Defendants' practices, acts, and course of conduct in marketing and selling the Products are likely to mislead a reasonable consumer acting reasonably under the circumstances to his or her detriment. Like Plaintiffs, members of the California Subclass would not have purchased the Products had they known the Products contained no actual Aloe Vera.

182. Plaintiffs and members of the California Subclass have been directly and proximately damaged by Defendants' actions.

183. Prior filing this Amended Complaint, Plaintiffs' Counsel provided written notice to Defendants compliant with the intent and purpose of Civil Code § 1782(a). Defendants did not respond and cure within thirty days. Consequently, Plaintiffs seek all available damages and relief to which they are entitled under the Consumer Legal Remedies Act, including: (a) monetary relief against Defendants measured as the greater of actual damages in an amount to be determined at trial or statutory damages in the amount of $1,000 for each member of the California Subclass; and (b) injunctive relief, restitution, punitive damages, disgorgement of Defendants' ill-gotten gains, and reasonable attorneys' fees and costs.

184. Defendants have engaged in, and continue to engage in, business

practices in violation of the Consumer Legal Remedies Act, Civ. Code §§ 1750, *et seq.* by continuing to make false and unsubstantiated representations concerning the Products.

185. These business practices are misleading and/or likely to mislead Consumers and should be enjoined.

## COUNT IX

**Violation Of The California False Advertising Law
Cal. Bus. & Prof. Code §§ 17500, *et seq.*
(In The Alternative To Count I And On Behalf Of The California Subclass)**

186. Plaintiffs incorporate the above paragraphs as if fully set forth herein.

187. Plaintiffs Reeves, Holzman, Nazari and James (for the purpose of this Count, "Plaintiffs") bring this Count on behalf of themselves and the California Subclass against the Defendants.

188. Plaintiffs and the members of the California Subclass have standing to pursue a cause of action for false advertising under Bus. & Prof. Code §§ 17500, *et seq.* because Plaintiffs and members of the California Subclass have suffered an injury-in-fact and lost money as a result of Defendants' actions as set forth herein.

189. Defendants advertised, marketed, and otherwise disseminated information to the public through advertising mediums including the Internet statements to the effect that the Products contain Aloe Vera.

190. Defendants' statements were and are false.

52

191. Defendants know and knew that these statements were false, or could have discovered their falsity with the exercise of reasonable care.

192. Defendants' false statements were part of a scheme or plan to sell the Products to the public without disclosing that the Products contained no Aloe Vera.

193. Plaintiffs and California Subclass members relied on Defendants' marketing, labeling, and other product literature that falsely claimed the Products contain aloe.

194. Defendants' actions violate Cal. Bus. & Prof. Code §§ 17500, *et seq*.

195. As a direct and proximate result of Defendants' actions, as set forth herein, Defendants have received ill-gotten gains and/or profits, including but not limited to money from Plaintiffs and California Subclass members who paid for the Products. Therefore, Defendants have been unjustly enriched.

196. Plaintiffs and California Subclass members seek injunctive relief, restitution, and disgorgement of Defendants' ill-gotten gains as provided for by Cal. Bus. & Prof. Code § 17535.

197. Plaintiffs and Class members seek injunctive relief to prohibit Defendants from continuing to advertise the Products as containing Aloe Vera, and to prevent Defendants from engaging in these wrongful practices in the future. No other adequate remedy at law exists. If an injunction is not ordered, Plaintiffs and California Subclass members will suffer irreparable harm and/or injury.

## COUNT X

### Violation Of The California Unfair Competition Act
### Cal. Bus. & Prof. Code §§ 17200, *et seq.*
### (In The Alternative To Count I And On Behalf Of The California Subclass)

198.   Plaintiffs incorporate the above paragraphs as if fully set forth herein.

199.   Plaintiffs Reeves, Holzman, Nazari and James (for the purpose of this Count, "Plaintiffs") bring this Count on behalf of themselves and the California Subclass against the Defendants.

200.   Plaintiffs and the members of the California Subclass have standing to pursue a cause of action for false advertising under Bus. & Prof. Code §§ 17200, *et seq.* because Plaintiffs and members of the California Subclass have suffered an injury-in-fact and lost money as a result of Defendants' actions as set forth herein.

201.   Defendants' actions as described herein constitute unfair competition within the meaning of Bus. & Prof. Code § 17200, in that Defendants have engaged in unlawful, unfair, or fraudulent business practices by violating the federal FDCA, the federal DSHEA, California's Sherman Food Drug & Cosmetic Act, and California's Consumer Legal Remedies Act.

202.   Defendants' actions as described herein constitute unfair competition within the meaning of Bus. & Prof. Code § 17200, on the additional grounds that Defendants have failed to properly label the Products in accordance with 21 C.F.R. §§ 701, *et seq.*

203. Defendants' actions also constitute unfair competition within the meaning of Bus. & Prof. Code § 17200, in that Defendants have made unfair, deceptive, untrue or misleading statements in advertising mediums, including the Internet, in violation of Bus. & Prof. Code § 17500.

204. Defendants' actions have caused economic injury to Plaintiffs and California Subclass members. Plaintiffs and California Subclass members would not have purchased or used the Products had they known the Products contained no Aloe Vera.

205. Pursuant to Bus. & Prof. Code § 17203, Plaintiffs and California Subclass members seek an injunction enjoining Defendants from continuing to market, advertise, and sell the Products without first complying with federal law and to prevent Defendants from continuing to engage in unfair competition or any other act prohibited by law.

206. Plaintiffs and California Subclass members also seek rescission and an order requiring Defendants to make full restitution and disgorgement of their ill-gotten gains of all money wrongfully obtained from Plaintiffs and California Subclass members as permitted by Bus. & Prof. Code § 17203.

## COUNT XI

**Violation Of The Florida Deceptive And Unfair Trade Practices Act
Fla. Stat. §§ 501.201, *et seq.*
(In The Alternative To Count I And On Behalf Of The Florida Subclass)**

207.   Plaintiffs incorporate the above paragraphs as if fully set forth herein.

208.   Plaintiff Kochavi (for the purpose of this Count, "Plaintiff") brings this Count on behalf of herself and the Florida Subclass against the Defendants.

209.   Plaintiff and the members of the Florida Subclass have standing to pursue a cause of action for violation of the Florida Deceptive Business Practices Act (the "FDUTPA"), Fla. Stat. §§ 501.201, *et seq.*, because Plaintiff and members of the Florida Subclass have suffered an injury-in-fact and lost money as a result of Defendants' actions as set forth herein.

210.   This Count is brought on behalf of Plaintiff and the Florida Subclass members to secure redress for the unlawful, deceptive and unfair trade practices perpetrated by Defendants.

211.   Plaintiff and all Florida Subclass members are "consumers" and the transactions at issue in this complaint constitute "trade or commerce" as defined by Florida Statutes § 501.203 (7) and (8) respectively.

212.   The FDUTPA was enacted to protect the consuming public and legitimate business enterprises from those who engage in unfair methods of competition, or unconscionable, deceptive or unfair acts or practices in the conduct

56

of any trade or commerce. Defendants participated in unfair and deceptive trade practices that violated the FUDTPA as described herein.

213.   Defendants' actions, as alleged herein, constitute affirmative acts or representations including: unconscionable commercial practices; deception; fraud; false pretense; false promise; and/or misrepresentation, and therefore are unlawful under the FDUTPA.

214.   When a FDUPTA claim is based on an affirmative act or representation, neither intent to deceive by Defendant nor actual reliance by Plaintiff or the Florida Subclass need be shown.

215.   Defendants' actions, as alleged herein, constitute knowing omissions and therefore are unlawful under the FDUTPA.

216.   Defendants intended that Plaintiff and each of the other members of the Florida Subclass would rely upon their deceptive conduct, and a reasonable person would in fact be misled by this deceptive conduct.

217.   Plaintiff and the Florida Subclass reasonably and justifiably relied on Defendants' deceptive, unfair, fraudulent, misrepresentations, as alleged herein. Plaintiff and members of the Florida Subclass and the public were certain to be deceived because Defendants knowingly failed to disclose the characteristics, ingredients, standards and quality of the Products.

218.   Plaintiff and the members of the Florida Subclass would not have

purchased the Products had they known the Products contained no actual Aloe Vera.

219. By continuing to make false and unsubstantiated representations concerning the Products, Defendants are engaging in business practices that are misleading and/or likely to mislead Consumers. Such business practices are unconscionable, unfair, and deceptive acts or practices in violation of the FDUPTA.

220. As a direct and proximate result of Defendants' unlawful acts and omissions, Plaintiff and the Florida Subclass have suffered an ascertainable loss of money or property, real or personal, in that they would not have purchased the Products but for Defendants' material omissions and affirmative acts or representations in connection with the marketing, advertising, and sale of the Products.

221. As a result of the Defendants' use or employment of unfair or deceptive acts or business practices, Plaintiff and each of the other members of the Florida Subclass have sustained damages in an amount to be proven at trial.

222. Plaintiff and the members of the Florida Subclass are entitled to compensatory damages, equitable, injunctive and declaratory relief, costs, and reasonable attorney's fees.

## COUNT XII

**Violation Of The Illinois Consumer Fraud And Deceptive Practices Act
815 ILCS 505/1, *et seq.*
(In The Alternative To Count I And On Behalf Of The Illinois Subclass)**

223.  Plaintiffs incorporate the above paragraphs as if fully set forth herein.

224.  Plaintiffs Bordenet, Carlsson, Connor, Groffsky and Waitzman (for the purpose of this Count, "Plaintiffs") bring this Count on behalf of themselves and the Illinois Subclass against the Defendants.

225.  Plaintiffs and the members of the Illinois Subclass have standing to pursue a cause of action for violation of the Illinois Consumer Fraud and Deceptive Business Practices Act (the "ICFA"), 815 ILCS 505/1, *et seq.*, because Plaintiffs and members of the Illinois Subclass have suffered an injury-in-fact and lost money as a result of Defendants' actions as set forth herein.

226.  The ICFA prohibits the use of unfair or deceptive business practices in the conduct of trade or commerce. The ICFA is to be liberally construed to effectuate its purpose.

227.  The ICFA expressly provides:

§ 2. unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact, or the use or employment of any practice described in Section 2 of the "Uniform Deceptive Trade Practices Act", approved

59

August 5, 1965, in the conduct of any trade or commerce are hereby declared unlawful whether any person has in fact been misled, deceived or damaged thereby.

815 ILCS 505/2.

228. Illinois has expressly adopted the federal food labeling requirements as its own: "[a] federal regulation automatically adopted pursuant to this Act takes effect in this State on the date it becomes effective as a Federal regulation." 410 ILCS 620/21. Thus, a violation of federal food, drug and cosmetic labeling laws is an independent violation of Illinois law and actionable as such.

229. Pursuant to 410 ILCS 620/19, which mirrors 21 U.S.C. § 362(a), "[a] cosmetic is misbranded – (a) If its labeling is false or misleading in any particular."

230. Defendants intended that Plaintiffs and each of the other members of the Illinois Subclass would rely upon their deceptive conduct, and a reasonable person would in fact be misled by this deceptive conduct.

231. Defendants knew or should have known that their representations of fact concerning the Products are material and likely to mislead consumers.

232. Defendants' practices, acts, and course of conduct in marketing and selling the Products are likely to mislead a reasonable consumer acting reasonably under the circumstances to his or her detriment. Like Plaintiffs, members of the Illinois Subclass would not have purchased or used the Products had they known the Products contained no actual Aloe Vera.

60

233.   Plaintiffs and members of the Illinois Subclass have been directly and proximately damaged by Defendants' actions.

234.    As a result of the Defendants' use or employment of unfair or deceptive acts or business practices, Plaintiffs and each of the other members of the Illinois Subclass have sustained damages in an amount to be proven at trial.

235.   In addition, Defendants' conduct showed malice, motive, and the reckless disregard of the truth such that an award of punitive damages is appropriate.

## COUNT XIII

### Violation Of The Michigan Consumer Protection Act
### Mich. Comp. Laws §§ 445.901 *et seq.*
### (In The Alternative To Count I And On Behalf Of The Michigan Subclass)

236.   Plaintiffs incorporate the above paragraphs as if fully set forth herein.

237.   Plaintiffs Czapski and Emma Groffsky (for the purpose of this Count, "Plaintiffs") bring this Count on behalf of themselves and the Michigan Subclass against the Defendants.

238.   Plaintiffs and the members of the Michigan Subclass have standing to pursue a cause of action for violation of the Michigan Consumer Protection Act (the "MCPA"), Mich. Comp. Laws §§ 445.901, *et seq.*, because Plaintiffs and members of the Michigan Subclass have suffered an injury-in-fact and lost money as a result of Defendants' actions as set forth herein.

239.   Plaintiffs and the Michigan Subclass members were "person[s]" within

the meaning of the MCPA.

240.   At all relevant times, Defendants were each a "person" engaged in "trade or commerce" within the meaning of the MCPA.

241.   Plaintiffs and Michigan Subclass members acted as consumers, purchasing the Products for personal, family or household purposes.

242.   The Products qualify as a "good," or "merchandise," under the MCPA and the Michigan Subclass' purchases of the Products constitute a "transaction."

243.   The MCPA prohibits "[u]nfair, unconscionable, or deceptive methods, acts, or practices in the conduct of trade or commerce …." Defendants engaged in unfair, unconscionable, or deceptive methods, acts or practices prohibited by the MCPA.

244.   Defendants, in connection with the sale of the Products, engaged in deceptive, unconscionable, unfair, fraudulent and misleading commercial practices.

245.   Defendants concealed, suppressed, or omitted material facts with the intent that Plaintiffs and Michigan Subclass members rely upon such concealment, suppression or omissions. Defendants' objectively deceptive conduct had the capacity to deceive reasonable consumers under the circumstances.

246.   Defendants' practices, acts, and course of conduct in marketing and selling the Products are likely to mislead a reasonable consumer acting reasonably under the circumstances to his or her detriment. Like Plaintiffs, members of the

Michigan Subclass would not have purchased the Products had they known the Products contained no actual Aloe Vera.

247.   Defendants' general course of conduct impacted the public because the acts were part of a generalized course of conduct affecting numerous consumers.

248.   Defendants' conduct, which included deception, fraud, false pretenses, false promises, misrepresentations, and the knowing concealment, suppression, or omission of material facts caused the resulted injury in fact and an actual loss of money or property to Plaintiffs and the Michigan Subclass. The resulting injury to Plaintiffs and the members of the Michigan Subclass was reasonably foreseeable by Defendants.

249.   Based on Defendants' acts stated herein, Defendants are in violation of the MCPA. Defendants violated the MCPA by, at minimum employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression or omission of material facts with intent that others rely upon such concealment, suppression or omission, in connection with the sale of the Products.

250.   Plaintiffs, on behalf of themselves and the members of the Michigan Subclass, seek injunctive relief to enjoin Defendants from continuing their unfair and deceptive acts; monetary relief against Defendants for actual damages in an amount to be determined at trial; reasonable attorneys' fees; and any other just and proper relief available under the MCPA.

## COUNT XIV

**Violation Of The Missouri Merchandising Practices Act
Mo. Rev. Stat. 010, *et seq.*
(In The Alternative To Count I, On Behalf Of The Missouri Subclass)**

251.   Plaintiffs incorporate the above paragraphs as if fully set forth herein.

252.   Plaintiffs Brown, Darden and Wimberly (for the purpose of this Count, "Plaintiffs") bring this Count on behalf of themselves and the Missouri Subclass against the Defendants.

253.   Plaintiffs and the members of the Missouri Subclass have standing to pursue a cause of action for violation of the Missouri Merchandising Practices Act (the "MMPA"), Mo. Rev. Stat. 010, *et seq.*, because Plaintiffs and members of the Missouri Subclass have suffered an injury-in-fact and lost money as a result of Defendants' actions as set forth herein.

254.   This Count is brought on behalf of Plaintiffs and the Missouri Subclass members to secure redress for the unlawful, deceptive and unfair trade practices perpetrated by Defendants.

255.   Defendants, Plaintiffs and the members of the Missouri Subclass are "persons" within the meaning of the MMPA.

256.   Defendants engaged in "trade" or "commerce" in the State of Missouri within the meaning of the MMPA.

257.   The MMPA was enacted to protect the consuming public and legitimate

business enterprises from those who engage in unfair methods of competition, or unconscionable, deceptive or unfair acts or practices in the conduct of any trade or commerce.

258.   The MMPA makes unlawful the "act, use or employment by any person of any deception, fraud, false pretense, misrepresentation, unfair practice, or the concealment, suppression, or omission of any material fact in connection with the sale or advertisement of any merchandise." In the course of its sale of the Products, Defendants engaged in misleading, false, unfair or deceptive acts or practices that violated the MMPA.

259.   Plaintiffs and members of the Missouri Subclass are consumers who purchased the Products for personal use within the applicable statute of limitations period.

260.   Plaintiffs and Missouri Subclass members purchased the Products in reliance on Defendants' labeling and other marketing claims.

261.   Defendants knew or should have known that their representations of fact concerning the Products are material and likely to mislead consumers.

262.   Defendants intended that Plaintiffs and each of the other members of the Missouri Subclass would rely upon their deceptive conduct, and a reasonable person would in fact be misled by this deceptive conduct.

263.   Defendants' practices, acts, and course of conduct in marketing and

selling the Products are likely to mislead a reasonable consumer acting reasonably under the circumstances to his or her detriment. Like Plaintiffs, members of the Missouri Subclass would not have purchased the Products had they known the Products contained no actual Aloe Vera.

264. Defendants' actions, as alleged herein, constitute affirmative acts or representations including: unconscionable commercial practices; deception; fraud; false pretense; false promise; and/or misrepresentation, and therefore are unlawful under the MMPA.

265. By continuing to make false and unsubstantiated representations concerning the Products, Defendants are engaging in business practices that are misleading and/or likely to mislead consumers. Such business practices are unconscionable, unfair, and deceptive acts or practices in violation of the MMPA.

266. As a direct and proximate result of Defendants' unlawful acts and omissions, Plaintiffs and the Missouri Subclass have suffered an ascertainable loss of money or property, real or personal, in that they would not have purchased the Products but for Defendants' material omissions and affirmative acts or representations in connection with the marketing, advertising, and sale of the Products.

267. As a result of the Defendants' use or employment of unfair or deceptive acts or business practices, Plaintiffs and each of the other members of the Missouri

Subclass have sustained damages in an amount to be proven at trial.

268.  Plaintiffs and the members of the Missouri Subclass are entitled to compensatory damages, punitive damages, equitable and declaratory relief, injunctive relief enjoining Defendants' unfair and deceptive practices, costs, reasonable attorney's fees, and any other just and proper relief under the MMPA.

## COUNT XV

**Violation Of New Hampshire Regulation of Business Practices
For Consumer Protection, N.H. Rev. Stat. §§ 358-A:1, *et seq*.
(In The Alternative To Count I, On Behalf Of The New Hampshire Subclass)**

269.  Plaintiffs incorporate the above paragraphs as if fully set forth herein.

270.  Plaintiff Krejckant (for the purpose of this Count, "Plaintiff") brings this Count on behalf of herself and the New Hampshire Subclass against the Defendants.

271.  Plaintiff and the members of the New Hampshire Subclass have standing to pursue a cause of action for violation of the New Hampshire Regulation of Business Practices for Consumer Protection (the "NHCPA"), N.H. Rev. Stat. §§ 358-A:1, *et seq*., because Plaintiff and members of the New Hampshire Subclass have suffered an injury-in-fact and lost money as a result of Defendants' actions as set forth herein.

272.  This Count is brought on behalf of Plaintiff and the New Hampshire Subclass members to secure redress for the unlawful, deceptive and unfair trade

practices perpetrated by Defendants.

273.   Plaintiff, the New Hampshire Subclass, and Defendants are "persons" under the NHCPA.

274.   Defendants' actions as set forth herein occurred in the conduct of trade or commerce as defined under the NHCPA.

275.   The NHCPA was enacted to protect the consuming public and legitimate business enterprises from those who engage in unfair methods of competition, or unconscionable, deceptive or unfair acts or practices in the conduct of any trade or commerce.

276.   The NHCPA prohibits a person, in the conduct of any trade or commerce, from using "any unfair or deceptive act or practice," including "but … not limited to, the following: … (V) Representing that goods or services have … characteristics, … uses, benefits, or quantities that they do not have;" "(VII) Representing that goods or services are of a particular standard, quality, or grade, … if they are of another;" and "(IX) Advertising goods or services with intent not to sell them as advertised."

277.   Plaintiff and members of the New Hampshire Subclass are consumers who purchased the Products for personal use within the applicable statute of limitations period.

278.   Plaintiff and New Hampshire Subclass members purchased the

Products in reliance on Defendants' labeling and other marketing claims.

279. Defendants knew or should have known that their representations of fact concerning the Products are material and likely to mislead consumers.

280. In the course of their business, Defendants made material misrepresentations, and also concealed and suppressed material facts concerning the Products.

281. Defendants intended that Plaintiff and each of the other members of the New Hampshire Subclass would rely upon their deceptive conduct, and a reasonable person would in fact be misled by this deceptive conduct.

282. Defendants' practices, acts, and course of conduct in marketing and selling the Products are likely to mislead a reasonable consumer acting reasonably under the circumstances to his or her detriment. Like Plaintiff, members of the New Hampshire Subclass would not have purchased the Products had they known the Products contained no actual Aloe Vera.

283. Defendants' actions, as alleged herein, constitute affirmative acts or representations including: unconscionable commercial practices; deception; fraud; false pretense; false promise; and/or misrepresentation, and therefore are unlawful under the NHCPA.

284. By continuing to make false and unsubstantiated representations concerning the Products, Defendants are engaging in business practices that are

misleading and/or likely to mislead consumers. Such business practices are unconscionable, unfair, and deceptive acts or practices in violation of the NHCPA.

285. Defendants thus violated the NHCPA by, at minimum: employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale of the Products.

286. As a direct and proximate result of Defendants' unlawful acts and omissions, Plaintiff and the New Hampshire Subclass have suffered an ascertainable loss of money or property, real or personal, in that they would not have purchased the Products but for Defendants' material omissions and affirmative acts or representations in connection with the marketing, advertising, and sale of the Products.

287. As a result of the Defendants' use or employment of unfair or deceptive acts or business practices, Plaintiff and each of the other members of the New Hampshire Subclass have sustained damages in an amount to be proven at trial.

288. Because Defendants' willful conduct caused injury to the New Hampshire Subclass members through violations of the NHCPA, the New Hampshire Subclass seeks recovery of actual damages or $1,000, whichever is greater, treble damages, costs and reasonable attorneys' fees, an order enjoining Defendants' unfair and/or deceptive acts and practices, and any other just and proper

70

relief under the NHCPA.

## COUNT XVI

**Violation Of The New Jersey Consumer Fraud Act**
**N.J. Stat. §§ 56:8-1, *et seq.***
**(In The Alternative To Count I And On Behalf Of The New Jersey Subclass)**

289. Plaintiffs incorporate the above paragraphs as if fully set forth herein.

290. Plaintiffs Branciforte and Mellody (for the purpose of this Count, "Plaintiffs") bring this Count on behalf of themselves and the New Jersey Subclass against the Defendants.

291. Plaintiffs and the members of the New Jersey Subclass have standing to pursue a cause of action for violation of the New Jersey Consumer Fraud Act (the "NJCFA"), N.J. Stat. §§ 56:8-1, *et seq.*, because Plaintiffs and members of the New Jersey Subclass have suffered an injury-in-fact and lost money as a result of Defendants' actions as set forth herein.

292. This Count is brought on behalf of Plaintiffs and the New Jersey Subclass members to secure redress for the unlawful, deceptive and unfair trade practices perpetrated by Defendants.

293. Plaintiffs, the New Jersey Subclass members and Defendants are persons under the NJCFA.

294. Defendants engaged in "sales" of "merchandise" within the meaning of the NJCFA. Defendants' actions as set forth herein occurred in the conduct of trade

or commerce.

295.   The NJCFA was enacted to protect the consuming public and legitimate business enterprises from those who engage in unfair methods of competition, or unconscionable, deceptive or unfair acts or practices in the conduct of any trade or commerce.

296.   The NJCFA makes unlawful "[t]he act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing concealment, suppression, or omission of any material fact with the intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise or real estate, or with the subsequent performance of such person as aforesaid, whether or not any person has in fact been misled, deceived or damaged thereby…" N.J. Stat. § 56:8-2.

297.   Plaintiffs and members of the New Jersey Subclass are consumers who purchased the Products for personal use within the applicable statute of limitations period.

298.   Plaintiffs and New Jersey Subclass members purchased the Products in reliance on Defendants' labeling and other marketing claims.

299.   Defendants knew or should have known that their representations of fact concerning the Products are material and likely to mislead consumers.

72

300.   Defendants intended that Plaintiffs and each of the other members of the New Jersey Subclass would rely upon their deceptive conduct, and a reasonable person would in fact be misled by this deceptive conduct.

301.   Defendants' practices, acts, and course of conduct in marketing and selling the Products are likely to mislead a reasonable consumer acting reasonably under the circumstances to his or her detriment. Like Plaintiffs, members of the New Jersey Subclass would not have purchased the Products had they known they contained no actual Aloe Vera.

302.   Defendants' actions, as alleged herein, constitute affirmative acts or representations including: unconscionable commercial practices; deception; fraud; false pretenses; false promises; and/or misrepresentation, and therefore are unlawful under the NJCFA.

303.   By continuing to make false and unsubstantiated representations concerning the Products, Defendants are engaging in business practices that are misleading and/or likely to mislead consumers. Such business practices are unconscionable, unfair, and deceptive acts or practices in violation of the NJCFA.

304.   As a direct and proximate result of Defendants' unlawful acts and omissions, Plaintiffs and the New Jersey Subclass have suffered an ascertainable loss of money or property, real or personal, in that they would not have purchased the Product but for Defendants' material omissions and affirmative acts or

representations in connection with the marketing, advertising, and sale of the Products.

305.    As a result of the Defendants' use or employment of unfair or deceptive acts or business practices, Plaintiffs and each of the other members of the New Jersey Subclass have sustained ascertainable losses and damages in an amount to be proven at trial.

306.    Plaintiffs and the members of the New Jersey Subclass are entitled to compensatory damages, equitable and declaratory relief, an order enjoining Defendants' deceptive and unfair conduct, costs, reasonable attorney's fees and all other appropriate relief under the NJCFA.

## COUNT XVII

**Unfair And Deceptive Trade Practices**
**In Violation of New York General Business Law §§ 349, *et seq.***
**(In The Alternative To Count I And On Behalf Of The New York Subclass)**

307.    Plaintiffs incorporate the above paragraphs as if fully set forth herein.

308.    Plaintiffs Cornelius, Nicolosi and Dallaqua (for the purpose of this Count, "Plaintiffs") bring this Count on behalf of themselves and the New York Subclass against the Defendant.

309.    Plaintiffs and the members of the New York Subclass have standing to pursue a cause of action for Unfair and Deceptive Trade Practices in Violation of New York General Business Law (the "NYDAPA"), N.Y. Gen. Bus. Law §§ 349,

*et seq.*, because Plaintiffs and members of the New York Subclass have suffered an injury-in-fact and lost money as a result of Defendants' actions as set forth herein.

310.  This Count is brought on behalf of Plaintiffs and the New York Subclass members to secure redress for the unlawful, deceptive and unfair trade practices perpetrated by Defendants.

311.  Plaintiffs, the New York Subclass members and Defendants are "persons" under the NYDAPA.

312.  Plaintiffs and New York Subclass members are consumers of the Products.

313.  As sellers of the Products to the consuming public and whose conduct affects similarly situated consumers and has a broad impact on consumers at large, Defendants are engaged in consumer-oriented conduct within the intended ambit of the NYDAPA.

314.  Defendants' actions and/or omissions as described herein violated the NYDAPA, which declares as unlawful "deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state."

315.  Specifically, Defendants knowingly misrepresented and intentionally omitted and concealed material information regarding the Products by failing to disclose to Plaintiffs and New York Subclass members the known defect in their Products, namely that the Products contained no Aloe Vera.

75

316. Furthermore, Defendants engaged in materially misleading and deceptive acts and practices by continuing to sell the Products to the consuming public while engaging in deceptive, unconscionable, unfair, fraudulent and misleading commercial practices. Defendants concealed, suppressed, or omitted material facts with the intent that Plaintiffs and New York Subclass members rely upon such concealment, suppression or omissions. Defendants' objectively deceptive conduct had the capacity to deceive reasonable consumers under the circumstances.

317. Defendants' misrepresentations and concealment of material facts constitute unconscionable commercial practices, deception, fraud, false pretenses, misrepresentation, and/or the knowing concealment, suppression, or omission of materials facts with the intent that others rely on such concealment, suppression, or omission in connection with the sale and use of Defendants' Products in violation of the NYDAPA.

318. Defendants' deceptive and misleading actions and omissions as set forth herein have caused and continue to cause injury to Plaintiffs and the New York Subclass members.

319. Defendants' practices, acts, and course of conduct in marketing and selling the Products are likely to mislead a reasonable consumer acting reasonably under the circumstances to his or her detriment. Like Plaintiffs, members of the New

York Subclass would not have purchased the Products had they known they contained no actual Aloe Vera.

320.   New York has enacted the NYDAPA to protect consumers from deceptive, fraudulent, and unconscionable trade and business practices such as those alleged in this Complaint.

321.   The NYDAPA makes unlawful "[d]eceptive acts or practices in the conduct of any business, trade or commerce." N.Y. Gen. Bus. Law § 349(a). Defendants' conduct, as set forth herein, constitutes deceptive acts or practices under the NYDAPA.

322.   As a direct and proximate result of Defendants' violations of NYDAPA, Plaintiffs and the members of the New York Subclass have suffered and continue to suffer damages.

323.   Plaintiffs and the members of the New York Subclass were deceived by Defendants' failure to disclose and could not discover the defect before suffering damages.

324.   As a result of the foregoing wrongful conduct of Defendants, Plaintiffs and the New York Subclass have been damaged in an amount to be proven at trial, and seek all just and proper remedies, including but not limited to: actual damages or $50, whichever is greater; treble damages up to $1,000; punitive damages to the extent available under the law; reasonable attorneys' fees and costs; an order

enjoining Defendants' deceptive and unfair conduct; and all other just and appropriate relief available under the NYDAPA.

## COUNT XVIII

**Violation Of The North Carolina Unfair And Deceptive Trade Practices Act**
**N.C. Gen. Stat. §§ 75-1.1, *et seq*.**
**(In The Alternative To Count I, On Behalf Of The North Carolina Subclass)**

325.   Plaintiffs incorporate the above paragraphs as if fully set forth herein.

326.   Plaintiff Phillips (for the purpose of this Count, "Plaintiff") brings this Count on behalf of herself and the North Carolina Subclass against the Defendants.

327.   Plaintiff and the North Carolina have standing to pursue a cause of action for violation of the North Carolina Unfair and Deceptive Trade Practices Act, N.C. Gen. Stat. §§ 75-1.1, *et seq.* (the "NCDTPA") because Plaintiff and members of the North Carolina Subclass have suffered an injury-in-fact and lost money as a result of Defendants' actions as set forth herein.

328.   This Count is brought on behalf of Plaintiff and the North Carolina Subclass members to secure redress for the unlawful, deceptive and unfair trade practices perpetrated by Defendants.

329.   Plaintiff and the North Carolina Subclass are "consumers" within the meaning of the NCDTPA.

330.   Plaintiff, the North Carolina Class, and Defendants are "persons" within the meaning of the NCDTPA.

331. The Products are "goods" within the meaning of the NCDTPA.

332. Defendants were and are engaged in "trade or commerce" within the meaning of the NCDTPA. Defendants' acts and practices complained of herein were performed in the course of Defendants' trade or business and thus occurred in or affected "commerce," as defined in the NCDTPA.

333. The NCDTPA makes unlawful "[u]nfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce[.]" N.C. Gen. Stat. § 75-1.1. The NCDTPA provides a private right of action for any person injured "by reason of any act or thing done by any other person, firm or corporation in violation of" the NCDTPA. N.C. Gen. Stat. § 75-16.

334. Plaintiff and members of the North Carolina Subclass are consumers who purchased the Products for personal use within the applicable statute of limitations period.

335. Plaintiff and North Carolina Subclass members purchased the Products in reliance on Defendants' labeling and other marketing claims.

336. In the course of their business, Defendants concealed and suppressed material facts concerning the Products.

337. Defendants knew or should have known that their representations of fact concerning the Products are material and likely to mislead consumers.

338. Defendants intended that Plaintiffs and each of the other members of

the North Carolina Subclass would rely upon their deceptive conduct, and a reasonable person would in fact be misled by this deceptive conduct.

339.  Defendants' practices, acts, and course of conduct in marketing and selling the Products are likely to mislead a reasonable consumer acting reasonably under the circumstances to his or her detriment. Like Plaintiffs, members of the North Carolina Subclass would not have purchased the Products had they known the Products contained no actual Aloe Vera.

340.  Defendants' actions, as alleged herein, constitute affirmative acts or representations including: unconscionable commercial practices; deception; fraud; false pretense; false promise; and/or misrepresentation, and therefore are unlawful under the NCDTPA.

341.  Defendants had an ongoing duty to all customers to refrain from unfair and deceptive practices under the NCDTPA. Defendants' violations present a continuing risk to Plaintiff, the North Carolina Subclass as well as to the general public. Defendants' unlawful acts and practices complained of herein affect the public interest.

342.  By continuing to make false and unsubstantiated representations concerning the Products, Defendants are engaging in business practices that are misleading and/or likely to mislead consumers. Such business practices are unconscionable, unfair, and deceptive acts or practices in violation of the NCDTPA.

80

343.   As a direct and proximate result of Defendants' unlawful acts and omissions, Plaintiff and the North Carolina Subclass have suffered an ascertainable loss of money or property, real or personal, in that they would not have purchased the Products but for Defendants' material omissions and affirmative acts or representations in connection with the marketing, advertising, and sale of the Products.

344.   As a result of the Defendants' use or employment of unfair or deceptive acts or business practices, Plaintiffs and each of the other members of the North Carolina Subclass have sustained damages in an amount to be proven at trial.

345.   Plaintiffs and the members of the North Carolina Subclass are entitled to compensatory damages, punitive damages, equitable and declaratory relief, injunctive relief enjoining Defendants' unfair and deceptive practices, costs, reasonable attorney's fees, and any other just and proper relief under the NCDTPA.

## COUNT XIX

**Violation Of The Ohio Consumer Sales Practices Act**
**Ohio Rev. Code §§ 1345.01, *et seq.***
**(In The Alternative To Count I, On Behalf Of The Ohio Subclass)**

346.   Plaintiffs incorporate the above paragraphs as if fully set forth herein.

347.   Plaintiff Jessop (for the purpose of this Count, "Plaintiff") brings this Count on behalf of herself and the Ohio Subclass against the Defendants.

348.   Plaintiff and the members of the Ohio Subclass have standing to pursue

a cause of action for violation of the Ohio Consumer Sales Practices Act, Ohio Rev. Code §§ 1345.01, *et seq.* (the "OCSPA") because Plaintiff and members of the Ohio Subclass have suffered an injury-in-fact and lost money as a result of Defendants' actions as set forth herein.

349.    This Count is brought on behalf of Plaintiff and the Ohio Subclass members to secure redress for the unlawful, deceptive and unfair trade practices perpetrated by Defendants.

350.    Plaintiff and the Ohio Subclass are "consumers" within the meaning of the OCSPA. Defendants are "suppliers" as defined by the OCSPA.

351.    Plaintiff, the Ohio Class, and Defendants are "persons" within the meaning of the OCSPA.

352.    The Products are "goods" within the meaning of the OCSPA.

353.    Defendants were and are engaged in "trade or commerce" within the meaning of the OCSPA. Defendants' acts and practices complained of herein were performed in the course of Defendants' trade or business and thus occurred in or affected "commerce," as defined in the OCSPA.

354.    The OCSPA prohibits unfair or deceptive acts or practices in connection with a consumer transaction. The OCSPA prohibits a supplier from (i) representing that goods have characteristics, uses or benefits which the goods do not have; (ii) representing that their goods are of a particular quality or grade that the

82

product is not; and (iii) representing that the subject of a consumer transaction has been supplied in accordance with a previous representation, if it has not "[u]nfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce[.]" Ohio Rev. Code § 1345.02.

355.   Plaintiff and members of the Ohio Subclass are consumers who purchased the Products for personal use within the applicable statute of limitations period.

356.   Plaintiff and Ohio Subclass members purchased the Products in reliance on Defendants' labeling and other marketing claims.

357.   In the course of their business, Defendants concealed and suppressed material facts concerning the Products.

358.   Defendants knew or should have known that their representations of fact concerning the Products are material and likely to mislead consumers.

359.   Defendants intended that Plaintiff and each of the other members of the Ohio Subclass would rely upon their deceptive conduct, and a reasonable person would in fact be misled by this deceptive conduct.

360.   Defendants' practices, acts, and course of conduct in marketing and selling the Products are likely to mislead a reasonable consumer acting reasonably under the circumstances to his or her detriment. Like Plaintiff, members of the Ohio Subclass would not have purchased the Products had they known the Products

contained no actual Aloe Vera.

361. Defendants' actions, as alleged herein, constitute affirmative acts or representations including: unconscionable commercial practices; deception; fraud; false pretense; false promise; and/or misrepresentation, and therefore are unlawful under the OCSPA.

362. Defendants had an ongoing duty to all customers to refrain from unfair and deceptive practices under the OCSPA. Defendants' violations present a continuing risk to Plaintiff and the Ohio Subclass, as well as to the general public. Defendants' unlawful acts and practices complained of herein affect the public interest.

363. By continuing to make false and unsubstantiated representations concerning the Products, Defendants are engaging in business practices that are misleading and/or likely to mislead consumers. Such business practices are unconscionable, unfair, and deceptive acts or practices in violation of the OCSPA.

364. As a direct and proximate result of Defendants' unlawful acts and omissions, Plaintiff and the Ohio Subclass have suffered an ascertainable loss of money or property, real or personal, in that they would not have purchased the Products but for Defendants' material omissions and affirmative acts or representations in connection with the marketing, advertising, and sale of the Products.

365.   As a result of the Defendants' use or employment of unfair or deceptive acts or business practices, Plaintiff and each of the other members of the Ohio Subclass have sustained damages in an amount to be proven at trial.

366.   Plaintiff and the members of the Ohio Subclass are entitled to compensatory damages, punitive damages, equitable and declaratory relief, injunctive relief enjoining Defendants' unfair and deceptive practices, costs, reasonable attorney's fees, and any other just and proper relief under the OCSPA.

## COUNT XX

### Violation Of The Pennsylvania Unfair Trade Practices And Consumer Protection Law, 73 P.S. §§ 201-1, *et seq*. (In The Alternative To Count I And On Behalf Of The Pennsylvania Subclass)

367.   Plaintiffs incorporate the above paragraphs as if fully set forth herein.

368.   Plaintiff Lutz (for the purpose of this Count, "Plaintiff") brings this Count on behalf of himself and the Pennsylvania Subclass against the Defendants.

369.   Plaintiff and the members of the Pennsylvania Subclass have standing to pursue a cause of action for violation of the Pennsylvania Unfair Trade Practices And Consumer Protection Law (the "PUTPA"), 73 P.S. §§ 201-1, *et seq*., because Plaintiff and members of the Pennsylvania Subclass have suffered an injury-in-fact and lost money as a result of Defendant's actions as set forth herein.

370.   This Count is brought on behalf of Plaintiff and the Pennsylvania Subclass members to secure redress for the unlawful, deceptive and unfair trade

practices perpetrated by Defendants.

371.    Defendants, Plaintiff and the Pennsylvania Subclass are "persons" within the meaning of the PUTPA.

372.    Defendant is engaged in "trade" or "commerce" within the meaning of the PUTPA.

373.    The PUTPA was enacted to protect the consuming public and legitimate business enterprises from those who engage in unfair methods of competition, or unconscionable, deceptive or unfair acts or practices in the conduct of any trade or commerce.

374.    The PUTPA prohibits "unfair or deceptive acts or practices in the conduct of any trade or commerce …." 73 P.S. § 201-3.

375.    Plaintiff and members of the Pennsylvania Subclass are consumers who purchased the Products for personal use within the applicable statute of limitations period.

376.    Plaintiff and Pennsylvania Subclass members purchased the Products in reliance on Defendants' labeling and other marketing claims.

377.    Defendants knew or should have known that their representations of fact concerning the Products are material and likely to mislead consumers.

378.    Defendant intended that Plaintiff and each of the other members of the Pennsylvania Subclass would rely upon their deceptive conduct, and a reasonable

person would in fact be misled by this deceptive conduct.

379.   Defendants' practices, acts, and course of conduct in marketing and selling the Products are likely to mislead a reasonable consumer acting reasonably under the circumstances to his or her detriment. Like Plaintiff, members of the Pennsylvania Subclass would not have purchased the Products had they known the Products contained no actual Aloe Vera.

380.   Defendants' actions, as alleged herein, constitute affirmative acts or representations including: unconscionable commercial practices; deception; fraud; false pretense; false promise; and/or misrepresentation, and therefore are unlawful under the PUTPA.

381.   By continuing to make false and unsubstantiated representations concerning the Products, Defendants are engaging in business practices that are misleading and/or likely to mislead consumers. Such business practices are unconscionable, unfair, and deceptive acts or practices in violation of the PUTPA.

382.   Defendants thus violated the provisions of the PUTPA by (1) representing that goods have characteristics, uses, benefits, or qualities that they do not have; (2) representing that goods are of a particular standard or quality if they are of another; (3) advertising goods or services with intent not to provide them as advertised; and (4) engaging in any other unfair or deceptive conduct in trade or commerce.

383.   As a direct and proximate result of Defendants' unlawful acts and omissions, Plaintiff and the Pennsylvania Subclass have suffered an ascertainable loss of money or property, real or personal, in that they would not have purchased the Products but for Defendants' material omissions and affirmative acts or representations in connection with the marketing, advertising, and sale of the Products.

384.   As a result of the Defendants' use or employment of unfair or deceptive acts or business practices, Plaintiff and each of the other members of the Pennsylvania Subclass have sustained damages in an amount to be proven at trial.

385.   Plaintiff and the members of the Pennsylvania Subclass seek an order enjoining Defendants' unfair and/or deceptive acts or practices, damages, punitive damages, and attorneys' fees, costs, and any other just and proper relief available under the PUTPA.

## COUNT XXI

**Violation Of The Rhode Island Deceptive Trade Practices Act**
**R.I. Gen. L. Ch. 6-13.1 (2015)**
**(In The Alternative To Count I And On Behalf Of The Rhode Island Subclass)**

386.   Plaintiffs incorporate the above paragraphs as if fully set forth herein.

387.   Plaintiff White (for the purpose of this Count, "Plaintiff") brings this Count on behalf of herself and the Rhode Island Subclass against the Defendants.

388.   Plaintiff and the members of the Rhode Island Subclass have standing

to pursue a cause of action for violation of the Rhode Island Deceptive Trade Practices Act (the "RIDTPA"), R.I. Gen. L. Ch. 6-13.1 (2015), because Plaintiff and members of the Rhode Island Subclass have suffered an injury-in-fact and lost money as a result of Defendants' actions as set forth herein.

389.   This Count is brought on behalf of Plaintiff and the Rhode Island Subclass members to secure redress for the unlawful, deceptive and unfair trade practices perpetrated by Defendants.

390.   Defendants, Plaintiff and the Rhode Island Subclass are "persons" within the meaning of the RIDTPA.

391.   Defendants are engaged in "trade" or "commerce" within the meaning of the RIDTPA.

392.   The RIDTPA was enacted to protect the consuming public and legitimate business enterprises from those who engage in unfair methods of competition, or unconscionable, deceptive or unfair acts or practices in the conduct of any trade or commerce.

393.   The RIDTPA prohibits "unfair or deceptive acts or practices in the conduct of any trade or commerce," R.I. Gen. L. § 6-13.1-2 (2015), including: "(v) [r]epresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have"; "(vii) [r]epresenting that goods or services are of a particular standard, quality, or grade …, if they are of

89

another"; "(ix) [a]dvertising goods or services with intent not to sell them as advertised"; and "(xiii) [u]sing any other methods, acts or practices which mislead or deceive members of the public in a material respect." R.I. Gen. L. § 6-13.1-1 (2015).

394.   Plaintiff and members of the Rhode Island Subclass are consumers who purchased the Products for personal use within the applicable statute of limitations period.

395.   Plaintiff and Rhode Island Subclass members purchased the Products in reliance on Defendants' labeling and other marketing claims.

396.   Defendants knew or should have known that their representations of fact concerning the Products are material and likely to mislead consumers.

397.   Defendants intended that Plaintiff and each of the other members of the Rhode Island Subclass would rely upon its deceptive conduct, and a reasonable person would in fact be misled by this deceptive conduct.

398.   Defendants' practices, acts, and course of conduct in marketing and selling the Products are likely to mislead a reasonable consumer acting reasonably under the circumstances to his or her detriment. Like Plaintiff, members of the Rhode Island Subclass would not have purchased the Products had they known the Products contained no actual Aloe Vera.

399.   Defendants' actions, as alleged herein, constitute affirmative acts or

representations including: unconscionable commercial practices; deception; fraud; false pretense; false promise; and/or misrepresentation, and therefore are unlawful under the RIDTPA.

400.  By continuing to make false and unsubstantiated representations concerning the Products, Defendants are engaging in business practices that are misleading and/or likely to mislead consumers. Such business practices are unconscionable, unfair, and deceptive acts or practices in violation of the RIDTPA.

401.  Defendants thus violated the provisions of the RIDTPA by (1) representing that goods have characteristics, uses, benefits, or qualities that they do not have; (2) representing that goods are of a particular standard or quality if they are of another; (3) advertising goods or services with intent not to provide them as advertised; and (4) engaging in any other unfair or deceptive conduct in trade or commerce.

402.  As a direct and proximate result of Defendants' unlawful acts and omissions, Plaintiff and the Rhode Island Subclass have suffered an ascertainable loss of money or property, real or personal, in that they would not have purchased the Products but for Defendants' material omissions and affirmative acts or representations in connection with the marketing, advertising, and sale of the Products.

403.  As a result of the Defendants' use or employment of unfair or deceptive

91

acts or business practices, Plaintiff and each of the other members of the Rhode Island Subclass have sustained damages in an amount to be proven at trial.

404.   Plaintiff and the members of the Rhode Island Subclass are entitled to recover the greater of actual damages or $200, equitable and declaratory relief, costs, and reasonable attorney's fees pursuant to the RIDTPA.

## COUNT XXII

**Violation Of The Wisconsin Deceptive Trade Practices Act
WIS. STAT. §§ 100.18, *et seq*.
(In The Alternative To Count I And On Behalf Of The Wisconsin Subclass)**

405.   Plaintiffs incorporate the above paragraphs as if fully set forth herein.

406.   Plaintiffs Kummers and Perlin (for the purpose of this Count, "Plaintiffs") bring this Count on behalf of themselves and the Wisconsin Subclass against the Defendants.

407.   Plaintiffs and the members of the Wisconsin Subclass have standing to pursue a cause of action for violation of the Wisconsin Deceptive Trade Practices Act (the "WDTPA"), WIS. STAT. §§ 100.18, *et seq*., because Plaintiffs and members of the Wisconsin Subclass have suffered an injury-in-fact and lost money as a result of Defendants' actions as set forth herein.

408.   This Count is brought on behalf of Plaintiffs and the Wisconsin Subclass members to secure redress for the unlawful, deceptive and unfair trade practices perpetrated by Defendants.

409.   Plaintiffs and the Wisconsin Subclass members are "persons" within the meaning of the WDTPA. Plaintiffs and the Wisconsin Subclass members also are members of "the public" within the meaning of the WDTPA.

410.   Defendants are each a "person, firm, corporation or association" within the meaning of the WDTPA.

411.   The WDTPA was enacted to protect the consuming public and legitimate business enterprises from those who engage in unfair methods of competition, or unconscionable, deceptive or unfair acts or practices in the conduct of any trade or commerce.

412.   The WDTPA makes unlawful any "representation or statement of fact which is untrue, deceptive or misleading." WIS. STAT. § 100.18 (1).

413.   Plaintiffs and members of the Wisconsin Subclass are consumers who purchased the Products for personal use within the applicable statute of limitations period.

414.   Plaintiffs and Wisconsin Subclass members purchased the Products in reliance on Defendants' labeling and other marketing claims.

415.   Defendants knew or should have known that their representations of fact concerning the Products are material and likely to mislead consumers.

416.   Defendants intended that Plaintiffs and each of the other members of the Wisconsin Subclass would rely upon their deceptive conduct, and a reasonable

person would in fact be misled by this deceptive conduct.

417. Defendants' practices, acts, and course of conduct in marketing and selling the Products are likely to mislead a reasonable consumer acting reasonably under the circumstances to his or her detriment. Like Plaintiffs, members of the Wisconsin Subclass would not have purchased the Products had they known the Products contained no actual Aloe Vera.

418. Defendants' actions, as alleged herein, constitute affirmative acts or representations including: unconscionable commercial practices; deception; fraud; false pretense; false promise; and/or misrepresentation, and therefore are unlawful under the WDTPA.

419. By continuing to make false and unsubstantiated representations concerning the Products, Defendants are engaging in business practices that are misleading and/or likely to mislead consumers. Such business practices are unconscionable, unfair, and deceptive acts or practices in violation of the WDTPA.

420. Defendants thus violated the WDTPA, at a minimum by making "representation[s] or statement[s] of fact which [are] untrue, deceptive or misleading" concerning the Products.

421. As a direct and proximate result of Defendants' unlawful acts and omissions, Plaintiffs and the Wisconsin Subclass have suffered an ascertainable loss of money or property, real or personal, in that they would not have purchased the

Products but for Defendants' material omissions and affirmative acts or representations in connection with the marketing, advertising, and sale of the Products.

422.    As a result of the Defendants' use or employment of unfair or deceptive acts or business practices, Plaintiffs and each of the other members of the Wisconsin Subclass have sustained damages in an amount to be proven at trial.

423.   Plaintiffs and the members of the Wisconsin Subclass are entitled to compensatory damages, equitable and declaratory relief, costs, and reasonable attorney's fees, and any other just and proper relief available under the WDTPA.

## VII.   <u>DEMAND FOR JURY TRIAL</u>

Plaintiffs demand a trial by jury of all claims in this Complaint so triable. Plaintiffs also respectfully request leave to amend this Complaint to conform to the evidence, if such amendment is needed for trial.

## VIII.  <u>REQUEST FOR RELIEF</u>

WHEREFORE, Plaintiffs, individually and on behalf of the Classes proposed in this Complaint, respectfully request that the Court enter judgment as follows:

A.    Declaring that this action is a proper class action, certifying the Class and Subclasses requested herein, designating Plaintiffs as Class Representatives and appointing the undersigned counsel as Class Counsel;

B.    Ordering Defendants to pay actual damages to Plaintiffs and the other members of the Class and allowing each Plaintiff and Class member to rescind their purchases;

C.   Ordering Defendants to pay statutory damages, as provided by the applicable state consumer protection statutes, invoked above, to Plaintiffs and the other members of the Class;

D.   Ordering Defendants to pay restitution to Plaintiffs and the other members of the Class;

E.   Enjoining Defendants from engaging in the unlawful conduct set forth herein, as provided by the applicable state consumer protection statutes invoked above;

F.   Ordering Defendants to pay attorneys' fees and litigation costs;

G.   Ordering Defendants to pay both pre- and post-judgment interest on any amounts awarded; and

H.   Ordering such other and further relief as may be just and proper.

Dated: September 12, 2016

Respectfully submitted,

*/s/ Jeffrey A. Berman*
An Attorney for Plaintiffs and the putative class

Brian J. Wanca
Jeffrey A. Berman
ANDERSON + WANCA
3701 Algonquin Road, Suite 500
Rolling Meadows, IL 60008
(847) 368-1500
bwanca@andersonwanca.com
jberman@andersonwanca.com

Nick Suciu III
BARBAT, MANSOUR & SUCIU PLLC
1644 Bracken Rd.
Bloomfield Hills, Michigan 48302
(313) 303-3472
nicksuciu@bmslawyers.com

96

Jonathan N. Shub
KOHN, SWIFT & GRAF, P.C.
One South Broad Street, Suite 2100
Philadelphia, PA 19107
(215) 238-1700
jshub@kohnswift.com

Jason Thompson (*Pro Hac Vice*)
Lance Young (*Pro Hac Vice*)
SOMMERS SCHWARTZ, P.C.
One Towne Square, 17th Floor
Southfield, Michigan 48076
(248) 355-0300
jthompson@sommerspc.com
lyoung@sommerspc.com

Donald J. Enright (*Pro Hac Vice* Application
Forthcoming)
Lori G. Feldman (*Pro Hac Vice* Application
Forthcoming)
LEVI & KORSINSKY LLP
1101 30th Street, N.W., Suite 115
Washington, DC 20007
(202) 524-4290
denright@zlk.com
lfeldman@zlk.com

Jason T. Brown
Patrick S. Almonrode (*Pro Hac Vice*
Application Forthcoming)
JTB LAW GROUP, LLC
155 2nd Street, Suite 4
Jersey City, NJ 07302
(877) 561-0000
jtb@jtblawgroup.com
patalmonrode@jtblawgroup.com

Greg Coleman (*Pro Hac Vice* Application
Forthcoming)
GREG COLEMAN LAW PC
First Tennessee Plaza
800 S. Gay Street, Suite 1100
Knoxville, TN 37929
(865) 247-0080
greg@gregcolemanlaw.com

Michael F. Ram (*Pro Hac Vice* Application
Forthcoming)
Susan S. Brown (*Pro Hac Vice* Application
Forthcoming)
RAM, OLSON, CEREGHINO &
KOPCZYNSKI LLP
101 Montgomery Street, Suite #1800
San Francisco, California 94104
(415) 433-4949
mram@rocklawcal.com
sbrown@rocklawcal.com

Rachel Soffin (*Pro Hac Vice* Application
Forthcoming)
Jonathan B. Cohen (*Pro Hac Vice* Application
Forthcoming)
MORGAN & MORGAN
201 North Franklin Street, 7th Floor
Tampa, FL 33602
(813) 223-5505
rsoffin@forthepeople.com
jcohen@forthepeople.com

Samuel J. Strauss
TURKE & STRAUSS LLP
936 N. 34th Street
Suite 300
Seattle, WA 98103
(608) 237-1775
sam@turkestrauss.com

*Attorneys for Plaintiffs and the Putative Class*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that the foregoing was electronically filed with the United States District Court for the Northern District of Illinois this 12th day of September, 2016, using the Court's CM/ECF System, which served notice of the filing upon all counsel of record.


*/s/ Jeffrey A. Berman*