## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS

|  |  |
|---|---|
| JENNIFER BEARDSALL, DANIEL BROWN, JENNIFER CARLSSON, DEBORAH CARTNICK, AMY CONNOR-SLAYBAUGH, PHYLLIS CZAPSKI, RAELEE DALLACQUA, AUTUMN DEAN, SKYE DOUCETTE, CHRISTOPHER DRAUS, GERALD GORDON, ALEXANDRA GROFFSKY, EMMA GROFFSKY, JOYCE IVY, LA TANYA JAMES, MICHELLE JESSOP, JOY JUDGE, KATHY MELLODY, SUSAN NAZARI, MEGAN NORSWORTHY, DEBORAH OSTRANDER, MARTINA OSLEY, DANA PHILLIPS, THOMAS RAMON, JR., NANCY REEVES, MATTHEW ROBERTSON, SHELLEY WAITZMAN, JAMILLA WANG, and AMBER WIMBERLY, individually and on behalf of all others similarly situated, | **SECOND AMENDED CLASS ACTION COMPLAINT**<br><br>Case No. 1:16-cv-06103<br><br>Hon. Amy J. St. Eve<br><br>Magistrate Judge Jeffrey T. Gilbert<br><br>**JURY TRIAL DEMANDED** |
| Plaintiffs, | |
| v. | |
| CVS PHARMACY, INC., TARGET CORPORATION, WALGREEN CO., WAL-MART STORES, INC., and FRUIT OF THE EARTH, INC., | |
| Defendants. | |

## TABLE OF CONTENTS

I.  INTRODUCTION ................................................................................................. 1

II.  PARTIES ............................................................................................................. 6

    A.  Plaintiffs ...................................................................................................... 6

    B.  Defendants ..................................................................................................22

III.  JURISDICTION AND VENUE ........................................................................23

IV.  FACTUAL ALLEGATIONS ............................................................................24

    A.  Aloe Is a Common Plant Familiar to Consumers ......................................24

    B.  Aloe Gel Is Highly Processed for Use in Consumer
       Products........................................................................................................26

    C.  The Aloe Aftersun Products at Issue Span Numerous Forms,
       Sizes, Formulations, Colors, and SKUs, but the Finished Products All Lack
       Detectible Amounts of Aloe or Aloe's Healing and Restorative Elements..............27

    D.  Defendants' Product Labels Are Misleading Because the Finished Products Do Not
       Contain Detectible Amounts of Aloe or Any of Aloe's Healing and Restorative
       Elements.......................................................................................................27

    E.  The Appropriate Remedy for the Marketing of Snake Oil
       Is Rescission...............................................................................................40

    F.  The Materiality of Defendants' Aloe Representations to a
       Reasonable Consumer Is Self-Evident.......................................................41

    G.  Defendants' Products Are Also Misbranded and Fraught
       with Technical Violations ...........................................................................43

V.  CLASS ACTION ALLEGATIONS ...................................................................46

VI.  CLAIMS ALLEGED ........................................................................................51

    Count I – Violation of the California Consumer Legal Remedies
       Act Cal. Civ. Code §§ 1750, *et seq.* ("CLRA") (against
       Defendants FOTE, CVS, Target & Walgreens)......................................51

    Count II – Violation of the California False Advertising Law
       Cal. Bus. & Prof. Code §§ 17500, *et seq.* ("FAL") (against

Defendants FOTE, CVS, Target & Walgreens)......................................................53

Count III – Violation of the California Unfair Competition
Act Cal. Bus. & Prof. Code §§ 17200, *et seq.* ("UCL")
(against Defendants FOTE, CVS, Target & Walgreens).......................................55

Count IV – Violation of the Florida Deceptive and Unfair
Trade Practices Act Fla. Stat. §§ 501.201, *et seq.* ("FDUTPA")
(against Defendants CVS, FOTE and Walgreens)................................................56

Count V – Violation of the Illinois Consumer Fraud and Deceptive
Practices Act 815 ILCS 505/1, *et seq.* ("IFCA")
(against Defendants FOTE, CVS, Walgreens, and Walmart)................................59

Count VI – Violation of the Michigan Consumer Protection Act
Mich. Comp. Laws §§ 445.901, *et seq.* ("MCPA")
(against Defendants FOTE and CVS)....................................................................61

Count VII – Violation of the Missouri Merchandising Practices Act
Mo. Rev. Stat. 010, *et seq.* ("MMPA") (against Defendants FOTE
and CVS)..................................................................................................................63

Count VIII – Violation of New Hampshire Regulation of Business
Practices for Consumer Protection, N.H. Rev. Stat. §§ 358-A:1,
*et seq.* ("NHCPA") (against Defendant CVS) ....................................................65

Count IX – Violation of the New Jersey Consumer Fraud Act
N.J. Stat. §§ 56:8-1, *et seq.* ("NJCFA") (against Defendant CVS) ......................68

Count X – NYDTPA Violation of New York General Business Law
§§ 349, *et seq.*, Unfair Deceptive Trade Practices ("NYDTPA")
(against Defendants FOTE, CVS, and Walgreens).................................................71

Count XI – Violation of the North Carolina Unfair and Deceptive
Trade Practices Act N.C. Gen. Stat. §§ 75-1.1, *et seq.* ("NCDTPA")
(against Defendant FOTE)......................................................................................74

Count XII – Violation of the Ohio Consumer Sales Practices Act
Ohio Rev. Code §§ 1345.01, *et seq.* ("OCSPA")
(against Defendant FOTE)......................................................................................77

Count XIII – Violation of the Oregon Unlawful Trade Practices Act
ORS § 646.605, *et seq.* ("OUTPA")
(against Defendant FOTE)......................................................................................80

Count XIV – Violation of the Texas Deceptive Trade Practices–Consumer Protection
Act, Tex. Bus. & Com. Code § 17.41,
*et seq.* ("DTPA") (against Defendant FOTE) ....................................................82

VII.    DEMAND FOR JURY TRIAL ...............................................................................86

VIII.   REQUEST FOR RELIEF .......................................................................................86

## SECOND AMENDED CLASS ACTION COMPLAINT

Plaintiffs Jennifer Beardsall, Daniel Brown, Jennifer Carlsson, Deborah Cartnick, Amy Connor-Slaybaugh, Phyllis Czapski, Raelee Dallacqua, Autumn Dean, Skye Doucette, Christopher Draus, Gerald Gordon, Alexandra Groffsky, Emma Groffsky, Joyce Ivy, La Tanya James, Michelle Jessop, Joy Judge, Kathy Mellody, Susan Nazari, Megan Norsworthy, Deborah Ostrander, Martina Osley, Dana Phillips, Thomas Ramon, Jr., Nancy Reeves, Matthew Robertson, Shelley Waitzman, Jamilla Wang, and Amber Wimberly ("Plaintiffs"), individually and on behalf of all others similarly situated, through the undersigned attorneys, upon personal knowledge as to their own acts and status, and upon information and belief based upon the investigation of counsel as to the remaining allegations, allege as follows.

## I.     INTRODUCTION

1.      This is a multistate consumer class action brought by Plaintiffs on behalf of all individuals (the "Class") who purchased one or more of the following products for personal use and not for resale: (1) CVS Aftersun Aloe Vera Moisturizing Gel, previously called CVS 100% Pure Aloe Vera Gel ("the CVS Product"); (2) Up & Up Aloe Vera Gel (the "Target Product"); (3) Equate Aloe After Sun Gel (the "Walmart Product"); (4) Well at Walgreens Alcohol Free Aloe Vera Body Gel (the "Walgreens Product"); and (5) Fruit of the Earth Aloe 100% Gel (the "FOTE Product") (collectively, the "Products").

2.      The Products are expressly advertised and labeled as Aloe "aftersun" gels supposedly containing the healing and restorative elements of Aloe vera.

3.      CVS Pharmacy, Inc. ("CVS") advertises, markets, sells, and distributes the CVS Product in 6 oz. tubes and 3 oz. and 20 oz. bottles.  According to CVS's website, the CVS

Product contains "a blend of Aloe Vera Gel"[1] and, until recently, the CVS Product label stated that it was "100% pure aloe vera gel." In reality, according to independent lab tests, *the finished CVS Product contains no detectible amount of Aloe vera at all. The active ingredient(s), Aloe's unique chemical markers, and the healing and restorative elements associated with Aloe are completely absent in this Product.* Plaintiffs also tested the finished CVS's Product for Aloe whole leaf marker and the products of Aloe degradation, but none of these indications were present in the sample. The CVS Product also contains propylene glycol, a non-toxic form of antifreeze, which is not disclosed on the label or in the list of ingredients, and is not from the Aloe vera plant.

4.     Walgreen Co. ("Walgreens") advertises, markets, sells, and distributes the Walgreens Product in 16 oz. bottles and various other sizes. According to the Walgreens Product's back label and Walgreens' website, the Walgreens Product contains "Aloe Barbadensis Leaf Juice" and "Carbomer," along with other ingredients.[2] In reality, according to independent lab tests, *the finished Walgreens Product contains no detectible amount of Aloe vera at all. The active ingredient(s), Aloe's unique chemical markers, and the healing and restorative elements associated with Aloe are completely absent in this Product.* Plaintiffs also tested the finished Walgreens Product for Aloe whole leaf marker and the products of Aloe degradation, but none of these indications were present in the sample. The Walgreens Product also contains Isopropyl Alcohol, despite the claim on the label that the Product is "Alcohol Free." Alcohol also is not disclosed on the label or in the list of ingredients, and is not from the Aloe vera plant.

---

[1]     http://www.cvs.com/shop/beauty/skin-care/sun-tanning/cvs-aftersun-aloe-vera-moisturizing-gel-6-oz-prodid-1016968?skuId=309890, *last accessed* Apr. 6, 2017.
[2]     http://www.walgreens.com/store/c/walgreens-aloe-vera-gel/ID=prod6268970-product, *last accessed* Apr. 6, 2017.

5.     Wal-Mart Stores, Inc. ("Walmart") advertises, markets, sells, and distributes the Walmart Product in 20 oz. bottles and various other sizes. According to the Walmart Product's back label and Walmart's website, the Walmart Product contains "Aloe Barbadensis (Aloe Vera) Leaf Juice" and "Carbomer," along with other ingredients.[3]  In reality, according to independent laboratory tests, ***the finished Walmart Product contains no detectible amount of Aloe vera at all***.  ***The active ingredient(s), Aloe's unique chemical markers, and the healing and restorative elements associated with Aloe are completely absent in this Product.***  Plaintiffs also tested the finished Walmart Product for Aloe whole leaf marker and the products of Aloe degradation, but none of these indications were present in the sample.  The Walmart Product also contains propylene glycol, a non-toxic form of antifreeze, which is not disclosed on the label or in the list of ingredients, and is not from the Aloe vera plant.

6.     Target Corporation ("Target") advertises, markets, sells, and distributes the Target Product. According to the Product label, it contains "pure aloe vera."  Target repeats this representation on its website.[4]  In reality, according to independent lab tests, ***the finished Target Product contains no detectible amount of Aloe vera at all***.  ***The active ingredient(s), Aloe's unique chemical markers, and the healing and restorative elements associated with Aloe are completely absent in this Product.***  Plaintiffs also tested the finished Target Product for Aloe whole leaf marker and the products of Aloe degradation.  No whole leaf marker was found, and only a trace amount of acetic acid was observed in the sample (1.94 ppm), which is noteworthy because it is well below the typical concentrations of acetic acid one would expect to find from degradation over time of genuine Aloe.  Furthermore, to be clear, unlike Acemannan, acetic acid

---

[3] http://www.walmart.com/ip/Equate-Aloe-Vera-Aftersun-Gel-20-oz/14122658#about, *last accessed* Apr. 6, 2017.
[4] http://www.target.com/p/green-aloe-gel-16-oz-up-up/-/A-11982637, *last accessed* Apr. 6, 2017.

(familiar to most people as household vinegar) is not a unique signature of Aloe; many kinds of fermentation yield acetic acid, and it is also produced industrially.

7.     Fruit of the Earth, Inc. ("FOTE") manufactures, advertises, markets, sells, and distributes the FOTE Product.  According to FOTE's website, Fruit of the Earth is the "world leader in the production of aloe vera-based and nature-inspired products," and committed to providing customers with the "finest, purest formulas on the market."[5]  In reality, according to independent lab tests, *the finished FOTE Product contains no detectible amount of Aloe vera at all.  The active ingredient(s), Aloe's unique chemical markers, and the healing and restorative elements associated with Aloe are completely absent in this Product.*  Plaintiffs also tested the finished FOTE Product for Aloe whole leaf marker and the products of Aloe degradation, but none of these indications were present in the sample, either.  The FOTE Product also contains propylene glycol, a non-toxic form of antifreeze, which is not disclosed on the label or in the list of ingredients, and is not from the Aloe vera plant.

8.     Notably, FOTE is the manufacturer of all of the Aloe aftersun Products at issue. Each Product has slightly different labeling, packaging, and formulations, but they all emanate from the same manufacturing processes and plant operated by FOTE in Grand Prairie, Texas. FOTE also obtains its already highly processed and thickened and preserved Aloe "gel" from a common supplier in Florida.

9.     When FOTE produced Aloe aftersun Products for the Retailer Defendants, it knew or should have known that the Retailers did business in many states, and FOTE was therefore aware that Products it was manufacturing were being sold in Illinois, and specifically the Northern District of Illinois.

---

[5] *See* http://www.FOTE.com, *last accessed* Apr. 6, 2017.

10. Plaintiffs' causes of action against FOTE as the supplier of Aloe aftersun Products arise from the same transactions as their claims against the Retailer Defendants, *i.e.*, the Plaintiffs' respective purchases of the Products.

11. Based on the above facts, FOTE utilized a stream of commerce – a flow of products from manufacture to distribution to retail sale – in such a way that it was aware that the Products it manufactured were being marketed and sold in Illinois, including the Northern District of Illinois; thus, the possibility of a lawsuit being brought in this District cannot come as a surprise.

12. CVS, Target, Walgreens, Walmart, and FOTE are referred to collectively below as "Defendants."

13. The Products' labels are false, deceptive, and misleading, in violation of the Federal Food Drug & Cosmetics Act and its parallel state statutes, and almost every state warranty, consumer protection, and product labeling law in the United States.

14. Based on the above allegations, Defendants CVS, Walgreens, Target and Walmart (the "Retailer Defendants") and FOTE share a common nucleus of operative facts. First, their Aloe aftersun Products all generally contain the same basic ingredients; processed Aloe gel from a single supplier. Second, they all label their respective Aloe aftersun products as containing and in fact being Aloe. Third they market these products to consumers whom they know expect, want, and trust that they are purchasing products that contain the healing and restorative elements typically associated with Aloe. Fourth, none of the Products in fact contains any detectible trace of Aloe or its chemical markers. And lastly, all the Products were produced by FOTE at a common facility using already highly processed and thickened "gel" supplied by a common supplier.

## II.    PARTIES

### A.    *Plaintiffs*

15.    During the relevant period, members of the Classes (defined below) throughout the United States purchased the Products through numerous brick-and-mortar retail locations and online through sites like Walmart.com and Target.com.  Plaintiffs and members of the Classes suffered an injury in fact caused by the false, fraudulent, unfair, deceptive, and misleading practices set forth in this Complaint. Plaintiffs and members of the Classes would not have purchased the Products had they known that the finished Products contain no detectible amount of Aloe vera or any of Aloe's healing or restorative elements.

16.    Plaintiff Jennifer Beardsall is a resident of San Antonio, Texas.  She purchased the FOTE product for her own use during the two years preceding the filing of this Complaint, most recently at a retail location in Texas.  Plaintiff Beardsall read the Product label before she bought the Product and believed on the basis of the label's representations that the finished Product contained ordinary Aloe vera, which she valued for its commonly understood skin-healing and sunburn-relief qualities.  Plaintiff Beardsall and members of the FOTE Product Class (defined below) suffered an injury in fact caused by the false, fraudulent, unfair, deceptive, and misleading practices of Defendants set forth in this Complaint.  Plaintiff Beardsall and members of the FOTE Product Class would not have purchased the FOTE Product had they known the finished Products contain no detectible amount of ordinary Aloe vera or any of Aloe's healing or restorative elements.  Plaintiff Beardsall damages are the price she paid for the FOTE Product plus applicable sales taxes, interest, penalties, costs, and attorneys' fees.

17.    Plaintiff Daniel Brown is a resident and citizen of Springfield, Missouri. He purchased the CVS Product for his own use during the five years preceding the filing of this

Complaint, most recently at a CVS retail location in Missouri. Plaintiff Brown read the Product label before he bought the Product and believed on the basis of the label's representations that the finished Product contained ordinary Aloe vera, which he valued for its commonly understood skin-healing and sunburn-relief qualities. Plaintiff Brown and members of the CVS Product Class (defined below) suffered an injury in fact caused by the false, fraudulent, unfair, deceptive, and misleading practices of Defendants set forth in this Complaint. Plaintiff Brown and members of the CVS Product Class would not have purchased the CVS Product had they known the finished Products contain no detectible amount of ordinary Aloe vera or any of Aloe's healing or restorative elements. Plaintiff Brown damages are the price he paid for the CVS Product plus applicable sales taxes, interest, penalties, costs, and attorneys' fees.

18. Plaintiff Jennifer Carlsson is a resident and citizen of Chicago, Illinois. She purchased the CVS Product for her own use during the three years preceding the filing of this Complaint, most recently in April, 2016 at a CVS retail location in Hollywood, Florida. Plaintiff Carlsson read the Product label before she bought the Product and believed on the basis of the label's representations that the finished Product contained ordinary Aloe vera, which she valued for its commonly understood skin-healing and sunburn-relief qualities. Plaintiff Carlsson and members of the CVS Product Class (defined below) suffered an injury in fact caused by the false, fraudulent, unfair, deceptive, and misleading practices of Defendants set forth in this Complaint. Plaintiff Carlsson and members of the CVS Product Class would not have purchased the CVS Product had they known the finished Products contain no detectible amount of ordinary Aloe vera or any of Aloe's healing or restorative elements. Plaintiff Carlsson's damages are the price she paid for the CVS Product plus applicable sales taxes, interest, penalties, costs, and attorneys' fees.

19. Plaintiff Deborah Cartnick is a resident of San Antonio, Texas. She purchased the

FOTE product for her own use during the two years preceding the filing of this Complaint, most recently at a Wal-Mart retail location in Texas. Plaintiff Cartnick read the Product label before she bought the Product and believed on the basis of the label's representations that the finished Product contained ordinary Aloe vera, which she valued for its commonly understood skin-healing and sunburn-relief qualities. Plaintiff Cartnick and members of the FOTE Product Class (defined below) suffered an injury in fact caused by the false, fraudulent, unfair, deceptive, and misleading practices of Defendants set forth in this Complaint. Plaintiff Cartnick and members of the FOTE Product Class would not have purchased the FOTE Product had they known the finished Products contain no detectible amount of ordinary Aloe vera or any of Aloe's healing or restorative elements. Plaintiff Cartnick's damages are the price she paid for the FOTE Product plus applicable sales taxes, interest, penalties, costs, and attorneys' fees.

20. Plaintiff Amy Connor-Slaybaugh is a resident and citizen of Havana, Illinois. She purchased a Walmart Product for her own use during the three years preceding the filing of this Complaint, most recently in June 2016 at a Walmart retail location in Illinois. Plaintiff Connor-Slaybaugh read the Product label before she bought the Product and believed on the basis of the label's representations that the finished Product contained ordinary Aloe vera, which she valued for its commonly understood skin-healing and sunburn-relief qualities. Plaintiff Connor-Slaybaugh and members of the Walmart Product Class (defined below) suffered an injury in fact caused by the false, fraudulent, unfair, deceptive, and misleading practices of Defendants set forth in this Complaint. Plaintiff Connor-Slaybaugh and members of the Walmart Product Class would not have purchased the Walmart Product had they known the finished Products contain no detectible amount of ordinary Aloe vera or any of Aloe's healing or restorative elements. Plaintiff Connor-Slaybaugh's damages are the price she paid for the Walmart Product plus applicable sales

taxes, interest, penalties, costs, and attorneys' fees.

21.    Plaintiff Phyllis Czapski is a resident and citizen of Troy, Michigan. She purchased the CVS Product for her own use during the four years preceding the filing of this Complaint, most recently at a CVS retail location in Florida.  Plaintiff Czapski read the Product label before she bought the Product and believed on the basis of the label's representations that the finished Product contained ordinary Aloe vera, which she valued for its commonly understood skin-healing and sunburn-relief qualities.  Plaintiff Czapski and members of the CVS Product Class (defined below) suffered an injury in fact caused by the false, fraudulent, unfair, deceptive, and misleading practices of Defendants set forth in this Complaint.  Plaintiff Czapski and members of the CVS Product Class would not have purchased the CVS Product had they known the finished Products contain no detectible amount of ordinary Aloe vera or any of Aloe's healing or restorative elements.  Plaintiff Czapski's damages are the price she paid for the CVS Product plus applicable sales taxes, interest, penalties, costs, and attorneys' fees.

22.    Plaintiff Raelee Dallacqua is a resident and citizen of Garden City, New York. She purchased the FOTE Product for her own use during the three years preceding the filing of this Complaint, most recently on Amazon.com.  Plaintiff Dallacqua read the Product label before she bought the Product and believed on the basis of the label's representations that the finished Product contained ordinary Aloe vera, which she valued for its commonly understood skin-healing and sunburn-relief qualities.  Plaintiff Dallacqua and members of the FOTE Product Class (defined below) suffered an injury in fact caused by the false, fraudulent, unfair, deceptive, and misleading practices of Defendants set forth in this Complaint.  Plaintiff Dallacqua and members of the FOTE Product Class would not have purchased the FOTE Product had they known the finished Products contain no detectible amount of ordinary Aloe vera or any of Aloe's healing or

restorative elements. Plaintiff Dallacqua's damages are the price she paid for the FOTE Product plus applicable sales taxes, interest, penalties, costs, and attorneys' fees.[6]

23.     Plaintiff Autumn Dean is a resident and citizen of Richmond, California. She purchased the CVS Product for her own use during the three years preceding the filing of this Complaint, most recently in March of 2017 at a CVS retail location in California. Plaintiff Dean read the Product label before she bought the Product and believed on the basis of the label's representations that the finished Product contained ordinary Aloe vera, which she valued for its commonly understood skin-healing and sunburn-relief qualities. Plaintiff Dean and members of the CVS Product Class (defined below) suffered an injury in fact caused by the false, fraudulent, unfair, deceptive, and misleading practices of Defendants set forth in this Complaint. Plaintiff Dean and members of the CVS Product Class would not have purchased the CVS Product had they known the finished Products contain no detectible amount of ordinary Aloe vera or any of Aloe's healing or restorative elements. Plaintiff Dean's damages are the price she paid for the CVS Product plus applicable sales taxes, interest, penalties, costs, and attorneys' fees.

24.     Plaintiff Skye Doucette (formerly Skye Krejckant) is a resident and citizen of Gilford, New Hampshire. She purchased the CVS Product for her own use during the three years preceding the filing of this Complaint, most recently in June 2016 at a CVS retail location in New Hampshire. Plaintiff Doucette read the Product label before she bought the Product and believed on the basis of the label's representations that the finished Product contained ordinary Aloe vera, which she valued for its commonly understood skin-healing and sunburn-relief qualities. Plaintiff Doucette and members of the CVS Product Class (defined below) suffered an injury in

---

[6] Plaintiff Dallacqua is currently working overseas and will not return to the United States until sometime this Fall. Plaintiffs believe that her participation in the case is still appropriate since other New York and FOTE class representatives already exist.

fact caused by the false, fraudulent, unfair, deceptive, and misleading practices of Defendants set forth in this Complaint. Plaintiff Doucette and members of the CVS Product Class would not have purchased the CVS Product had they known the finished Products contain no detectible amount of ordinary Aloe vera or any of Aloe's healing or restorative elements. Plaintiff Doucette's damages are the price she paid for the CVS's Product plus applicable sales taxes, interest, penalties, costs, and attorneys' fees.

25.     Plaintiff Christopher Draus is a resident and citizen of Oregon. He purchased the FOTE Product for his own use during the one year preceding the filing of this Complaint, most recently at a retail location in Portland, Oregon. Plaintiff Draus read the Product label before he bought the Product and believed on the basis of the label's representations that the finished Product contained ordinary Aloe vera, which he valued for its commonly understood skin-healing and sunburn-relief qualities. Plaintiff Draus and members of the FOTE Product Class (defined below) suffered an injury in fact caused by the false, fraudulent, unfair, deceptive, and misleading practices of Defendants set forth in this Complaint. Plaintiff Draus and members of the FOTE Product Class would not have purchased the FOTE Product had they known the finished Products contain no detectible amount of ordinary Aloe vera or any of Aloe's healing or restorative elements. Plaintiff Draus' damages are the price he paid for the FOTE Product plus applicable sales taxes, interest, penalties, costs, and attorneys' fees.

26.     Plaintiff Gerald Gordon is a resident and citizen of Coral Springs, Florida. He purchased the Walgreens Product for his own use during the four years preceding the filing of this Complaint, most recently at a Walgreens retail location in Coral Springs, Florida. Plaintiff Gordon read the Product label before he bought the Product and believed on the basis of the label's representations that the finished Product contained ordinary Aloe vera, which he valued

11

for its commonly understood skin-healing and sunburn-relief qualities.  Plaintiff Gordon and members of the Walgreens Product Class (defined below) suffered an injury in fact caused by the false, fraudulent, unfair, deceptive, and misleading practices of Defendants set forth in this Complaint.  Plaintiff Gordon and members of the Walgreens Product Class would not have purchased the Walgreens Product had they known the finished Products contain no detectible amount of ordinary Aloe vera or any of Aloe's healing or restorative elements.  Plaintiff Gordon's damages are the price he paid for the Walgreens Product plus applicable sales taxes, interest, penalties, costs, and attorneys' fees.

27.     Plaintiff Alexandra Groffsky is a resident and citizen of Chicago, Illinois.  She purchased the FOTE Product for her own use during the three years preceding the filing of this Complaint, most recently at a CVS retail location in Michigan.  Plaintiff Groffsky read the Product label before she bought the Product and believed on the basis of the label's representations that the finished Product contained ordinary Aloe vera, which she valued for its commonly understood skin-healing and sunburn-relief qualities.  Plaintiff Groffsky and members of the FOTE Product Class (defined below) suffered an injury in fact caused by the false, fraudulent, unfair, deceptive, and misleading practices of Defendants set forth in this Complaint. Plaintiff Groffsky and members of the FOTE Product Class would not have purchased the FOTE Product had they known the finished Products contain no detectible amount of ordinary Aloe vera or any of Aloe's healing or restorative elements.  Plaintiff Groffsky's damages are the price she paid for the FOTE Product plus applicable sales taxes, interest, penalties, costs, and attorneys' fees.

28.     Plaintiff Emma Groffsky is a resident and citizen of Ann Arbor, Michigan.  She purchased the FOTE Product for her own use during the six years preceding the filing of this

12

Complaint, most recently at a retail location in Michigan. Plaintiff Groffsky read the Product label before she bought the Product and believed on the basis of the label's representations that the finished Product contained ordinary Aloe vera, which she valued for its commonly understood skin-healing and sunburn-relief qualities. Plaintiff Groffsky and members of the FOTE Product Class (defined below) suffered an injury in fact caused by the false, fraudulent, unfair, deceptive, and misleading practices of Defendants set forth in this Complaint. Plaintiff Groffsky and members of the FOTE Product Class would not have purchased the FOTE Product had they known the finished Products contain no detectible amount of ordinary Aloe vera or any of Aloe's healing or restorative elements. Plaintiff Groffsky's damages are the price she paid for the FOTE Product plus applicable sales taxes, interest, penalties, costs, and attorneys' fees.

29.     Plaintiff Joyce Ivy is a resident and citizen of California. She purchased the FOTE Product for her own use during the three years preceding the filing of this Complaint, most recently at a CVS retail location in Roseville, California. Plaintiff Ivy read the Product label before she bought the Product and believed on the basis of the label's representations that the finished Product contained ordinary Aloe vera, which she valued for its commonly understood skin-healing and sunburn-relief qualities. Plaintiff Ivy and members of the FOTE Product Class (defined below) suffered an injury in fact caused by the false, fraudulent, unfair, deceptive, and misleading practices of Defendants set forth in this Complaint. Plaintiff Ivy and members of the FOTE Product Class would not have purchased the FOTE Product had they known the finished Products contain no detectible amount of ordinary Aloe vera or any of Aloe's healing or restorative elements. Plaintiff Ivy's damages are the price she paid for the FOTE Product plus applicable sales taxes, interest, penalties, costs, and attorneys' fees.

30.     Plaintiff La Tanya James is a resident and citizen of Long Beach, California. She

13

purchased the FOTE Product for her own use during the three years preceding the filing of this Complaint, most recently at Target and Walmart retail locations. Plaintiff James read the Product label before she bought the Product and believed on the basis of the label's representations that the finished Product contained ordinary Aloe vera, which she valued for its commonly understood skin-healing and sunburn-relief qualities. Plaintiff James and members of the FOTE Product Class (defined below) suffered an injury in fact caused by the false, fraudulent, unfair, deceptive, and misleading practices of Defendants set forth in this Complaint. Plaintiff James and members of the FOTE Product Class would not have purchased the FOTE Product had they known the finished Products contain no detectible amount of ordinary Aloe vera or any of Aloe's healing or restorative elements. Plaintiff James' damages are the price she paid for the FOTE Product plus applicable sales taxes, interest, penalties, costs, and attorneys' fees.

31.     Plaintiff Michelle Jessop is a resident and citizen of Mason, Ohio. She purchased the FOTE Product for her own use during the two years preceding the filing of this Complaint, most recently at a Walmart retail location in Ohio. Plaintiff Jessop read the Product label before she bought the Product and believed on the basis of the label's representations that the finished Product contained ordinary Aloe vera, which she valued for its commonly understood skin-healing and sunburn-relief qualities. Plaintiff Jessop and members of the FOTE Product Class (defined below) suffered an injury in fact caused by the false, fraudulent, unfair, deceptive, and misleading practices of Defendants set forth in this Complaint. Plaintiff Jessop and members of the FOTE Product Class would not have purchased the FOTE Product had they known the finished Products contain no detectible amount of ordinary Aloe vera or any of Aloe's healing or restorative elements. Plaintiff Jessop's damages are the price she paid for the FOTE Product plus applicable sales taxes, interest, penalties, costs, and attorneys' fees.

14

32.     Plaintiff Joy Judge is a resident and citizen of New York.  She purchased the Walgreens Product for her own use during the three years preceding the filing of this Complaint, most recently in July of 2015 at a Walgreens retail location in New York.  Plaintiff Judge read the Product label before she bought the Product and believed on the basis of the label's representations that the finished Product contained ordinary Aloe vera, which she valued for its commonly understood skin-healing and sunburn-relief qualities.  Plaintiff Judge and members of the Walgreens Product Class (defined below) suffered an injury in fact caused by the false, fraudulent, unfair, deceptive, and misleading practices of Defendants set forth in this Complaint.  Plaintiff Judge and members of the Walgreens Product Class would not have purchased the Walgreens Product had they known the finished Products contain no detectible amount of ordinary Aloe vera or any of Aloe's healing or restorative elements.  Plaintiff Judge's damages are the price she paid for the Walgreens Product plus applicable sales taxes, interest, penalties, costs, and attorneys' fees.

33.     Plaintiff Kathy Mellody is a resident and citizen of Clifton, New Jersey. She purchased the CVS Product for her own use during the six years preceding the filing of this Complaint, most recently in May 2016 at a CVS retail location in New Jersey.  Plaintiff Mellody read the Product label before she bought the Product and believed on the basis of the label's representations that the finished Product contained ordinary Aloe vera, which she valued for its commonly understood skin-healing and sunburn-relief qualities.  Plaintiff Mellody and members of the CVS Product Class (defined below) suffered an injury in fact caused by the false, fraudulent, unfair, deceptive, and misleading practices of Defendants set forth in this Complaint.  Plaintiff Mellody and members of the CVS Product Class would not have purchased the CVS Product had they known the finished Products contain no detectible amount of ordinary Aloe vera

or any of Aloe's healing or restorative elements. Plaintiff Mellody's damages are the price she paid for the CVS Product plus applicable sales taxes, interest, penalties, costs, and attorneys' fees.

34. Plaintiff Susan Nazari is a resident and citizen of Sacramento, California. She purchased the Target Product for her own use during the three years preceding the filing of this Complaint, most recently in July 2016 at a Target retail location in California. Plaintiff Nazari read the Product label before she bought the Product and believed on the basis of the label's representations that the finished Product contained ordinary Aloe vera, which she valued for its commonly understood skin-healing and sunburn-relief qualities. Plaintiff Nazari and members of the Target Product Class (defined below) suffered an injury in fact caused by the false, fraudulent, unfair, deceptive, and misleading practices of Defendants set forth in this Complaint. Plaintiff Nazari and members of the Target Product Class would not have purchased the Target Product had they known the finished Products contain no detectible amount of ordinary Aloe vera or any of Aloe's healing or restorative elements. Plaintiff Nazari's damages are the price she paid for the Target Product plus applicable sales taxes, interest, penalties, costs, and attorneys' fees.

35. Plaintiff Megan Norsworthy is a resident and citizen of Dayton, Ohio. She purchased the FOTE Product for her own use during the two years preceding the filing of this Complaint, most recently in May/June of 2015 at a Walmart retail location in Ohio. Plaintiff Norsworthy read the Product label before she bought the Product and believed on the basis of the label's representations that the finished Product contained ordinary Aloe vera, which she valued for its commonly understood skin-healing and sunburn-relief qualities. Plaintiff Norsworthy and members of the FOTE Product Class (defined below) suffered an injury in fact caused by the false, fraudulent, unfair, deceptive, and misleading practices of Defendants set forth in this Complaint. Plaintiff Norsworthy and members of the FOTE Product Class would not have

purchased the FOTE Product had they known the finished Products contain no detectible amount of ordinary Aloe vera or any of Aloe's healing or restorative elements. Plaintiff Norsworthy damages are the price she paid for the FOTE Product plus applicable sales taxes, interest, penalties, costs, and attorneys' fees.

36.     Plaintiff Martina Osley is a resident and citizen of Ohio. She purchased the FOTE Product for her own use during the two years preceding the filing of this Complaint, most recently in 2016 at a Walmart retail location in Ohio. Plaintiff Osley read the Product label before she bought the Product and believed on the basis of the label's representations that the finished Product contained ordinary Aloe vera, which she valued for its commonly understood skin-healing and sunburn-relief qualities. Plaintiff Osley and members of the FOTE Product Class (defined below) suffered an injury in fact caused by the false, fraudulent, unfair, deceptive, and misleading practices of Defendants set forth in this Complaint. Plaintiff Osley and members of the FOTE Product Class would not have purchased the FOTE Product had they known the finished Products contain no detectible amount of ordinary Aloe vera or any of Aloe's healing or restorative elements. Plaintiff Osley damages are the price she paid for the FOTE Product plus applicable sales taxes, interest, penalties, costs, and attorneys' fees.

37.     Plaintiff Deborah Ostrander is a resident and citizen of New York. She purchased the CVS Product for her own use during the three years preceding the filing of this Complaint, most recently at a CVS retail location in New York. Plaintiff Ostrander read the Product label before she bought the Product and believed on the basis of the label's representations that the finished Product contained ordinary Aloe vera, which she valued for its commonly understood skin-healing and sunburn-relief qualities. Plaintiff Ostrander and members of the CVS Product Class (defined below) suffered an injury in fact caused by the false, fraudulent, unfair, deceptive,

17

and misleading practices of Defendants set forth in this Complaint.  Plaintiff Ostrander and members of the CVS Product Class would not have purchased the CVS Product had they known the finished Products contain no detectible amount of ordinary Aloe vera or any of Aloe's healing or restorative elements.  Plaintiff Ostrander's damages are the price she paid for the CVS Product plus applicable sales taxes, interest, penalties, costs, and attorneys' fees.

38.     Plaintiff Dana Phillips is a resident and citizen of Kernersville, North Carolina. She purchased the FOTE Product for her own use during the four years preceding the filing of this Complaint, most recently at Walmart and Rite-Aid retail locations in North Carolina. Plaintiff Phillips read the Product label before she bought the Product and believed on the basis of the label's representations that the finished Product contained ordinary Aloe vera, which she valued for its commonly understood skin-healing and sunburn-relief qualities.  Plaintiff Phillips and members of the FOTE Product Class (defined below) suffered an injury in fact caused by the false, fraudulent, unfair, deceptive, and misleading practices of Defendants set forth in this Complaint.  Plaintiff Phillips and members of the FOTE Product Class would not have purchased the FOTE Product had they known the finished Products contain no detectible amount of ordinary Aloe vera or any of Aloe's healing or restorative elements.  Plaintiff Phillips' damages are the price she paid for the FOTE Product plus applicable sales taxes, interest, penalties, costs, and attorneys' fees.

39.     Plaintiff Thomas Ramon, Jr., is a resident and citizen of Texas.  He purchased the FOTE product for his own use during the two years preceding the filing of this Complaint, most recently at a retail location in Texas.  Plaintiff Ramon read the Product label before he bought the Product and believed on the basis of the label's representations that the finished Product contained ordinary Aloe vera, which he valued for its commonly understood skin-healing and

sunburn-relief qualities. Plaintiff Ramon and members of the FOTE Product Class (defined below) suffered an injury in fact caused by the false, fraudulent, unfair, deceptive, and misleading practices of Defendants set forth in this Complaint. Plaintiff Ramon and members of the FOTE Product Class would not have purchased the FOTE Product had they known the finished Products contain no detectible amount of ordinary Aloe vera or any of Aloe's healing or restorative elements. Plaintiff Ramon's damages are the price he paid for the FOTE Product plus applicable sales taxes, interest, penalties, costs, and attorneys' fees.

40.     Plaintiff Nancy Reeves is a resident and citizen of Imperial, California. She purchased the FOTE Product for her own use during the three years preceding the filing of this Complaint, most recently at a CVS retail location in Yuma, Arizona, and at Walmart and K-Mart retail locations in El Centro, California. Plaintiff Reeves read the Product label before she bought the Product and believed on the basis of the label's representations that the finished Product contained ordinary Aloe vera, which she valued for its commonly understood skin-healing and sunburn-relief qualities. Plaintiff Reeves and members of the FOTE Product Class (defined below) suffered an injury in fact caused by the false, fraudulent, unfair, deceptive, and misleading practices of Defendants set forth in this Complaint. Plaintiff Reeves and members of the FOTE Product Class would not have purchased the FOTE Product had they known the finished Products contain no detectible amount of ordinary Aloe vera or any of Aloe's healing or restorative elements. Plaintiff Reeves' damages are the price she paid for the FOTE Product plus applicable sales taxes, interest, penalties, costs, and attorneys' fees.

41.     Plaintiff Matthew Robertson is a resident of Texas. He purchased the FOTE Product for his own use during the two years preceding the filing of this Complaint, most recently at an H-E-B retail location in Austin, Texas. Plaintiff Robertson read the Product label before he

bought the Product and believed on the basis of the label's representations that the finished Product contained ordinary Aloe vera, which he valued for its commonly understood skin-healing and sunburn-relief qualities. Plaintiff Robertson and members of the FOTE Product Class (defined below) suffered an injury in fact caused by the false, fraudulent, unfair, deceptive, and misleading practices of Defendants set forth in this Complaint. Plaintiff Robertson and members of the FOTE Product Class would not have purchased the FOTE Product had they known the finished Products contain no detectible amount of ordinary Aloe vera or any of Aloe's healing or restorative elements. Plaintiff Robertson damages are the price he paid for the FOTE Product plus applicable sales taxes, interest, penalties, costs, and attorneys' fees.

42.     Plaintiff Shelley Waitzman is a resident and citizen of Vernon Hills, Illinois. She purchased the Walgreens Product for her own use during the three years preceding the filing of this Complaint, most recently in May 2016 at a Walgreens retail location in Illinois. Plaintiff Waitzman read the Product label before she bought the Product and believed on the basis of the label's representations that the finished Product contained ordinary Aloe vera, which she valued for its commonly understood skin-healing and sunburn-relief qualities. Plaintiff Waitzman and members of the Walgreens Product Class (defined below) suffered an injury in fact caused by the false, fraudulent, unfair, deceptive, and misleading practices of Defendants set forth in this Complaint. Plaintiff Waitzman and members of the Walgreens Product Class would not have purchased the Walgreens Product had they known the finished Products contain no detectible amount of ordinary Aloe vera or any of Aloe's healing or restorative elements. Plaintiff Waitzman's damages are the price she paid for the Walgreens Product plus applicable sales taxes, interest, penalties, costs, and attorneys' fees.

43.     Plaintiff Jamila Wang is a resident and citizen of California. She purchased the

Walgreens Product for her own use during the three years preceding the filing of this Complaint, most recently at a Walgreens retail location in California, most recently in July of 2016. Plaintiff Wang read the Product label before she bought the Product and believed on the basis of the label's representations that the finished Product contained ordinary Aloe vera, which she valued for its commonly understood skin-healing and sunburn-relief qualities. Plaintiff Wang and members of the Walgreens Product Class (defined below) suffered an injury in fact caused by the false, fraudulent, unfair, deceptive, and misleading practices of Defendants set forth in this Complaint. Plaintiff Wang and members of the Walgreens Product Class would not have purchased the Walgreens Product had they known the finished Products contain no detectible amount of ordinary Aloe vera or any of Aloe's healing or restorative elements. Plaintiff Wang's damages are the price she paid for the Walgreens Product plus applicable sales taxes, interest, penalties, costs, and attorneys' fees.

44. Plaintiff Amber Wimberly is a resident and citizen of Blue Springs, Missouri. She purchased the FOTE Product for her own use during the five years preceding the filing of this Complaint, most recently at a Hy-Vee grocery store in Missouri. Plaintiff Wimberly read the Product label before she bought the Product and believed on the basis of the label's representations that the finished Product contained ordinary Aloe vera, which she valued for its commonly understood skin-healing and sunburn-relief qualities. Plaintiff Wimberly and members of the FOTE Product Class (defined below) suffered an injury in fact caused by the false, fraudulent, unfair, deceptive, and misleading practices of Defendants set forth in this Complaint. Plaintiff Wimberly and members of the FOTE Product Class would not have purchased the FOTE Product had they known the finished Products contain no detectible amount of ordinary Aloe vera or any of Aloe's healing or restorative elements. Plaintiff Wimberly's

damages are the price she paid for the FOTE Product plus applicable sales taxes, interest, penalties, costs, and attorneys' fees.

**B.**   *Defendants*

45.    Defendant CVS Pharmacy, Inc. ("CVS") is a Delaware corporation with a principal place of business at One CVS Drive, Woonsocket, Rhode Island 02895.  As of March 31, 2016, CVS operated 9,674 retail locations in 49 states and the District of Columbia, including in-store Target pharmacies which CVS acquired in December 2015.  CVS markets, distributes and sells the CVS Product throughout the United States, including in Illinois.

46.    Defendant Target Corporation ("Target") is a Minnesota corporation with a principal place of business located in Minneapolis, Minnesota. Target markets, distributes and sells the Target Product and FOTE Product throughout the United States, including in Illinois.

47.    Defendant Walmart Stores, Inc. ("Walmart") is a Delaware corporation with a principal place of business at 702 SW 8th Street, Bentonville, Arkansas 72716-8611. Walmart markets, distributes and sells the Walmart Product and FOTE Product throughout the United States, including in Illinois.

48.    Defendant Walgreen Co. ("Walgreens"), is a Delaware corporation with a principal place of business at 108 Wilmot Road, Deerfield, Illinois. Walgreens holds itself out as "a global leader in pharmacy-led health and wellbeing retail, with more than 13,100 stores in 11 countries."[7] In the United States, Walgreens owns and operates both Walgreens and Duane Reade stores.[8] As of August 31, 2015, the company operated 8,173 stores in all fifty states, the

---

[7]   Prospectus, at 5. http://investor.walgreensbootsalliance.com/secfiling.cfm?filingID=1193125-16-662399&CIK=1618921#D195487D424B7_HTM_TOC195487_5, *last accessed* Apr. 6, 2017.
[8] *Id.*

District of Columbia, Puerto Rico and the U.S. Virgin Islands.[9] Walgreens markets, distributes and sells the Walgreens Product and FOTE Product throughout the United States, including in Illinois.

49.     Defendant Fruit of the Earth, Inc. ("FOTE") is a privately-held corporation licensed in Texas, with a principal place of business at 3101 High River Road, Suite #175, Ft. Worth, Texas 76155.  FOTE markets, distributes and sells the FOTE Product throughout the United States, including in Illinois.  In addition, FOTE was the manufacturer of the Aloe aftersun Products marketed and sold by the Retailer Defendants.  FOTE utilized a stream of commerce – a flow of products from manufacture to distribution to retail sale – in such a way that it was aware that the Products it manufactured were being marketed and sold in Illinois, including the Northern District of Illinois.

### III.     JURISDICTION AND VENUE

50.     The Court has subject matter jurisdiction over Plaintiffs' class claims pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d), because the combined claims of the proposed Class Members exceed $5,000,000 and because Defendants are citizens of different states than Plaintiffs and most Class Members.

51.     This Court has personal jurisdiction over each of the Defendants because each regularly conducts business in this District and/or under the stream of commerce doctrine. *Richter v. Instar Enters. Int'l, Inc.*, 594 F. Supp. 2d 1000, 1015 (N.D. Ill. 2009).

52.     As the Court has already determined, venue is proper in this District pursuant to: (1) 28 U.S.C. § 1391(b)(2) in that a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this District; and (2) 28 U.S.C. § 1391(b)(3) in that Defendants are

---

[9] http://news.walgreens.com/fact-sheets/store-count-by-state.htm, *last accessed* Apr. 6, 2017.

subject to personal jurisdiction in this District.

## IV.     FACTUAL ALLEGATIONS

**A.      Aloe Is a Common Plant Familiar to Consumers**

53.     An ordinary Aloe plant looks like this:



54.     The Aloe plant is mainly comprised of broad thick leaves. The leaves are comprised of a green rugged protective outer layer, like the rind on fruit or outer layer of a cactus plant. It looks like this:



55.     The outer layer can be cut away to reveal a moist, tender inner section that looks much like a fish filet that has been de-skinned. It looks like this:



56.     For hundreds of years, ordinary Aloe has been used to treat burns and other skin irritations.  People remove the outer protective layer (rind) of the leaf and place the moist inner section on the skin burn, or squeeze the moist gel out from within a leaf and rub it into the affected skin for relief and healing.

57.     To be clear, the moist inner section of the ordinary Aloe leaf, or the gel or juice extracted from the inner section, is what people have used for therapeutic purposes.

58.     Ordinary Aloe is also a popular folk remedy when consumed, believed by some to treat everything from hypertension to the common cold; FOTE in fact markets and sells a line of Aloe-containing Aloe vera drinks especially aimed at these uses.

59.     A 1999 study in the British Journal of General Practice found that consuming

Aloe vera may help lower cholesterol and reduce glucose levels.[10] These findings sparked renewed interest in products containing Aloe vera.

60.     "The global market for Aloe vera products is estimated to have reached $13 billion, according to information presented at a recent workshop held by the International Aloe Science Council."[11]

61.     Global demand for Aloe vera extracts is expected to reach 60,720.4 tons this year, and the global Aloe vera extracts market is anticipated to continue to expand at a compound annual growth rate of 7.4% through 2026, according to a recent market forecast from Future Market Insights.[12]  In short, Aloe has become big business.

**B.     Aloe Gel Is Highly Processed for Use in Consumer Products**

62.     *Aloe barbadensis* is the scientific name of an Aloe plant species that is widely used in the manufacturing of consumer products.

63.     Before FOTE acquires the Aloe it uses to produce its Products, the Aloe is already highly processed.  Generally, the processing includes: (1) growing the Aloe vera on farms and hand harvesting the upper leaves from the plants for processing; (2) transporting the harvested leaves to a processing facility; (3) removing the outer layer (rind) by hand to separate it from the moist inner section; (4) pulverizing the inner section into a gooey juice and adding enzymes; (5) filtering the non-liquid components, or pulp, from the juice; and (6) removing water to lighten the product for shipping.

64.     Depending on whether the end use of the Aloe vera gel is food grade or cosmetic

---

[10]  http://www.aloevera-info.org/downloads/Study_AV_Clinical%20efficacy.pdf, *last accessed* Apr. 6, 2017.
[11]     http://www.nutraingredients-usa.com/Markets/Global-aloe-market-estimated-at-13-billion, *last accessed* Apr. 6, 2017.
[12]  Excerpts of the FMI study, "Aloe Vera Extracts Market: Global Industry Analysis and Opportunity Assessment, 2016 – 2026," are available at: http://www.futuremarketinsights.com/reports/aloe-vera-extracts-market, *last accessed* Apr. 6, 2017.

grade, even more processing may be required.[13] Cosmetic grade Aloe is also thickened and stabilized with preservatives and other chemicals prior to shipping.

65. FOTE's Aloe supplier, Concentrated Aloe Corporation ("CAC"), publishes a Technical Data Sheet that describes its product as, "The pure single strength gel from the inner leaf of the Aloe Vera which has been purified and decolorized."[14]

66. However, as Plaintiffs' lab tests of CAC's raw materials show, the above-described Aloe processing and purification process removes, obliterates and/or filters out most of ordinary Aloe's signature elements. By the time the Aloe raw material reaches FOTE, it is definitely not ordinary Aloe, nor pure, nor 100% Aloe vera.

67. Upon being put into use by FOTE, the Aloe raw material is rehydrated and *processed again* and *even more chemicals* are added.

68. Defendants do no finished product testing on their aftersun Products to verify the contents despite their claims that the Products contain ordinary Aloe with healing and restorative elements.

69. Consumers are unaware that the Products have been processed, emulsified, stabilized, purified, treated, filtered, and thickened before bottling.

70. Defendants also fail to disclose and adequately warn consumers that the finished Products after processing no longer resemble ordinary Aloe by any meaningful measure, or contain any of Aloe's desirable healing elements.

**C.** **The Aloe Aftersun Products at Issue Span Numerous Forms, Sizes, Formulations, Colors, and SKUs, but the Finished Products All Lack Detectible Amounts of Aloe and Aloe's Healing and Restorative Elements**

71. Defendants market and sell a variety of Aloe aftersun products that claim to

---

[13] http://www.conaloe.com/
[14] http://www.conaloe.com/wp-content/uploads/2015/04/TDS-03-2312-1.pdf

contain ordinary Aloe with Aloe's healing and restorative elements.

72.    To be clear, while some of the Products are packaged in clear bottles or tubes, some have coloring or fragrance added, some claim to be alcohol-free, and different package sizes and different label variations exist for the same Products, they all suffer the same common and material defect.

73.    What is challenged in this case are the false claims, common to all of these Products, that the products contain ordinary Aloe vera with Aloe's healing and restorative elements.

74.    For example, the front label of this CVS Product clearly states the misleading claim that the CVS Product contains "Aloe Vera":



75.    The "Aftersun Aloe Vera" representation is in a much larger font with more contrast than other label representations.  The label also includes a prominent stylized illustration of the Aloe plant to further convey the importance of Aloe as a Product ingredient.

76.    The ingredients listed on this label are: "Aloe Vera Gel, Triethanolamine, Tocopheryl Acetate (Vitamin E), Carbomer, Tetrasodium EDTA, DMDM Hydantoin, Diazolidinyl Urea."

77.    Another version of the CVS product label is even more misleading, stating that the CVS Product contains "100% pure aloe vera," comparable to "Fruit of the Earth® Aloe Vera Gel":



78.     The ingredients listed on this label are: "Aloe Vera Gel, Triethanolamine, Tocopheryl Acetate, Carbomer, Tetrasodium EDTA, DMDM Hydantoin, Diazolidinyl Urea."

79.     Other sizes, colors, label variations, formulations, and SKUs of CVS's Aloe aftersun Products may exist, and all such products supplied by FOTE are part of this case.

80.     Similarly, the front label of this FOTE Product clearly states the misleading claims "Aloe Vera 100% Gel," and, "PURE":



81.     The "Aloe Vera" and "100% Gel" representations are in a much larger font with more and different contrast than other label representations, and "PURE" is italicized and in all capital letters.  The label also includes a prominent stylized illustration of the Aloe plant to

further convey the importance of Aloe as a Product ingredient.

82.     The back label of the FOTE Product specifies that "ADVANCED RESEARCH Proudly Presents 100% PURE ALOE VERA GEL." The back label also claims that the FOTE Product is made from "fresh Aloe Vera leaves" and it promotes the healing and restorative elements of Aloe as providing "effective relief from Sunburn, Minor Burns, Skin Irritations, Insect Bites, Chafing, Itching, Dry Skin":



83.    In addition, FOTE's website touted that the FOTE Product contains "100% Aloe Vera Gel" and is "[m]ade with the most concentrated amount fresh aloe vera leaves on the market."[15]



84.    The ingredients listed on this label are: "Aloe Vera Gel; Triethanolamine; Tocopheryl Acetate; Carbomer; Tetrasodium EDTA; DMDM Hydantoin; Diazolidinyl Urea."

85.    Other sizes, colors, label variations, formulations, and SKUs of FOTE's Aloe aftersun Products may exist, and all such products produced by FOTE are part of this case.

86.    The front label of this Target Product clearly states the misleading claims "Aloe Vera Gel," and "pure aloe vera":

---

[15] http://www.fote.com/prod_skin_gel.html, *last accessed* Apr. 26, 2016.  FOTE has since redesigned its website.

 

87.     The "Aloe Vera" representation is in a much larger bold font than other label representations.

88.     The back label of this Target Product lists "Aloe Barbadensis Leaf Juice" as the Target Product's second-most predominant ingredient:



89.     The ingredients listed on this label are: "Water, Aloe Barbadensis Leaf Juice, Alcohol Denat., Glycerin, Polysorbate 20, Carbomer, Triethanolamine, Benzophenone-4, Phenoxyethanol, Benzyl Alcohol, Fragrance, Yellow 5, Blue 1."

90.     Target also recently introduced a new version of its Product, which claims to be "97.7% Pure Aloe Vera Gel:"



91.     The ingredients listed on this label are: "Aloe Barbadensis Leaf Juice, Triethanolamine, Tocopheryl Acetate (Vitamin E), Carbomer, Tetrasodium EDTA, DMDM Hydantoin, Diazolidinyl Urea."

92.     Other sizes, colors, label variations, formulations, and SKUs of Target's Aloe aftersun Products may exist, and all such products supplied by FOTE are part of this case.

93.     The front label of this Walgreens Product clearly refers to the Walgreens Product as "Alcohol Free Aloe Vera Body Gel":



94.     The "Aloe Vera" representation is in a much larger font with more contrast than other label representations.  The label also includes a prominent stylized illustration of the Aloe plant to further convey the importance of Aloe as a Product ingredient.

95.     The back of this Walgreens Product lists "Aloe Barbadensis Leaf Juice" as the first and most predominant ingredient.  The ingredients listed on the label are: "Aloe Barbadensis Leaf Juice, Water, Triethanolamine, Tocopheryl Acetate, Carbomer, Tetrasodium EDTA, DMDM Hydantoin, Diazolidinyl Urea."

96.     Other sizes, colors, label variations, formulations, and SKUs of Walgreens Aloe aftersun Products may exist, and all such products produced by FOTE are part of this case, except for those containing menthol, lidocaine, or another similar active ingredient.

35

97.     The front label of this Walmart Equate Aloe After Sun Gel Product clearly refers to the Product as an "Aloe After Sun" product, containing "Pure Aloe Vera":



98.     The back label of this Product lists "Aloe Barbadensis (Aloe Vera) Leaf Juice" as the second most predominant ingredient after water.  The ingredients listed on this label are: "Water, Aloe Barbadensis (aloe vera) Leaf Juice, Glycerin, Polysorbate-20, Triethanolamine, Carbomer, Diazolidinyl Urea, Iodopropynyl Butylcarbamate, Benzophenone-4, Propylene Glycol, Fragrance, Blue 1, Yellow 5."



99.     Other sizes, colors, label variations, formulations, and SKUs of Walmart's Aloe aftersun Products may exist, and all such products produced by FOTE are part of this case, except for those containing other active ingredients, such as lidocaine.[16]

**D.      Defendants' Product Labels are Misleading Because the Finished Products Do Not Contain Ordinary Aloe or Any of Aloe's Healing and Restorative Elements**

100.     Contrary to the representations made on Defendants' Product labels, the finished Products do not contain ordinary Aloe or detectible amounts of *Aloe vera*.  *The active ingredient(s), Aloe's unique chemical markers, and the healing and restorative elements associated with Aloe are completely absent in these Products.*

101.     Defendants knew or should have known that their processing of the Products changed ordinary Aloe into something different and destroyed Aloe's unique attributes, and that the labels of their Products are misleading.

102.     After the consumer watchdog group ConsumerLab.com reported that several commercially available Aloe products -- including FOTE's 100% Aloe Vera Gel -- contained no Aloe vera,[17] Plaintiffs' counsel ran tests to independently confirm that none of the Products listed in ¶ 1 contain Aloe.  If the finished Products contained ordinary Aloe vera, laboratory testing would have revealed the presence of Acemannan, the key active ingredient in ordinary Aloe. The laboratory testing confirmed that those Products contain no detectible levels of Acemannan or any of Aloe vera's other tell-tale chemical markers or signatures.  Plaintiffs' counsel even did confirmatory testing to look for the chemical signs one would expect to find of the degradation of ordinary Aloe vera, but none of those markers were present in detectible quantities, either.

---

[16] The Equate Aloe Sunburn Relief Gel (blue in color) has been excluded from this Second Amended Complaint.
[17]   http://www.consumerlab.com/reviews/aloe_supplements_gels_drinks/aloe   (Feb. 15, 2015), *last accessed* Sept. 10, 2016.

103.    Copies of Plaintiffs' test results have already been provided to Defendants, and Defendants so far have produced no finished product test results of their own.  Additionally, since the Products are all manufactured by FOTE using the same raw materials, facility, and formulas (as confirmed by identical lists of ingredients), there is no reason to believe that the tests Plaintiffs performed are atypical or unrepresentative of all of Defendants' relevant Aloe aftersun Products.

104.    According to the American Herbal Pharmacopeia *Monograph on Aloe Vera Leaf, Aloe Vera Leaf Juice, and Aloe Vera Inner Leaf Juice* (2013), Aloe leaf extract should contain not less than 5% dry weight of acetylated polysaccharides (Acemannan) and not more than 5% dry weight of isocitric acid as determined by proton nuclear magnetic resonance spectrometry (H NMR).

105.    From a chemists' point of view, ordinary Aloe contains Acemannan, Glucose, and Malic Acid in significant and measurable quantities.  *Id.*

106.    Since Glucose and Malic Acid can be intentionally added to products, the presence or absence of Acemannan, which is a chemical unique to Aloe, is highly significant in determining the authenticity of a purportedly Aloe-based product.

107.    A similar conclusion was also independently reached by Bloomberg as part of its widely publicized November 22, 2016 article: *No Evidence of Aloe Vera Found in the Aloe Vera at Wal-Mart, CVS*.[18]

108.    Based on these series of corroborating test results, Defendants' claims that their Products contain "Aloe," "Aloe Vera," "Pure" Aloe, "100%" Aloe, "Aloe Barbadensis Leaf Juice," and other similar claims are materially deceptive and misleading.  Additionally, Products

---

[18]    https://www.bloomberg.com/news/articles/2016-11-22/no-evidence-of-aloe-vera-found-in-the-aloe-vera-at-wal-mart-cvs, *last accessed* Apr. 6, 2017.

that do not contain ordinary Aloe or Aloe's chemical elements cannot provide the healing or restorative elements consumers expect from real Aloe.

109.    As further explained in the Bloomberg article:

[C]oncerns over imitation aloe aren't new.  The industry created the International Aloe Science Council in the 1980s as more and more products hit store shelves that contained little or no aloe…. Maltodextrin, a light-colored powder that looks like aloe powder and is used as a food additive, was a common filler or substitute. Maltodextrin is cheaper than aloe….

[A] Keene, New Hampshire based sales manager at AloeCorp, one of the biggest suppliers of raw aloe powder, said he's seen competitors beat his lowest prices by half.  That means they're not selling aloe, he said.  Aloe powder can cost as much as $240 a kilogram, he said, while the same amount of maltodextrin can cost a few dollars.

Making just 1 kilogram of aloe powder, the ingredient used in finished gels and drinks, requires 400 kilos (882 pounds) of aloe leaves….  The process involves removing rinds from the leaves and dehydrating the remaining aloe into a powder form.

Aloe is all harvested by hand ….  It's an involved process and it's not cheap.

110.    According to the International Aloe Science Council ("IASC"), the Aloe-industry product certification group cited in the Bloomberg article, "**[p]roducts that do not contain Acemannan are not considered to be true aloe vera**."[19]

111.    The IASC is an international, non-profit Aloe vera testing and certification organization that was formed in the 1980's to help protect consumers from products falsely labeled as Aloe vera products.[20]

112.    Notably, before 2011, FOTE's Aloe vera products were tested and certified by the IASC. Today, none of FOTE's products or manufacturing facilities are certified by the IASC. *See IASC, Inc. v. Fruit of the Earth, Inc.*, Case No. 11-cv-02255 (D. Md. 2011) (trademark

---

[19] http://www.iasc.org/Consumers/AloeVeraFAQ.aspx, *last accessed* Apr. 6, 2017 (emphasis in original).
[20] *See* http://www.iasc.org/Certification/ProgramDetails.aspx, *last accessed* Apr. 6, 2017.

infringement action for FOTE's unauthorized use of the IASC's Aloe vera "certification seal" and trademarks).

113.    Other scholarly and industry sources also consider Acemannan to be the main active ingredient in properly processed Aloe vera inner leaf gel.[21] Improper manufacturing processes used by many Aloe product manufacturers can produce products with little or no Acemannan.  Currently, most manufacturers, including Defendants, do not assay for Acemannan content or other Aloe markers in their final products.

**E.    The Appropriate Remedy for the Marketing of Snake Oil Is Rescission**

114.    The difference between the Products promised and the Products sold is significant. The lack of ordinary Aloe vera and Acemannan in the finished Products fully diminishes the value of the Products to nil.  No reasonable consumer would have purchased the Products had they known that the Aloe vera and Aloe's healing or restorative elements had been removed, filtered or processed out of these Products, or otherwise degraded to the point of no longer constituting ordinary Aloe vera.

115.    Consistent with the Sixth Circuit's analysis and holding in *Rikos v. Proctor & Gamble*, 799 F.3d 497 (6th Cir. 2015), Plaintiffs seek return of their full purchase price for these Products plus any applicable sales tax, interest, penalties, costs, and attorneys' fees.  As is typical of consumer cosmetics and health & beauty products, the Products at issue retail for a few dollars each at most.

116.    For example, the 12 oz. size of FOTE's Product is currently listed on Walmart.com for $3.97, and Walmart's 20 oz. Product is listed for $3.98.

---

[21] *See* American Herbal Pharmacopeia – *Monograph on Aloe Vera Leaf, Aloe Vera Leaf Juice, and Aloe Vera Inner Leaf Juice* (2013) (citing relevant scientific literature and studies).

117.    Double, treble, and statutory damages are also available or mandatory under some state's consumer protection laws.

**F.    The Materiality of Defendant's Aloe Representations to a Reasonable Consumer Is Self-Evident**

118.    Labeling representations and claims by their very nature are material and intentional.  Consumers largely make purchasing decisions at the point of sale, and product labels are designed by manufacturers to encourage impulse buying when consumers are hurried and relatively unable to research or compare similar products.

119.    At all relevant times, Defendants directed their Product labels and the above-referenced Aloe and Aloe-related misrepresentations to consumers in general and Class members in particular, as evidenced by Class members' eventual purchases and/or use of the Products. That multiple Defendants' Products sit side-by-side on store shelves with similar label claims and similar prices is especially misleading because consumers have no way to uncover that all of these Products are related, all are manufactured by FOTE, and none of them contain detectible levels of ordinary Aloe in the finished Product.

120.    Defendants developed and knowingly employed this marketing strategy to deceive consumers.  The only conceivable purpose of this scheme was to stimulate sales and enhance Defendants' profits.

121.    Other strong indicia of materiality in this case include: (a) the Plaintiffs' similar views and experiences despite geography; (b) the Bloomberg article and the views of the experienced scientists and industry representatives quoted in that article; (c) the existence and role of the IASC in helping to regulate the industry; (d) the fact that the wording and claims made on some Defendants' Products have changed and softened over time, including after this lawsuit was commenced; (e) the existence of numerous customer complaints received by FOTE

41

and each of the Retailer Defendants, especially after the Bloomberg article; (f) FOTE's loss of IASC certification; and (g) the receipt of numerous consumer complaints/remarks about the Products by ConsumerLab.com following the release of its exposé. Defendants' internal market research and pricing policies will also confirm the materiality of Defendant's Aloe-related labeling claims.

122. Plaintiffs and Class members were in fact misled by Defendants' representations and marketing of their Products. The absence of ordinary Aloe vera and its active chemical ingredients in the finished Products leaves no reason to purchase the Products at all. Countless other proven Aloe and non-Aloe aftersun and moisturizing products exist. No reasonable consumer would have purchased or used the Products if they knew the finished Products did not contain detectible levels of ordinary Aloe vera or any of Aloe's healing or restorative elements.

123. Defendants' actions and Product labeling are also clearly intentional. For example, following publication of ConsumerLab.com's test results, a spokesperson for FOTE attempted to distract the public from the lack of Acemannan in the finished FOTE Product, explaining:

> [O]ur 100% Aloe Vera Gel is from the Aloe Vera Plants. If you look at the label there is an asterisk (*) by the (L) in Gel. If you then turn the bottle over to the back, there is another asterisk under the barcode that says 'plus stabilizers and preservatives to insure potency and efficacy.' All the other incidental ingredients are added as preservatives and stabilizers and are in very minimal amounts. They are simply added to help the gel not spoil as quickly.[22]

124. However, "ConsumerLab.com's tests found that th[o]se 'incidental' ingredients are essentially the ***only*** ingredients in this product and include 'carbomer' a synthetic polymer which acts as a thickening agent. ConsumerLab.com was aware of these other ingredients, which

---

[22] http://www.consumerlab.com/reviews/aloe_supplements_gels_drinks/aloe (Feb. 15, 2015), at Updates (Jan. 2, 2016), *last accessed* Sept. 10, 2016.

are listed in the Ingredients page of [its] Review.  In that list, copied from the product's label, Aloe vera gel is listed *ahead* of the other ingredients, indicating that the product contains more of it than the other ingredients, but this did not appear to be correct."[23]

125.    Plaintiffs' counsel also tested the already highly processed and thickened "gels" produced by FOTE's raw ingredient supplier, and those results showed that the gels FOTE is using to manufacture the Products are full of chemicals, thickeners, and preservatives.  Naturally, the finished Products cannot be "100%" Aloe or "pure" if the raw materials aren't 100% Aloe or pure.  Surely, Defendants knew this, or they were reckless in not discovering it.

**G.    Defendants' Products Are Also Misbranded and Fraught with Technical Violations**

126.    The Products are a defined as "cosmetics" under 21 U.S.C.S. § 321(i) and as "drugs" under § 321(g)(i) and 21 C.F.R. § 700.35.

127.    "Where a cosmetic product is also an over-the-counter drug product, the [label] shall declare the active drug ingredients as set forth in § 201.66(c)(2) and (d) of this chapter, and the [label] shall declare the cosmetic ingredients as set forth in § 201.66(c)(8) and (d) of this chapter."

128.    21 C.F.R. § 701.3(a) requires "[t]he label on each package of a cosmetic [to] bear the name of each ingredient in descending order of predominance …"

129.    "Aloe Vera Gel" is a predominant item listed on several of Defendants' Products labels under "ingredients." This is doubly improper and misleading, in that (a) Aloe vera gel does not qualify as an active ingredient since the active component of Aloe vera is Acemannan, and (b) the finished Products *contain no detectible levels of Aloe vera or Acemannan*.

---

[23] *Id.*

43

130.    Further, "Aloe Vera Gel" is not recognized as valid cosmetic ingredient.  The list of approved ingredients is published by the Cosmetic, Toiletry and Fragrance Association, Inc. in the Cosmetic Ingredient Dictionary ("CID").  21 C.F.R. § 701.3(c). The CID lists "Aloe Leaf Powder" and "Aloe Vera Juice" as recognized ingredients, but "Aloe Vera Gel" has never been listed in the CID.

131.    Defendants list "Aloe Vera Gel" and/or "Aloe Barbadensis (Aloe Vera) Leaf Juice" as a predominant ingredient in their Products to mislead consumers into believing the finished Products contain significant amounts of Aloe vera, when in fact they contain none.

132.    The federal Food and Drug Administration has promulgated regulations for compliance with the Food Drug & Cosmetics Act ("FDCA") at 21 C.F.R. §§ 201 *et seq*. (for drugs), and §§ 701 *et seq*. (for cosmetics).

133.    Defendants' Products are misbranded under 21 C.F.R. § 701.1(b), which deems cosmetics misbranded when "[t]he labeling of a cosmetic which contains two or more ingredients [is designated] in such labeling by a name which includes or suggests the name of one or more but not all such ingredients." This is deemed misbranding "even though the names of all such ingredients are stated elsewhere in the labeling."

134.    The first ingredient listed on the back label of the CVS Product and FOTE Product is "Aloe Vera Gel," not Aloe vera. "Aloe Barbadensis Leaf Juice" is the first item listed on the Walgreens Product label under "Ingredients," and "Aloe Barbadensis (Aloe Vera) Leaf Juice" is the second item listed on Target and Walmart labels.  21 C.F.R. § 701.3(a) requires "[t]he label on each package of a cosmetic [to] bear the name of each ingredient in descending order of predominance …"  "Aloe Vera Gel" is a misleading and illusory term made up by

Defendants, and the use of that term in the list of ingredients is misleading and a violation of § 701.3(a).

135.    In addition, it is impossible that "Aloe Barbadensis Leaf Juice" or "Aloe Barbadensis (Aloe Vera) Leaf Juice" could be the predominant ingredient in any of the Products, since the finished Products contain none of the chemical markers of ordinary Aloe vera. The labeling is thus a violation of § 701.3(a).

136.    The FOTE, CVS, and Walmart Product labels also fail to disclose the presence of Propylene Glycol in those Products, and Walgreens' "Alcohol Free" Product label is similarly inaccurate and fails to disclose the presence of Isopropyl Alcohol.

137.    Further, 21 C.F.R. § 701.3(c)(2)(i)(b) requires that all Carbomer compounds in cosmetics be identified by their specific type, *e.g.*, Carbomer 934, 934P, 940, 941, 960, or 961. Defendants' labels violate this standard and merely list the ingredient "Carbomer."

138.    "Where a cosmetic product is also an over-the-counter drug product, the [label] shall declare the active drug ingredients as set forth in § 201.66(c)(2) and (d) of this chapter, and the [label] shall declare the cosmetic ingredients as set forth in § 201.66(c)(8) and (d) of this chapter." Defendants' labels list no "active ingredient" in violation of 21 C.F.R. § 701.3(d) and 21 C.F.R. § 201.66(b)(2), and the purported proportion of the primary ingredient to the other ingredients in the Products – *i.e.*, "100%" – is false and fails to comply with 21 C.F.R. § 201.66(c)(2).

139.    The introduction of misbranded cosmetics and/or drugs into interstate commerce is prohibited under the FDCA and the Federal Trade Commission ("FTC") Act, 15 U.S.C. §§ 45(a) and 52, and constitutes a separate and, in many cases, a specifically actionable violation of state consumer protection laws.

140.     Defendants' deceptive statements also violate 21 U.S.C.S. § 362(a), which deems a cosmetic product misbranded when the label contains a statement that is "false or misleading in any particular."

141.     Plaintiffs and Class members would not have purchased or used the Products had they known the truth about the Products or Defendants' scheme to sell the Products as misbranded cosmetics and drugs.

142.     Defendants were required to comply with each and every law, regulation, and obligation applicable to the Products.  This includes the Retailer Defendants, even if FOTE supplied them with Aloe Products, because their obligations as private labelers were independent and non-delegable.

143.     As supplier of the Products to the Retailer Defendants, FOTE may have had additional obligations in addition to those applicable to Retailer Defendants, such as maintaining an FDA-compliant manufacturing facility, compiling incident reports, and preserving batch production records.

## V.     CLASS ACTION ALLEGATIONS

144.     Plaintiffs bring this action individually and as representatives of all similarly situated consumers, pursuant to Federal Rule of Civil Procedure 23, on behalf of the below-defined Product Classes:

> **FOTE Product Class** (*represented by Plaintiffs Ivy (CA), James (CA), Reeves (CA), Cartnick (FL), A. Groffsky (IL & MI), E. Groffsky (MI), Wimberley (MO), Dallacqua (NY), Phillips (NC), Jessop (OH), Norsworthy (OH), Osley (OH), Draus (OR), Ramon (TX), Beardsall (TX), and Robertson (TX)*):  **All individuals who purchased Fruit of the Earth, Inc.'s Aloe Vera 100% Gel in California, Florida, Illinois, Michigan, Ohio, Oregon, New York, North Carolina, Missouri, or Texas** during the applicable statute of limitations periods.[24]

---

[24] The applicable statutes of limitations for Plaintiffs' consumer protection claims are as follows: California CLRA and FAL (3 years); California UCL (4 years); Florida (4 years); Illinois (3 years);

**CVS Product Class** *(represented by Plaintiffs Dean (CA), Czapski (FL & MI), Carlsson (FL & IL), Brown (MO), Doucette (NH), Mellody (NJ), and Ostrander (NY))*:  **All individuals who purchased CVS's Aftersun Aloe Vera or CVS's 100% Pure Aloe Vera Gel in California, Florida, Illinois, Michigan, Missouri, New Hampshire, New Jersey, or New York** during the applicable statute of limitations periods.

**Target Product Class** *(represented by Plaintiff Nazari (CA))*:  **All individuals who purchased Target's Up & Up Aloe Vera Gel with Pure Aloe Vera in California** during the applicable statute of limitations periods.

**Walgreens Product Class** *(represented by Plaintiffs Wang (CA), Gordon (FL), Waitzman (IL), and Judge (NY))*:  **All individuals who purchased Walgreens' Well-at-Walgreens Alcohol Free Aloe Vera Body Gel or Replenishing Aloe Vera Body Gel in California, Florida, Illinois, or New York** during the applicable statute of limitations periods.

**Walmart Product Class** *(represented by Plaintiff Connor-Slaybaugh (IL))*:  **All individuals who purchased Walmart's Equate Soothing Aloe After Sun Gel with Pure Aloe in Illinois** during the applicable statute of limitations periods.

Excluded from the above-defined Classes are Defendants and their affiliates, parents, subsidiaries, employees, officers, agents, and directors; any judicial officers presiding over this matter and the members of their immediate families and judicial staffs; and any person who purchased the Products for resale.

145.    In the event discovery or further proceedings like MDL consolidation significantly expand this case, Plaintiffs reserve the right to move for certification of individual product/state/defendant subclasses as may be appropriate.

---

Michigan (6 years); Missouri (5 years); New Hampshire (3 years); New Jersey (6 years); New York (3 years); North Carolina (4 years); Ohio (2 years); Oregon (1 year); and Texas (2 years).  The applicable Class periods extend back from the filing of the initial complaint in this action on June 10, 2016.

146.     Certification of Plaintiffs' claims for class-wide treatment is appropriate because Plaintiffs can prove the elements of their claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

147.     **Numerosity – Federal Rule of Civil Procedure 23(a)(1).** The members of the Classes are so numerous that their individual joinder herein is impracticable. On information and belief, Class members number in the tens of thousands to millions.  The precise number of Class members and their addresses are presently unknown to Plaintiffs, but may be reasonably ascertained, for example, from Defendant's books and records, frequent purchaser or rewards numbers, or other approved methods.  Similarly, Class members may be notified of the pendency of this action by mail, email, Internet postings, and/or publication.

148.     **Commonality and Predominance – Federal Rule of Civil Procedure 23(a)(2) and 23(b)(3).**   The common questions of law and fact existing as to all Class members predominate over questions affecting only individual Class members.  Such common questions of law or fact include:

a.     The true nature and extent of Aloe vera and/or Acemannan in the Products, if any;

b.     Defendants' knowledge of the contents of their Products, including whether Defendants conducted finished product testing or were reasonably justified in not performing such testing;

c.     Consumers' reasonable, objective understandings of Defendants' Products and of Aloe vera in general;

d.     The obligations Defendants were required to fulfill relative to advertising, packaging, labeling, marketing, and selling their Products;

e.     Whether the marketing, advertising, packaging, labeling, and other promotional materials for the Products are false, deceptive, or materiality misleading;

f.     Whether Defendants' actions, or inactions, violated the state consumer fraud statutes invoked below;

g.      Whether Defendants are liable for damages, and if so, the amounts of such damages; and

h.      Whether Plaintiffs and the Class members are entitled to any other remedy or relief.

149.     Defendants engaged in a common course of conduct giving rise to the legal rights sought to be enforced by Plaintiffs, on behalf of themselves and the other Class members. Similar or identical violations, business practices, and injuries are involved, and consumer products – especially those involving the product's labeling – involve uniform, objective questions of law and fact, both for the prosecution and for the defense. Individual questions, if any, pale by comparison, in both quality and quantity, to the numerous common questions that predominate in this action.

150.     **Choice-of-Law and Manageability – Federal Rule of Civil Procedure 23(b)(3)**.  Numerous Circuit Courts have recently affirmed class certifications involving multistate claims under the exact consumer fraud statutes at issue here.  *See specifically Pella Corp. v. Saltzman*, 606 F.3d 391 (7th Cir. 2010) (affirming multistate class certification and "explicitly finding that the consumer protection acts of [California, Florida, Illinois, Michigan, New Jersey and New York] have nearly identical elements"); *Mullins v. Direct Digital*, 795 F.3d 654 (7th Cir. 2015) (affirming multistate class certification under 10 state's consumer protection laws, including: California, Florida, Illinois, Massachusetts, Michigan, Minnesota, Missouri, New Jersey, New York, and Washington); *Rikos v. Procter & Gamble*, 799 F.3d 497 (6th Cir. 2015) (same for California, both UCL and CLRA, Illinois, Florida, New Hampshire, and North Carolina consumer protection laws); and *Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121 (9th Cir. 2017) (same for California, Colorado, Florida, Illinois, Indiana, Nebraska, New York, Ohio, Oregon, South Dakota, and Texas).  As these Circuit Court decisions have already determined, the elements of the above-listed states' consumer protection laws are fundamentally identical

(except for the available statutory penalties and relevant statutes of limitations). Accordingly, litigating these claims together as a class action is both appropriate and manageable.

151. **Typicality – Federal Rule of Civil Procedure 23(a)(3).** Plaintiffs' claims are typical of the claims of the other members of the Classes because, among other things, all Class members were comparably injured through Defendants' uniform misconduct described above. Further, there are no defenses available to Defendants that are unique to individual Plaintiffs.

152. **Adequacy of Representation – Federal Rule of Civil Procedure 23(a)(4).** Plaintiffs are adequate Class representatives because their interests do not conflict with the interests of the other Class members they seek to represent, they have retained counsel competent and experienced in complex class action litigation, and they will prosecute this action vigorously. The Classes' interests will be fairly and adequately protected by Plaintiffs and their counsel, who are experienced class action lawyers.

153. **Superiority – Federal Rule of Civil Procedure 23(b)(3).** A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The damages suffered by each of the Plaintiffs and the other members of the Classes are relatively small compared to the burden and expense that would be required to individually litigate their claims against Defendants, so it would be impracticable for Class members to individually seek redress for Defendants' wrongful conduct. Even if Class members could afford individual litigation, the court system could not. Individualized litigation would create a potential for inconsistent or contradictory judgments and increase the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties

and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

154.    **Particular Issues – Federal Rule of Civil Procedure 23(c)(4).**   In the event unforeseen issues preclude class certification under Fed.R.Civ.P. 23(b)(3), the case is still appropriate for class certification under Fed.R.Civ.P. 23(c)(4), as to the particular issue of liability.   Whether Defendants' Products contain Aloe and whether Defendants' labels are materially misleading to a reasonable consumer are common questions that can be proven with common evidence for the benefit of all purchasers everywhere.

## VI.    CLAIMS ALLEGED

### COUNT I

**Violation of the California Consumer Legal Remedies Act
Cal. Civ. Code §§ 1750, *et seq.* ("CLRA")
*(against Defendants FOTE, CVS, Target & Walgreens)***

155.    Plaintiffs incorporate Paragraphs 1-154 as if fully set forth herein.

156.    Plaintiffs Dean, Ivy, James, Nazari, Reeves, and Wang (for the purpose of this Count, "Plaintiffs") bring this Count on behalf of themselves and all other California consumers of the Products for the fullest period allowed by law.

157.    Plaintiffs and the members of FOTE, CVS, Target & Walgreens Product Classes have standing to pursue a cause of action for violation of the Consumer Legal Remedies Act because Plaintiffs and members of those Classes suffered an injury-in-fact and lost money as a result of Defendants' actions as set forth herein.

158.    Plaintiffs and the members of the FOTE, CVS, Target & Walgreens Product Classes are each a "Consumer" as that term is defined by Cal. Civ. Code § 1761(d).

159. The Products are each a "Good" as that term is defined by Cal. Civ. Code § 1761(a).

160. Defendants are each a "Person" as defined by Cal. Civ. Code § 1761(c).

161. The purchase(s) involved here are "Transaction(s)" as defined by Cal. Civ. Code § 1761(e).

162. Plaintiffs and members of the FOTE, CVS, Target & Walgreens Product Classes are consumers who purchased the Products for personal use within the applicable statute of limitations period.

163. Plaintiffs and members of the FOTE, CVS, Target & Walgreens Product Classes purchased the Products in reasonable reliance on Defendants' Product labels and label representations.

164. Defendants have used deceptive representations with respect to the Products in violation of Cal. Civ. Code § 1770(a)(4).

165. Defendants have misrepresented the characteristics and/or ingredients of the Products in violation of Cal. Civ. Code § 1770(a)(5).

166. Defendants have misrepresented the standard, quality, or grade of the Product in violation of Cal. Civ. Code § 1770(a)(7).

167. Defendants knew or should have known that their representations of fact concerning the Products were material and likely to mislead consumers.

168. Defendants failure to disclose material facts about the Aloe and Aloe-related ingredients in their Products, including inadequate disclosures about the type and amount of Aloe contained in their Products is an actionable omission.

169. Defendants' practices, acts, and course of conduct in marketing and selling the

Products are likely to mislead a reasonable consumer acting reasonably under the circumstances to his or her detriment. Like Plaintiffs, members of the FOTE, CVS, Target & Walgreens Product Classes would not have purchased the Products had they known the Products contained no detectible levels of ordinary Aloe vera or any of Aloe's healing or restorative elements.

170.    Plaintiffs and members of the FOTE, CVS, Target & Walgreens Product Classes have been directly and proximately damaged by Defendants' actions.

171.    Before filing this Second Amended Complaint, Plaintiffs' Counsel provided written notice to Defendants compliant with the intent and purpose of Civil Code § 1782(a). Defendants did not respond or cure within the time provided. Consequently, Plaintiffs seek all available damages and relief to which they are entitled under the Consumer Legal Remedies Act, including: (a) monetary relief against Defendants measured as the greater of actual damages in an amount to be determined at trial or statutory damages in the amount of $1,000 for each member of the FOTE, CVS, Target & Walgreens Product Classes; and (b) restitution, punitive damages, interest, and reasonable attorneys' fees and costs.

## COUNT II

**Violation of the California False Advertising Law**
**Cal. Bus. & Prof. Code §§ 17500,** *et seq.* **("FAL")**
*(against Defendants FOTE, CVS, Target & Walgreens)*

172.    Plaintiffs incorporate Paragraphs 1-154 as if fully set forth herein.

173.    Plaintiffs Dean, Ivy, James, Nazari, Reeves and Wang (for the purpose of this Count, "Plaintiffs") bring this Count on behalf of themselves and the members of the FOTE, CVS, Target & Walgreens Product Classes against the Defendants.

174.    Plaintiffs and the members of the FOTE, CVS, Target & Walgreens Product Classes have standing to pursue a cause of action for false advertising under Cal. Bus. & Prof.

53

Code §§ 17500, *et seq.*, because Plaintiffs and members of the FOTE, CVS, Target & Walgreens Product Classes have suffered an injury-in-fact and lost money as a result of Defendants' actions as set forth herein.

175.    Defendants advertised, marketed, and otherwise disseminated information to the public through advertising media including the labels on Defendants' Products to the effect that the Products contain Aloe vera and the healing and restorative elements of Aloe.

176.    Defendants' statements were and are false.

177.    Defendants know and knew that these statements were false, or they could have discovered their falsity with the exercise of reasonable diligence.

178.    Defendants' false statements were part of a scheme or plan to sell the Products to the public without disclosing that the Products contained no detectible levels of Aloe vera or any of Aloe's healing and restorative elements.

179.    Plaintiffs and members of the FOTE, CVS, Target & Walgreens Product Classes relied on Defendants' Product labeling that falsely claimed the Products contain Aloe.

180.    Defendants' actions violate Cal. Bus. & Prof. Code §§ 17500, *et seq*.

181.    As a direct and proximate result of Defendants' actions, as set forth herein, Defendants have received ill-gotten gains and/or profits, including but not limited to money from Plaintiffs and members of the FOTE, CVS, Target & Walgreens Product Classes who paid for the Products.

182.    Plaintiffs and members of the FOTE, CVS, Target & Walgreens Product Classes seek rescission and disgorgement of Defendants' ill-gotten gains as provided for by Cal. Bus. & Prof. Code § 17535.

## COUNT III

**Violation of the California Unfair Competition Act**
**Cal. Bus. & Prof. Code §§ 17200,** *et seq.* **("UCL")**
*(against Defendants FOTE, CVS, Target & Walgreens)*

183.     Plaintiffs incorporate Paragraphs 1-154 as if fully set forth herein.

184.     Plaintiffs Dean, Ivy, James, Nazari, Reeves and Wang (for the purpose of this Count, "Plaintiffs") bring this Count on behalf of themselves and members of the FOTE, CVS, Target & Walgreens Product Classes against the Defendants.

185.     Plaintiffs and the members of the FOTE, CVS, Target & Walgreens Product Classes have standing to pursue a cause of action for false advertising under Cal. Bus. & Prof. Code §§ 17200, *et seq.* because Plaintiffs and members of the FOTE, CVS, Target & Walgreens Product Classes have suffered an injury-in-fact and lost money as a result of Defendants' actions as set forth herein.

186.     Defendants' actions as described herein constitute unfair competition within the meaning of Cal. Bus. & Prof. Code § 17200, in that Defendants have engaged in unlawful, unfair, or fraudulent business practices by violating the federal FDCA, the FTC Act, California's Sherman Food Drug & Cosmetic Act, and California's Consumer Legal Remedies Act.

187.     Defendants' actions as described herein constitute unfair competition within the meaning of Cal. Bus. & Prof. Code § 17200, on the additional grounds that Defendants have failed to properly label the Products in accordance with 21 C.F.R. §§ 701, *et seq.*

188.     Defendants' actions also constitute unfair competition within the meaning of Cal. Bus. & Prof. Code § 17200, in that Defendants have made unfair, deceptive, untrue or misleading statements in advertising mediums, including their Product labels, in violation of Cal. Bus. & Prof. Code § 17500.

189.    Defendants' actions have caused economic injury to Plaintiffs and members of the FOTE, CVS, Target & Walgreens Product Classes. Plaintiffs and members of the FOTE, CVS, Target & Walgreens Product Classes would not have purchased or used the Products had they known the Products contained no detectible levels of Aloe vera or any of Aloe's healing and restorative elements.

190.    Plaintiffs and members of the FOTE, CVS, Target & Walgreens Product Classes seek rescission and an order requiring Defendants to make full restitution and disgorgement of their ill-gotten gains of all money wrongfully obtained from Plaintiffs and members of the FOTE, CVS, Target & Walgreens Product Classes as permitted by Cal. Bus. & Prof. Code § 17203.

## COUNT IV

**Violation of the Florida Deceptive and Unfair Trade Practices Act**
**Fla. Stat. §§ 501.201, *et seq.* ("FDUTPA")**
**(*against Defendants CVS, FOTE, and Walgreens*)**

191.    Plaintiffs incorporate Paragraphs 1-154 as if fully set forth herein.

192.    Plaintiffs Carlsson, Cartnick, Czapski, Gordon, E. and Groffsky (for the purpose of this Count, "Plaintiffs") bring this Count on behalf of themselves and members of the CVS, FOTE, and Walgreens Product Classes against the Defendants.

193.    Plaintiffs and the members of the CVS, FOTE, and Walgreens Product Classes have standing to pursue a cause of action for violation of the Florida Deceptive Business Practices Act (the "FDUTPA"), Fla. Stat. §§ 501.201, *et seq.*, because Plaintiffs and members of the CVS, FOTE, and Walgreens Product Classes have suffered an injury-in-fact and lost money as a result of Defendants' actions as set forth herein.

194.    This Count is brought on behalf of Plaintiffs and members of the CVS, FOTE,

and Walgreens Product Classes to secure redress for the unlawful, deceptive and unfair trade practices perpetrated by Defendants.

195. Plaintiffs and members of the CVS, FOTE, and Walgreens Product Classes are "consumers" and the transactions at issue in this complaint constitute "trade or commerce" as defined by Florida Statutes § 501.203 (7) and (8) respectively.

196. The FDUTPA was enacted to protect the consuming public and legitimate business enterprises from those who engage in unfair methods of competition, or unconscionable, deceptive or unfair acts or practices in the conduct of any trade or commerce. Defendants participated in unfair and deceptive trade practices that violated the FUDTPA as described herein.

197. Defendants' actions, as alleged herein, constitute affirmative acts or representations including: unconscionable commercial practices; deception; fraud; false pretense; false promise; and/or misrepresentation, and therefore are unlawful under the FDUTPA.

198. When a FDUPTA claim is based on an affirmative act or representation, neither intent to deceive by Defendant nor actual reliance by Plaintiffs or members of the CVS, FOTE, and Walgreens Product Classes need be shown.

199. Defendants' actions, as alleged herein, constitute misrepresentations and knowing omissions and therefore are unlawful under the FDUTPA.

200. Defendants intended that Plaintiffs and members of the CVS, FOTE, and Walgreens Product Classes would rely upon their deceptive conduct, and a reasonable person would in fact be misled by this deceptive conduct.

201. Plaintiffs and members of the CVS, FOTE, and Walgreens Product Classes reasonably and justifiably relied on Defendants' deceptive, unfair, fraudulent,

misrepresentations, as alleged herein. Plaintiff and members of the CVS, FOTE, and Walgreens Product Classes and the public were certain to be deceived because Defendants knowingly failed to disclose the characteristics, ingredients, standards and quality of the Products.

202.    Plaintiff and the members of the CVS, FOTE, and Walgreens Product Classes would not have purchased the Products had they known the Products contained no detectible levels of ordinary Aloe vera or any of Aloe's healing and restorative elements.

203.    By continuing to make false and unsubstantiated representations concerning the Products, Defendants are engaging in business practices that are misleading and/or likely to mislead consumers. Such business practices are unconscionable, unfair, and deceptive acts or practices in violation of the FDUPTA.

204.    As a direct and proximate result of Defendants' unlawful acts and omissions, Plaintiffs and members of CVS, FOTE, and Walgreens Product Classes have suffered an ascertainable loss of money or property, real or personal, in that they would not have purchased the Products but for Defendants' material omissions and affirmative acts or representations in connection with the marketing, advertising, and sale of the Products.

205.     As a result of the Defendants' use or employment of unfair or deceptive acts or business practices, Plaintiffs and members of the CVS, FOTE, and Walgreens Product Classes have sustained damages in an amount to be proven at trial.

206.    Plaintiffs and members of the CVS, FOTE, and Walgreens Product Classes are entitled to compensatory damages, equitable, and declaratory relief, costs, and reasonable attorney's fees.

## COUNT V

**Violation of the Illinois Consumer Fraud and Deceptive Practices Act**
**815 ILCS 505/1,** *et seq.* **("IFCA")**
*(against Defendants FOTE, CVS, Walgreens, and Walmart)*

207.     Plaintiffs incorporate Paragraphs 1-154 as if fully set forth herein.

208.     Plaintiffs Carlsson, Connor-Slaybaugh, A. Groffsky, and Waitzman (for the purpose of this Count, "Plaintiffs") bring this Count on behalf of themselves and members of the FOTE, CVS, Walgreens, and Walmart Product Classes against the Defendants.

209.     Plaintiffs and members of the FOTE, CVS, Walgreens, and Walmart Product Classes have standing to pursue a cause of action for violation of the Illinois Consumer Fraud and Deceptive Business Practices Act (the "ICFA"), 815 ILCS 505/1, *et seq.*, because Plaintiffs and members of the FOTE, CVS, Walgreens, and Walmart Product Classes have suffered an injury-in-fact and lost money as a result of Defendants' actions as set forth herein.

210.     The ICFA prohibits the use of unfair or deceptive business practices in the conduct of trade or commerce. The ICFA is to be liberally construed to effectuate its purpose.

211.     The ICFA expressly provides:

§ 2. unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact, or the use or employment of any practice described in Section 2 of the "Uniform Deceptive Trade Practices Act", approved August 5, 1965, in the conduct of any trade or commerce are hereby declared unlawful whether any person has in fact been misled, deceived or damaged thereby.

815 ILCS 505/2.

212.     Illinois has expressly adopted the federal food labeling requirements as its own: "[a] federal regulation automatically adopted pursuant to this Act takes effect in this State on the

date it becomes effective as a Federal regulation." 410 ILCS 620/21. Thus, a violation of federal food, drug and cosmetic labeling laws is an independent violation of Illinois law and actionable as such.

213.    Pursuant to 410 ILCS 620/19, which mirrors 21 U.S.C. § 362(a), "[a] cosmetic is misbranded – (a) If its labeling is false or misleading in any particular."

214.    Defendants intended that Plaintiffs and members of the FOTE, CVS, Walgreens, and Walmart Product Classes would rely upon their deceptive conduct, and a reasonable person would in fact be misled by this deceptive conduct.

215.    Defendants knew or should have known that their representations of fact concerning the Products are material and likely to mislead consumers.

216.    Defendants' practices, acts, and course of conduct in marketing and selling the Products are likely to mislead a reasonable consumer acting reasonably under the circumstances to his or her detriment. Like Plaintiffs, members of the FOTE, CVS, Walgreens, and Walmart Product Classes would not have purchased or used the Products had they known the Products contained no detectible levels of ordinary Aloe vera or any of Aloe's healing or restorative elements.

217.    Plaintiffs and members of the FOTE, CVS, Walgreens, and Walmart Product Classes have been directly and proximately damaged by Defendants' actions.

218.    As a result of the Defendants' use or employment of unfair or deceptive acts or business practices, Plaintiffs and members of the FOTE, CVS, Walgreens, and Walmart Product Classes have sustained damages in an amount to be proven at trial.

219.    In addition, Defendants' conduct showed malice, motive, and reckless disregard of the truth, such that an award of punitive damages is appropriate.

## COUNT VI

**Violation of the Michigan Consumer Protection Act
Mich. Comp. Laws §§ 445.901 *et seq.* ("MCPA")
*(against Defendants FOTE and CVS)***

220.    Plaintiffs incorporate Paragraphs 1-154 as if fully set forth herein.

221.    Plaintiffs Czapski, A. Groffsky, and E. Groffsky (for the purpose of this Count, "Plaintiffs") bring this Count on behalf of themselves and members of the FOTE and CVS Product Classes against the Defendants.

222.    Plaintiffs and members of the FOTE and CVS Product Classes have standing to pursue a cause of action for violation of the Michigan Consumer Protection Act (the "MCPA"), Mich. Comp. Laws §§ 445.901, *et seq.*, because Plaintiffs and members of the FOTE and CVS Product Classes have suffered an injury-in-fact and lost money as a result of Defendants' actions as set forth herein.

223.    Plaintiffs and members of the FOTE and CVS Product Classes are "person[s]" within the meaning of the MCPA.

224.    At all relevant times, Defendants were each a "person" engaged in "trade or commerce" within the meaning of the MCPA.

225.    Plaintiffs and members of the FOTE and CVS Product Classes acted as consumers, purchasing the Products for personal, family or household purposes.

226.    Each of the Products qualifies as a "good," or "merchandise" under the MCPA, and each purchase of the Products by a member of the FOTE and CVS Product Classes constitutes a "transaction."

227.    The MCPA prohibits "[u]nfair, unconscionable, or deceptive methods, acts, or practices in the conduct of trade or commerce ...."    Defendants engaged in unfair,

unconscionable, or deceptive methods, acts or practices prohibited by the MCPA.

228.    Defendants, in connection with the sale of the Products, engaged in deceptive, unconscionable, unfair, fraudulent and misleading commercial practices.

229.    Defendants concealed, suppressed, or omitted material facts with the intent that Plaintiffs and members of the FOTE and CVS Product Classes rely upon such concealment, suppression or omissions. Defendants' objectively deceptive conduct had the capacity to deceive reasonable consumers under the circumstances.

230.    Defendants' practices, acts, and course of conduct in marketing and selling the Products are likely to mislead a reasonable consumer acting reasonably under the circumstances to his or her detriment. Like Plaintiffs, members of the FOTE and CVS Product Classes would not have purchased the Products had they known the Products contained no detectible levels of ordinary Aloe vera or any of Aloe's healing or restorative elements.

231.    Defendants' general course of conduct impacted the public because the acts were part of a generalized course of conduct affecting numerous consumers.

232.    Defendants' conduct, which included deception, fraud, false pretenses, false promises, misrepresentations, and the knowing concealment, suppression, or omission of material facts caused the resulted injury in fact and an actual loss of money or property to Plaintiffs and members of the FOTE and CVS Product Classes.  The resulting injury to Plaintiffs and members of the FOTE and CVS Product Classes was reasonably foreseeable by Defendants.

233.    Based on Defendants' acts stated herein, Defendants are in violation of the MCPA. Defendants violated the MCPA by, at minimum, employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression or omission of material facts with intent that others rely upon such concealment, suppression or omission, in connection with

the sale of the Products.

234.    Plaintiffs, on behalf of themselves and members of the FOTE and CVS Product Classes, seek monetary relief against Defendants for actual damages and rescission in an amount to be determined at trial; reasonable attorneys' fees; and any other just and proper relief available under the MCPA.

## COUNT VII

### Violation of the Missouri Merchandising Practices Act
### Mo. Rev. Stat. 010, *et seq.* ("MMPA")
### *(against Defendants FOTE and CVS)*

235.    Plaintiffs incorporate Paragraphs 1-154 as if fully set forth herein.

236.    Plaintiffs Brown and Wimberly (for the purpose of this Count, "Plaintiffs") bring this Count on behalf of themselves and members of the FOTE and CVS Product Classes against the Defendants.

237.    Plaintiffs and the members of the FOTE and CVS Product Classes have standing to pursue a cause of action for violation of the Missouri Merchandising Practices Act (the "MMPA"), Mo. Rev. Stat. 010, *et seq.*, because Plaintiffs and members of the FOTE and CVS Product Classes have suffered an injury-in-fact and lost money as a result of Defendants' actions as set forth herein.

238.    This Count is brought on behalf of Plaintiffs and members of the FOTE and CVS Product Classes to secure redress for the unlawful, deceptive and unfair trade practices perpetrated by Defendants.

239.    Defendants, Plaintiffs and members of the FOTE and CVS Product Classes are "persons" within the meaning of the MMPA.

240.    Defendants engaged in "trade" or "commerce" in the State of Missouri within the

63

meaning of the MMPA.

241.    The MMPA was enacted to protect the consuming public and legitimate business enterprises from those who engage in unfair methods of competition, or unconscionable, deceptive or unfair acts or practices in the conduct of any trade or commerce.

242.    The MMPA makes unlawful the "act, use or employment by any person of any deception, fraud, false pretense, misrepresentation, unfair practice, or the concealment, suppression, or omission of any material fact in connection with the sale or advertisement of any merchandise."

243.    In the course of its sale of the Products, Defendants engaged in misleading, false, unfair or deceptive acts or practices that violated the MMPA.

244.    Plaintiffs and members of the FOTE and CVS Product Classes are consumers who purchased the Products for personal use within the applicable statute of limitations period.

245.    Plaintiffs and members of the FOTE and CVS Product Classes purchased the Products in reliance on Defendants' labeling and other marketing claims.

246.    Defendants knew or should have known that their representations of fact concerning the Products are material and likely to mislead consumers.

247.    Defendants intended that Plaintiffs and members of the FOTE and CVS Product Classes would rely upon their deceptive conduct, and a reasonable person would in fact be misled by this deceptive conduct.

248.    Defendants' practices, acts, and course of conduct in marketing and selling the Products are likely to mislead a reasonable consumer acting reasonably under the circumstances to his or her detriment. Like Plaintiffs, members of the FOTE and CVS Product Classes would not have purchased the Products had they known the Products contained no detectible levels of

ordinary Aloe vera or any of Aloe's healing or restorative elements.

249.  Defendants' actions, as alleged herein, constitute affirmative acts or representations including: unconscionable commercial practices; deception; fraud; false pretense; false promise; and/or misrepresentation, and therefore are unlawful under the MMPA.

250.  By continuing to make false and unsubstantiated representations concerning the Products, Defendants are engaging in business practices that are misleading and/or likely to mislead consumers. Such business practices are unconscionable, unfair, and deceptive acts or practices in violation of the MMPA.

251.  As a direct and proximate result of Defendants' unlawful acts and omissions, Plaintiffs and members of the FOTE and CVS Product Classes have suffered an ascertainable loss of money or property, real or personal, in that they would not have purchased the Products but for Defendants' material omissions and affirmative acts or representations in connection with the marketing, advertising, and sale of the Products.

252.  As a result of the Defendants' use or employment of unfair or deceptive acts or business practices, Plaintiffs and members of the FOTE and CVS Product Classes have sustained damages in an amount to be proven at trial.

253.  Plaintiffs and members of the FOTE and CVS Product Classes are entitled to compensatory damages, punitive damages, equitable and declaratory relief, costs, reasonable attorney's fees, and any other just and proper relief under the MMPA.

## COUNT VIII

### Violation of New Hampshire Regulation of Business Practices
### For Consumer Protection, N.H. Rev. Stat. §§ 358-A:1, *et seq*. ("NHCPA")
### (*against Defendant CVS*)

254.  Plaintiffs incorporate Paragraphs 1-154 as if fully set forth herein.

255.    Plaintiff Doucette (for the purpose of this Count, "Plaintiff") brings this Count on behalf of herself and members of the CVS Product Class against the Defendant.

256.    Plaintiff and members of the CVS Product Class have standing to pursue a cause of action for violation of the New Hampshire Regulation of Business Practices for Consumer Protection (the "NHCPA"), N.H. Rev. Stat. §§ 358-A:1, *et seq.*, because Plaintiff and members of the CVS Product Class have suffered an injury-in-fact and lost money as a result of Defendant's actions as set forth herein.

257.    This Count is brought on behalf of Plaintiff and members of the CVS Product Class to secure redress for the unlawful, deceptive and unfair trade practices perpetrated by Defendant.

258.    Plaintiff, members of the CVS Product Class, and Defendant are "persons" under the NHCPA.

259.    Defendant's actions as set forth herein occurred in the conduct of trade or commerce as defined under the NHCPA.

260.    The NHCPA was enacted to protect the consuming public and legitimate business enterprises from those who engage in unfair methods of competition, or unconscionable, deceptive or unfair acts or practices in the conduct of any trade or commerce.

261.    The NHCPA prohibits a person, in the conduct of any trade or commerce, from using "any unfair or deceptive act or practice," including "but … not limited to, the following: … (V) Representing that goods or services have … characteristics, … uses, benefits, or quantities that they do not have;" "(VII) Representing that goods or services are of a particular standard, quality, or grade, … if they are of another;" and "(IX) Advertising goods or services with intent not to sell them as advertised."

262.    Plaintiff and members of the CVS Product Class are consumers who purchased the Products for personal use within the applicable statute of limitations period.

263.    Plaintiff and members of the CVS Product Class purchased the Products in reliance on Defendant's labeling claims.

264.    Defendant knew or should have known that their representations of fact concerning the Products are material and likely to mislead consumers.

265.    In the course of their business, Defendant made material misrepresentations, and also concealed and suppressed material facts concerning the Products.

266.    Defendant intended that Plaintiff and members of the CVS Product Class would rely upon their deceptive conduct, and a reasonable person would in fact be misled by this deceptive conduct.

267.    Defendant's practices, acts, and course of conduct in marketing and selling the Products are likely to mislead a reasonable consumer acting reasonably under the circumstances to his or her detriment. Like Plaintiff, members of the CVS Product Class would not have purchased the Products had they known the Products contained no detectible levels of ordinary Aloe vera or any of Aloe's healing and restorative elements.

268.    Defendant's actions, as alleged herein, constitute affirmative acts or representations including: unconscionable commercial practices; deception; fraud; false pretense; false promise; and/or misrepresentation, and therefore are unlawful under the NHCPA.

269.    By continuing to make false and unsubstantiated representations concerning the Products, Defendant is engaging in business practices that are misleading and/or likely to mislead consumers. Such business practices are unconscionable, unfair, and deceptive acts or practices in violation of the NHCPA.

270.    Defendant thus violated the NHCPA by, at minimum: employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale of the Products.

271.    As a direct and proximate result of Defendant's unlawful acts and omissions, Plaintiff and members of the CVS Product Class have suffered an ascertainable loss of money or property, real or personal, in that they would not have purchased the Products but for Defendant's material omissions and affirmative acts or representations in connection with the marketing, advertising, and sale of the Products.

272.    As a result of the Defendant's use or employment of unfair or deceptive acts or business practices, Plaintiff and members of the CVS Product Class have sustained damages in an amount to be proven at trial.

273.    Because Defendant's willful conduct caused injury to members of the CVS Product Class through violations of the NHCPA, the New Hampshire Subclass seeks recovery of actual damages or $1,000, whichever is greater, treble damages, costs, and reasonable attorneys' fees, and any other just and proper relief under the NHCPA.

## COUNT IX

### Violation of the New Jersey Consumer Fraud Act
### N.J. Stat. §§ 56:8-1, *et seq.* ("NJCFA")
### *(against Defendant CVS)*

274.    Plaintiffs incorporate Paragraphs 1-154 as if fully set forth herein.

275.    Plaintiff Mellody (for the purpose of this Count, "Plaintiff") brings this Count on behalf of herself and members of the CVS Product Class against the Defendant.

276.    Plaintiff and members of the CVS Product Class have standing to pursue a cause

of action for violation of the New Jersey Consumer Fraud Act (the "NJCFA"), N.J. Stat. §§ 56:8-1, *et seq.*, because Plaintiff and members of the CVS Product Class suffered an injury-in-fact and lost money as a result of Defendant's actions as set forth herein.

277.    This Count is brought on behalf of Plaintiff and members of the CVS Product Class to secure redress for the unlawful, deceptive and unfair trade practices perpetrated by Defendant.

278.    Plaintiff, members of the CVS Product Class and Defendant are "persons" under the NJCFA.

279.    Defendant engaged in "sales" of "merchandise" within the meaning of the NJCFA. Defendant's actions as set forth herein occurred in the conduct of trade or commerce.

280.    The NJCFA was enacted to protect the consuming public and legitimate business enterprises from those who engage in unfair methods of competition, or unconscionable, deceptive or unfair acts or practices in the conduct of any trade or commerce.

281.    The NJCFA makes unlawful "[t]he act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing concealment, suppression, or omission of any material fact with the intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise or real estate, or with the subsequent performance of such person as aforesaid, whether or not any person has in fact been misled, deceived or damaged thereby…" N.J. Stat. § 56:8-2.

282.    Plaintiff and members of the CVS Product Class are consumers who purchased the Products for personal use within the applicable statute of limitations period.

283.    Plaintiff and members of the CVS Product Class purchased the Products in

reliance on Defendant's labeling and other marketing claims.

284.   Defendant knew or should have known that their representations of fact concerning the Products are material and likely to mislead consumers.

285.   Defendant intended that Plaintiffs and members of the CVS Product Class would rely upon their deceptive conduct, and a reasonable person would in fact be misled by this deceptive conduct.

286.   Defendant's practices, acts, and course of conduct in marketing and selling the Products are likely to mislead a reasonable consumer acting reasonably under the circumstances to his or her detriment. Like Plaintiffs, members of the CVS Product Class would not have purchased the Products had they known they contained no detectible levels of ordinary Aloe vera or any of Aloe's healing or restorative elements.

287.   Defendant's actions, as alleged herein, constitute affirmative acts or representations including: unconscionable commercial practices; deception; fraud; false pretense; false promise; and/or misrepresentation, and therefore are unlawful under the NJCFA.

288.   By continuing to make false and unsubstantiated representations concerning the Products, Defendant is engaging in business practices that are misleading and/or likely to mislead consumers. Such business practices are unconscionable, unfair, and deceptive acts or practices in violation of the NJCFA.

289.   As a direct and proximate result of Defendant's unlawful acts and omissions, Plaintiff and members of the CVS Product Class have suffered an ascertainable loss of money or property, real or personal, in that they would not have purchased the Product but for Defendants' material omissions and affirmative acts or representations in connection with the marketing, advertising, and sale of the Products.

290.    As a result of the Defendant's use or employment of unfair or deceptive acts or business practices, Plaintiff and members of the CVS Product Class have sustained ascertainable losses and damages in an amount to be proven at trial.

291.    Plaintiff and members of the CVS Product Class are entitled to compensatory damages, equitable and declaratory relief, costs, reasonable attorney's fees, and all other appropriate relief under the NJCFA.

### COUNT X

**Unfair and Deceptive Trade Practices ("NYDTPA")**
**In Violation of New York General Business Law §§ 349, *et seq.***
***(against Defendants FOTE, CVS, and Walgreens)***

292.    Plaintiffs incorporate Paragraphs 1-154 as if fully set forth herein.

293.    Plaintiffs Dallacqua, Judge, and Ostrander (for the purpose of this Count, "Plaintiffs") bring this Count on behalf of themselves and members of the FOTE, CVS, and Walgreens Product Classes against the Defendant.

294.    Plaintiffs and members of the FOTE, CVS, and Walgreens Product Classes have standing to pursue a cause of action for Unfair and Deceptive Trade Practices in Violation of New York General Business Law (the "NYDTPA"), N.Y. Gen. Bus. Law §§ 349, *et seq.*, because Plaintiffs and members of the FOTE, CVS, and Walgreens Product Classes have suffered an injury-in-fact and lost money as a result of Defendants' actions as set forth herein.

295.     This Count is brought on behalf of Plaintiffs and members of the FOTE, CVS, and Walgreens Product Classes to secure redress for the unlawful, deceptive, and unfair trade practices perpetrated by Defendants.

296.    Plaintiffs, members of the FOTE, CVS, and Walgreens Product Classes and Defendants are "persons" under the NYDTPA.

71

297.    Plaintiffs and members of the FOTE, CVS, and Walgreens Product Classes are consumers of the Products.

298.    As sellers of the Products to the consuming public and whose conduct affects similarly situated consumers and has a broad impact on consumers at large, Defendants are engaged in consumer-oriented conduct within the intended ambit of the NYDTPA.

299.    Defendants' actions and/or omissions as described herein violated the NYDTPA, which declares as unlawful "deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state."

300.    Specifically, Defendants knowingly misrepresented and intentionally omitted and concealed material information regarding the Products by failing to disclose to Plaintiffs and members of the FOTE, CVS, and Walgreens Product Classes the known defect in their Products, namely that the Products contained no detectible levels of Aloe vera or any of Aloe's healing or restorative elements.

301.    Furthermore, Defendants engaged in materially misleading and deceptive acts and practices by continuing to sell the Products to the consuming public while engaging in deceptive, unconscionable, unfair, fraudulent and misleading commercial practices. Defendants concealed, suppressed, or omitted material facts with the intent that Plaintiffs and members of the FOTE, CVS, and Walgreens Product Classes rely upon such concealment, suppression or omissions. Defendants' objectively deceptive conduct had the capacity to deceive reasonable consumers under the circumstances.

302.    Defendants' misrepresentations and concealment of material facts constitute unconscionable commercial practices, deception, fraud, false pretenses, misrepresentation, and/or the knowing concealment, suppression, or omission of material facts with the intent that

others rely on such concealment, suppression, or omission in connection with the sale and use of Defendants' Products in violation of the NYDTPA.

303.    Defendants' deceptive and misleading actions and omissions as set forth herein have caused and continue to cause injury to Plaintiffs and members of the FOTE, CVS, and Walgreens Product Classes.

304.    Defendants' practices, acts, and course of conduct in marketing and selling the Products are likely to mislead a reasonable consumer acting reasonably under the circumstances to his or her detriment. Like Plaintiffs, members of the FOTE, CVS, and Walgreens Product Classes would not have purchased the Products had they known they contained no detectible levels of ordinary Aloe vera.

305.    New York has enacted the NYDTPA to protect consumers from deceptive, fraudulent, and unconscionable trade and business practices such as those alleged in this Complaint.

306.    The NYDTPA makes unlawful "[d]eceptive acts or practices in the conduct of any business, trade or commerce." N.Y. Gen. Bus. Law § 349(a). Defendants' conduct, as set forth herein, constitutes deceptive acts or practices under the NYDTPA.

307.    As a direct and proximate result of Defendants' violations of NYDTPA, Plaintiffs and members of the FOTE, CVS, and Walgreens Product Classes have suffered and continue to suffer damages.

308.    Plaintiffs and members of the FOTE, CVS, and Walgreens Product Classes were deceived by Defendants' failure to disclose and could not discover the defect before suffering damages.

309.    As a result of the foregoing wrongful conduct of Defendants, Plaintiffs and

73

members of the FOTE, CVS, and Walgreens Product Classes have been damaged in an amount to be proven at trial, and seek all just and proper remedies, including but not limited to: actual damages or $50, whichever is greater; treble damages up to $1,000; punitive damages to the extent available under the law; reasonable attorneys' fees and costs; and all other just and appropriate relief available under the NYDTPA.

**COUNT XI**

**Violation of the North Carolina Unfair and Deceptive Trade Practices Act
N.C. Gen. Stat. §§ 75-1.1, *et seq*. ("NCDTPA")
*(against Defendant FOTE)***

310.     Plaintiffs incorporate Paragraphs 1-154 as if fully set forth herein.

311.     Plaintiff Phillips (for the purpose of this Count, "Plaintiff") brings this Count on behalf of themselves and members of the FOTE Product Class against the Defendants.

312.     Plaintiff and members of the FOTE Product Class have standing to pursue a cause of action for violation of the North Carolina Unfair and Deceptive Trade Practices Act, N.C. Gen. Stat. §§ 75-1.1, *et seq.* (the "NCDTPA") because Plaintiffs and members of the FOTE Product Class have suffered an injury-in-fact and lost money as a result of Defendant's actions as set forth herein.

313.     This Count is brought on behalf of Plaintiff and members of the FOTE Product Class to secure redress for the unlawful, deceptive and unfair trade practices perpetrated by Defendant.

314.     Plaintiff and members of the FOTE Product Class are "consumers" within the meaning of the NCDTPA.

315.     Plaintiff, members of the FOTE Product Class, and Defendant are "persons" within the meaning of the NCDTPA.

316.    The Products are "goods" within the meaning of the NCDTPA.

317.    Defendant was and is engaged in "trade or commerce" within the meaning of the NCDTPA.  Defendant's acts and practices complained of herein were performed in the course of Defendant's trade or business and thus occurred in or affected "commerce," as defined in the NCDTPA.

318.    The NCDTPA makes unlawful "[u]nfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce[.]" N.C. Gen. Stat. § 75-1.1. The NCDTPA provides a private right of action for any person injured "by reason of any act or thing done by any other person, firm or corporation in violation of" the NCDTPA. N.C. Gen. Stat. § 75-16.

319.    Plaintiff and members of the FOTE Product Class are consumers who purchased the Products for personal use within the applicable statute of limitations period.

320.    Plaintiff and members of the FOTE Product Class purchased the Products in reliance on Defendant's labeling and other marketing claims.

321.    In the course of their business, Defendant concealed and suppressed material facts concerning the Products.

322.    Defendant knew or should have known that its representations of fact concerning the Products are material and likely to mislead consumers.

323.    Defendant intended that Plaintiff and members of the FOTE Product Class would rely upon their deceptive conduct, and a reasonable person would in fact be misled by this deceptive conduct.

324.    Defendant's practices, acts, and course of conduct in marketing and selling the Products are likely to mislead a reasonable consumer acting reasonably under the circumstances

75

to his or her detriment. Like Plaintiff, members of the FOTE Product Class would not have purchased the Products had they known the Products contained no detectible levels of ordinary Aloe vera or any of Aloe's healing or restorative elements.

325.    Defendant's actions, as alleged herein, constitute affirmative acts or representations including: unconscionable commercial practices; deception; fraud; false pretense; false promise; and/or misrepresentation, and therefore are unlawful under the NCDTPA.

326.    Defendant had an ongoing duty to all customers to refrain from unfair and deceptive practices under the NCDTPA. Defendant's violations present a continuing risk to Plaintiff, members of the FOTE Product Class as well as to the general public. Defendant's unlawful acts and practices complained of herein affect the public interest.

327.    By continuing to make false and unsubstantiated representations concerning the Products, Defendant is engaging in business practices that are misleading and/or likely to mislead consumers. Such business practices are unconscionable, unfair, and deceptive acts or practices in violation of the NCDTPA.

328.    As a direct and proximate result of Defendant's unlawful acts and omissions, Plaintiff and members of the FOTE Product Class have suffered an ascertainable loss of money or property, real or personal, in that they would not have purchased the Products but for Defendant's material omissions and affirmative acts or representations in connection with the marketing, advertising, and sale of the Products.

329.    As a result of the Defendant's use or employment of unfair or deceptive acts or business practices, Plaintiff and members of the FOTE Product Class have sustained damages in an amount to be proven at trial.

330.    Plaintiff and the members of the FOTE Product Class are entitled to

compensatory damages, punitive damages, equitable and declaratory relief, costs, reasonable attorney's fees, and any other just and proper relief under the NCDTPA.

## COUNT XII

### Violation of the Ohio Consumer Sales Practices Act
### Ohio Rev. Code §§ 1345.01, *et seq.* ("OCSPA")
### *(against Defendant FOTE)*

331.    Plaintiffs incorporate Paragraphs 1-154 as if fully set forth herein.

332.    Plaintiffs Jessop, Norsworthy, and Oxley (for the purpose of this Count, "Plaintiffs") bring this Count on behalf of themselves and members of the FOTE Product Class against the Defendant.

333.    Plaintiffs and members of the FOTE Product Class have standing to pursue a cause of action for violation of the Ohio Consumer Sales Practices Act, Ohio Rev. Code §§ 1345.01, *et seq.* (the "OCSPA") because Plaintiffs and members of the FOTE Product Class have suffered an injury-in-fact and lost money as a result of Defendant's actions as set forth herein.

334.    This Count is brought on behalf of Plaintiffs and members of the FOTE Product Class to secure redress for the unlawful, deceptive, and unfair trade practices perpetrated by Defendant.

335.    Plaintiffs and members of the FOTE Product Class are "consumers" within the meaning of the OCSPA. Defendant is a "supplier" as defined by the OCSPA.

336.    Plaintiffs, members of the FOTE Product Class, and Defendant are "persons" within the meaning of the OCSPA.

337.    The Products are "goods" within the meaning of the OCSPA.

338.    Defendant was and is engaged in "trade or commerce" within the meaning of the

OCSPA. Defendant's acts and practices complained of herein were performed in the course of Defendant's trade or business and thus occurred in or affected "commerce," as defined in the OCSPA.

339.   The OCSPA prohibits unfair or deceptive acts or practices in connection with a consumer transaction. The OCSPA prohibits a supplier from (i) representing that goods have characteristics, uses or benefits which the goods do not have; (ii) representing that their goods are of a particular quality or grade that the product is not; and (iii) representing that the subject of a consumer transaction has been supplied in accordance with a previous representation, if it has not. *See* Ohio Rev. Code § 1345.02 (prohibiting "[u]nfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce[.]").

340.   Plaintiffs and members of the FOTE Product Class are consumers who purchased the Products for personal use within the applicable statute of limitations period.

341.   Plaintiffs and members of the FOTE Product Class purchased the Products in reliance on Defendant's labeling and other marketing claims.

342.   In the course of their business, Defendant concealed and suppressed material facts concerning the Products.

343.   Defendant knew or should have known that its representations of fact concerning the Products are material and likely to mislead consumers.

344.   Defendant intended that Plaintiff and members of the FOTE Product Class would rely upon their deceptive conduct, and a reasonable person would in fact be misled by this deceptive conduct.

345.   Defendant's practices, acts, and course of conduct in marketing and selling the Products are likely to mislead a reasonable consumer acting reasonably under the circumstances

to his or her detriment. Like Plaintiffs, members of the FOTE Product Class would not have purchased the Products had they known the Products contained no detectible levels of ordinary Aloe vera or any of Aloe's healing or restorative elements.

346. Defendant's actions, as alleged herein, constitute affirmative acts or representations including: unconscionable commercial practices; deception; fraud; false pretense; false promise; and/or misrepresentation, and therefore are unlawful under the OCSPA.

347. Defendant had an ongoing duty to all customers to refrain from unfair and deceptive practices under the OCSPA. Defendant's violations present a continuing risk to Plaintiffs and members of the FOTE Product Class, as well as to the general public. Defendant's unlawful acts and practices complained of herein affect the public interest.

348. By continuing to make false and unsubstantiated representations concerning the Products, Defendant is engaging in business practices that are misleading and/or likely to mislead consumers. Such business practices are unconscionable, unfair, and deceptive acts or practices in violation of the OCSPA.

349. As a direct and proximate result of Defendant's unlawful acts and omissions, Plaintiffs and members of the FOTE Product Class have suffered an ascertainable loss of money or property, real or personal, in that they would not have purchased the Products but for Defendant's material omissions and affirmative acts or representations in connection with the marketing, advertising, and sale of the Products.

350. As a result of the Defendant's use or employment of unfair or deceptive acts or business practices, Plaintiffs and members of the FOTE Product Class have sustained damages in an amount to be proven at trial.

351. Plaintiffs and members of the FOTE Product Class are entitled to compensatory

damages, punitive damages, equitable and declaratory relief, costs, reasonable attorney's fees, and any other just and proper relief under the OCSPA.

**COUNT XIII**

**Violation of the Oregon Unlawful Trade Practices Act
ORS § 646.605, *et seq.* ("OUTPA")
*(against Defendant FOTE)***

352.    Plaintiffs incorporate Paragraphs 1-154 as if fully set forth herein.

353.    Plaintiff Draus (for the purpose of this Count, "Plaintiff") brings this Count on behalf of himself and members of the FOTE Product Class against the Defendant.

354.    Plaintiff and members of the FOTE Product Class have standing to pursue a cause of action for violation of the Oregon Unlawful Trade Practices Act, ORS § 646.605, *et seq.* (the "OUTPA"), because Plaintiff and members of the FOTE Product Class have suffered an ascertainable, actual loss of money or property due to Defendant's reckless or knowing use of unlawful and/or unconscionable trade methods, acts, and/or practices, as set forth herein.

355.    Plaintiff and members of the FOTE Product Class were "person[s]" within the meaning of the OUTPA.  ORS § 646.605(4).

356.    At all relevant times, Defendant was a "person" engaged in "trade" and/or "commerce" within the meaning of the OUTPA.  ORS § 646.605(4), (8).

357.    Plaintiff and members of the FOTE Product Class acted as consumers, purchasing the Products for personal, family, or household purposes.

358.    The Products qualify as "goods" under the OUTPA, and purchases of the Products by Plaintiff and members of the FOTE Product Class qualify as "transactions."

359.    The OUTPA prohibits the use of unconscionable, deceptive, or misleading methods, acts, or practices in the conduct of trade or commerce.  ORS § 646.608.  Defendant

engaged in unconscionable, deceptive, or misleading methods, acts, or practices prohibited by the OUTPA.

360.    Defendant, in connection with the sale of the Products, engaged in unconscionable, deceptive, or misleading methods, acts, or practices.

361.    Defendant misrepresented, concealed, suppressed, or omitted material facts with the intent that Plaintiff and members of the FOTE Product Class rely upon such misrepresentations, concealment, suppression, or omissions. Defendant's objectively deceptive conduct had the capacity to deceive reasonable consumers under the circumstances.

362.    Defendant's practices, acts, and course of conduct in marketing and selling the Products are likely to mislead a reasonable consumer acting reasonably under the circumstances to his or her detriment. Like Plaintiff, members of the FOTE Product Class would not have purchased the Products had they known the Products contained no detectible levels of ordinary Aloe vera or any of Aloe's healing or restorative elements.

363.    Defendant's general course of conduct impacted the public because the acts were part of a generalized course of conduct affecting numerous consumers.

364.    Defendant's conduct, which included deception, false pretenses, false promises, misrepresentations, and the knowing concealment, suppression, or omission of material facts caused the resulting injury in fact and an actual, ascertainable loss of money or property to Plaintiff and members of the FOTE Product Class. The resulting injury to Plaintiff and members of the FOTE Product Class was reasonably foreseeable by Defendants.

365.    Based on Defendant's acts stated herein, Defendant violated the OUTPA. Defendant violated the OUTPA by, at a minimum, employing deception, deceptive or unconscionable acts or practices, fraud, misrepresentations, or concealment, suppression or

81

omission of material facts with intent that others rely upon such concealment, suppression or omission, in connection with the sale of the Products. To wit, among other unlawful acts, Defendant misrepresented the particular standard, quality, or grade of the Products and their characteristics, ingredients, uses, and benefits; advertised the Products with intent not to provide them as advertised; failed to disclose any known material defect or nonconformity of the Products; and knowingly permitted customers to enter into transactions from which they would derive no material benefit.

366. Defendant's acts stated herein were willful in that Defendant knew or should have known that such conduct was a violation of OUTPA.

367. Defendant's acts stated herein were unconscionable in that, at a minimum, Defendant knowingly permitted customers to enter into transactions from which they would derive no material benefit.

368. Plaintiff, on behalf of himself and members of the FOTE Product Class, seek monetary relief against Defendant for actual damages, statutory damages, and rescission in an amount to be determined at trial; reasonable attorneys' fees; and any other just and proper relief available under the OUTPA.

## COUNT XIV

### Violation of the Texas Deceptive Trade Practices-Consumer Protection Act
### Tex. Bus. & Com. Code § 17.41, *et seq.* ("DTPA")
### *(against Defendant FOTE)*

369. Plaintiffs incorporate Paragraphs 1-154 as if fully set forth herein.

370. Plaintiffs Beardsall, Ramon, and Robertson (for the purpose of this Count, "Plaintiffs") bring this Count on behalf of themselves and members of the FOTE Product Class against the Defendant.

371.    Plaintiffs and the members of the FOTE Product Class have standing to pursue a cause of action for violation of the Texas Deceptive Trade Practices-Consumer Protection Act, Tex. Bus. & Com. Code § 17.41, *et seq.* (the "DTPA"), because Plaintiffs and members of the FOTE Product Class have suffered an injury-in-fact and lost money as a result of Defendant's actions as set forth herein.

372.    This Count is brought on behalf of Plaintiffs and members of the FOTE Product Class to secure redress for the unlawful, deceptive, and unfair trade practices perpetrated by Defendant.

373.    Defendant, Plaintiffs, and members of the FOTE Product Class are "persons" within the meaning of the DTPA.

374.    Defendant engaged in "trade" or "commerce" in the State of Texas within the meaning of the DTPA.

375.    The DTPA was enacted "to protect consumers against false, misleading, and deceptive business practices, unconscionable actions, and breaches of warranty and to provide efficient and economical procedures to secure such protection." Tex. Bus. 7 Com. Code § 17.44(a).

376.    The DTPA makes unlawful "[f]alse, misleading, or deceptive acts or practices in the conduct of any trade or commerce." Tex. Bus. & Com. Code § 17.46(a). In the course of its sale of the Products, Defendants engaged in false, misleading, or deceptive acts or practices that violated the DTPA.

377.    Plaintiffs and members of the FOTE Product Class are "consumers" who purchased the Products for personal use within the applicable statute of limitations period.

378.    Plaintiffs and members of the FOTE Product Class purchased the Products in reliance on Defendant's labeling and other marketing claims, to their detriment.

379.    Defendant knew or should have known that its representations of fact concerning the Products are material and likely to mislead consumers.

380.    Defendant's acts were committed knowingly and intentionally.

381.    Defendant intended that Plaintiffs and members of the FOTE Product Class would rely upon their deceptive conduct, and a reasonable person would in fact be misled by this deceptive conduct.

382.    Defendant's practices, acts, and course of conduct in marketing and selling the Products are likely to mislead a reasonable consumer acting reasonably under the circumstances to his or her detriment. Like Plaintiffs, members of the FOTE Product Class would not have purchased the Products had they known the Products contained no detectible levels of ordinary Aloe vera or any of Aloe's healing or restorative elements.

383.    Defendant's actions, as alleged herein, constitute false, misleading, or deceptive acts or practices, and therefore are unlawful under the DTPA.

384.    Based on Defendant's acts stated herein, Defendant violated the DTPA. Defendant violated the DTPA by, at a minimum, employing false, misleading, or deceptive acts or practices, fraud, misrepresentations, or concealment, suppression or omission of material facts with intent that others rely upon such concealment, and suppression or omission, in connection with the sale of the Products.  To wit, among other unlawful acts, Defendant misrepresented the particular standard, quality, or grade of the Products and their characteristics, ingredients, uses, and benefits; advertised the Products with intent not to provide them as advertised; failed to disclose information about the Products which Defendant knew at the time of the transactions

and which failure was intended to induce the consumer into a transaction the consumer would not have entered with the benefit of full disclosure; and knowingly permitted customers to enter into transactions from which they would derive no material benefit.

385.    By continuing to make false and unsubstantiated representations concerning the Products, Defendant is engaging in business practices that are misleading and/or likely to mislead consumers. Such business practices are false, misleading, and deceptive acts or practices in violation of the DTPA.

386.    As a direct and proximate result of Defendant's unlawful acts and omissions, Plaintiffs and members of the FOTE Product Class have suffered an ascertainable loss of money or property, real or personal, in that they would not have purchased the Products but for Defendant's material omissions and affirmative acts or representations in connection with the marketing, advertising, and sale of the Products.

387.    As a result of the Defendant's use or employment of unfair or deceptive acts or business practices, Plaintiffs and members of the FOTE Product Class have sustained damages in an amount to be proven at trial. Some or all of purchase price paid by Plaintiffs and members of the FOTE Product Class is fairly traceable back to Defendant and Defendant benefited therefrom.

388.    Before filing this Amended Complaint, Plaintiffs' Counsel provided written notice to Defendants compliant with the intent and purpose of Tex. Bus. & Com. Code 17.505(1).  Defendants did not respond or cure within the time provided.

389.    Plaintiffs and members of the FOTE Product Class are entitled to compensatory damages, punitive damages, equitable and declaratory relief, costs, reasonable attorney's fees, and any other just and proper relief under the DTPA.

## VII.  DEMAND FOR JURY TRIAL

Plaintiffs demand a trial by jury of all claims in this Complaint so triable. Plaintiffs also respectfully request leave to amend this Complaint to conform to the evidence, if such amendment is needed for trial.

## VIII.  REQUEST FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of the Classes proposed in this Complaint, respectfully request that the Court enter judgment as follows:

A.  Declaring that this action is a proper class action, certifying the five Product Classes requested herein, designating each of the respective Plaintiffs as Class Representatives, and appointing the undersigned counsel as Class Counsel;

B.  Ordering Defendants to pay actual damages to Plaintiffs and the other members of the Classes and allowing each Plaintiff and Class member to rescind their purchases;

C.  Ordering Defendants to pay statutory damages, as provided by the applicable state consumer protection statutes invoked above, to Plaintiffs and the other members of the Classes;

D.  Ordering Defendants to pay restitution to Plaintiffs and the other members of the Classes;

E.  Ordering Defendants to pay attorneys' fees and litigation costs;

F.  Ordering Defendants to pay both pre- and post-judgment interest on any amounts awarded; and

G.  Ordering such other and further relief as may be just and proper.

Dated: April 17, 2017    Respectfully submitted,

By: */s/ Katrina Carroll*
 An Attorney for Plaintiffs and the putative Classes

Katrina Carroll
Kyle A. Shamberg
Ismael T. Salam
LITE DEPALMA GREENBERG, LLC
211 West Wacker Drive, Suite 500

Chicago, IL 60606
(312) 750-1265
kcarroll@litedepalma.com
kshamberg@litedepalma.com
isalam@litedepalma.com

Brian J. Wanca
Jeffrey A. Berman
Patrick Solberg
ANDERSON + WANCA
3701 Algonquin Road, Suite 500
Rolling Meadows, IL 60008
(847) 368-1500
bwanca@andersonwanca.com
jberman@andersonwanca.com
psolberg@andersonwanca.com

Nick Suciu III
BARBAT, MANSOUR & SUCIU PLLC
1644 Bracken Rd.
Bloomfield Hills, Michigan 48302
(313) 303-3472
nicksuciu@bmslawyers.com

Jonathan N. Shub
Kevin Lukaitis
KOHN, SWIFT & GRAF, P.C.
One South Broad Street, Suite 2100
Philadelphia, PA 19107
(215) 238-1700
jshub@kohnswift.com
klaukaitis@kohnswift.com

Jason Thompson
Lance C. Young
Amy Marino
SOMMERS SCHWARTZ, P.C.
One Towne Square, 17th Floor
Southfield, Michigan 48076
(248) 355-0300
jthompson@sommerspc.com
lyoung@sommerspc.com
amarino@sommerspc.com

Donald J. Enright
Lori G. Feldman

Andrea Clisura
LEVI & KORSINSKY LLP
1101 30th Street, N.W., Suite 115
Washington, DC 20007
(202) 524-4290
denright@zlk.com
lfeldman@zlk.com
aclisura@zlk.com

Jason T. Brown
Patrick S. Almonrode
JTB LAW GROUP, LLC
155 2nd Street, Suite 4
Jersey City, NJ 07302
(877) 561-0000
jtb@jtblawgroup.com
patalmonrode@jtblawgroup.com

Greg Coleman
GREG COLEMAN LAW PC
First Tennessee Plaza
800 S. Gay Street, Suite 1100
Knoxville, TN 37929
(865) 247-0080
greg@gregcolemanlaw.com

Michael F. Ram
Susan S. Brown
RAM, OLSON, CEREGHINO & KOPCZYNSKI
LLP
101 Montgomery Street, Suite #1800
San Francisco, California 94104
(415) 433-4949
mram@rocklawcal.com
sbrown@rocklawcal.com

Rachel Soffin
Jonathan B. Cohen
MORGAN & MORGAN
201 North Franklin Street, 7th Floor
Tampa, FL 33602
(813) 223-5505
rsoffin@forthepeople.com
jcohen@forthepeople.com

Samuel J. Strauss
TURKE & STRAUSS LLP

936 N. 34th Street
Suite 300
Seattle, WA 98103
(608) 237-1775
sam@turkestrauss.com

***Attorneys for Plaintiffs and the putative Classes***

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that the foregoing was electronically filed with the United States District Court for the Northern District of Illinois this 17th day of April 2017 using the Court's CM/ECF System, which served notice of the filing upon all counsel of record.


*/s/ Katrina Carroll*